# UNITED STATES DISTRICT COURT

For the

US District of Rhode Island

Michael Cogley                                    )
                                                  )
_____                  )
            Plaintiff(s)                          )
                 -v-

State of Rhode Island et la, in its official capacity; Lincoln
Chafee, Rhode Island Governor 2013-2015 in his official
capacity; Gina Raimondo, Rhode Island Governor 2015-
2021 in her official capacity; Rhode Island State Police
Department in its official capacity; Steven O'Donnell,
RISP Colonel 2013-2016 in his Individual capacity; Ann
Assumpico, RISP Colonel 2016-2018 in her Individual
capacity; James Manni, RISP Colonel 2019-2020 in his
Individual capacity; Joan Collins, Rhode Island Sex
Offender Database Supervisor Manager in her Individual
capacity; North Providence Police Department in its
official capacity; Christopher Pelagio, NPPD Chief 2014-
2016 in his official capacity; David P. Tikoian, NPPD
Chief 2017-2019 in his official capacity; Daniel Biafore,
NPPD in his Individual capacity; Christopher Petteruti,
NPPD in his Individual capacity; Program Chief 2013-
2020, Rhode Island (SOCN) in his or her official capacity;
Vanessa Lisi, Rhode Island (SOCN) in her Individual
capacity; Rhode Island (RISORB), in its official capacity;
Bonita Cade, Rhode Island (RISORB), in her Individual
capacity; Kyle Shibley, Rhode Island (RISORB), in his
Individual capacity; Alyssa DeAndrade, Rhode Island
(RISORB), in her Individual capacity; Marlene Roberti,
Rhode Island (RISORB), in her Individual capacity;
Jason Lyon, Rhode Island (RISORB), in his Individual
capacity; JoAnne Waite, Rhode Island (RISORB), in her
Individual capacity; Jessica Nash, Rhode Island
(RISORB), in her Individual capacity; Rhode Island
Attorney General, in its official capacity; John Rabbit,
Rhode Island AG Investigator, in his Individual capacity;
Sergeant Michael Wheeler, Rhode Island Division of
Sheriffs (RIDS), in his official capacity; Rhode Island
Department of Public Safety, in its official capacity.

_____
            Defendant(s)

Case No. _____


Jury Trial:        ☒ Yes ☐ No

FILED
2022 DEC 22 A 10: 55
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

<u>**COMPLAINT FOR A CIVIL CASE**</u>

The parities to this complaint

A. Plaintiff, Pro Se, Mr. Michael Cogley

    6   Gunnison road

    Boxford, Massachusetts 01921

    978.505.8783

    cogleymike@yahoo.com

B. The Defendants (s)

    : See attached on cover page

<u>**PLAINTIFF ADA DISABILITIES & PERSONAL DISCLOSURE**</u>

Plaintiff, Pro Se, Mr. Michael Cogley would like to disclose he Suffers from learning disabilities such as dyslexia, reading and writing impairments as identified under Americans with Disabilities Act. Plaintiff, Pro Se, Mr. Michael Cogley requests the United States District Court of Rhode Island's patients and apologizes for any spelling and or grammatical errors within following complaint.

Plaintiff would like the United States District Court to know he has refrained from any formal legal arguments within this federal complaint. It is apparent state and federal immunity is a significant topic which is highlighted in further context along with chronological exhibits referred as *Plaintiff Record* or *(P.R. 1-364)* within this federal complaint.

Plaintiff would like the United States District Court to understand this federal complaint is not to expose weakness regarding federal 42 *U.S.C. §16911 (Pub. L. 109-248) Adam Walsh Child Protection and Safety Act of 2006*, (P.R.36-55,82-90) however to highlight following

complaint of negligence and noncompliance by defendants on behalf of Rhode Island, in which unfair due process, and miss-interpretation of **Federal SORNA law *(Sex Offender Registration Notification Act)*** should have shielded and protected his liberty. Nature of circumstance evolves from a single 2004 event between Plaintiff and consensual victim which a lengthy and thorough conviction date of July 13th, 2007 by Barnstable Massachusetts Superior Court having *"Initial Jurisdiction"* over matter.

Plaintiff completed his debt to Commonwealth of Massachusetts on July 13th 2012. Plaintiff was never subject to Commonwealth of Massachusetts *Sex Offender* registry under M.G.L law (P.R.67-80) or otherwise *42 U.S.C. §16911 (Pub. L. 109-248) Adam Walsh Child Protection and Safety Act of 2006.* (P.R.36-55,82-90)

Plaintiff by way of defendants had been forced to re-experience the already traumatic experience again for almost double length of time as initially, had created significant peril to Plaintiff by forfeiting dozens of constitutional and civil liberties resulting from such negligent action. Subsequently, again forced to take part in Rhode Island Superior Court proceedings to be afforded those constitutional and civil liberties back after no longer subject under Rhode Island sovereignty. Plaintiff will be exposing many sealed, and confidential personal exhibits within this United States federal complaint to convey how deprivation of civil liberties and negligent actions created the following peril.

Plaintiff in recent years has been vocal in helping to aid discussions of nationwide *Juvenile Justice Reform Acts.* Protection of children and young adults from negligent misinterpretation of federal SORNA law by state legislations. Placement of children as young as 10, have been placed on lifelong national *Sex Offender* registries, demonstrating no recidivism value, proving traumatizing during such important adolescent growth.

Lastly, Plaintiff would like United States District Court to know he was raised by a single mother, and breast cancer survivor. Plaintiff's true identity always held women to a high respect, with old-fashioned values a male should always aid and protect a woman regardless of circumstances. Plaintiff, Pro Se, Mr. Michael Cogley is a conservative whom fully supports racial equality, LGBTQ equality, in addition to women's reproductive rights. He is grateful for democratic legislators and advocacy groups that allow him the platform to express the matter as it truly is a bipartisan concern.

## WHAT IS ADAM WALSH ACT OF 2006 SORNA

Over last two decades federal definition of *Sex Offenders* has been reclassified under United States Code (U.S.C) law. Early 2000's *42 U.S.C §14071 (Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program)* (P.R. 18-34) which later repealed replaced by *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety of 2006* enacted by 109th United States Congress on July 27th 2006. (P.R.36-55,82-90) Former U.S House Representative James Sensenbrenner Jr (R-WI-5) Menomonee Falls sponsored Adam Walsh Child Protection & Safety of 2006 on 12/8/2005, becoming Public Law 109-248 on 7/27/2006 under President George W. Bush. *42 U.S.C. §16911 (Pub. L. 109-248) Adam Walsh Child Protection and Safety Act of 2006.* 50 states, five principal territories, District of Columbia and Indian tribes given 3-year grace period to implement, then given another final 2-year grace period to implement Title 1 (P.R. 35,41-55) in full or face federal grant reduction SORNA § 125. Title 1 sec §§ 111 defines ***"Sex Offender"*** as individual who was "***Convicted of a Sex Offense"***, In which defining universe of individuals whom would be required to register under federal SORNA law. Federal government essentially forced jurisdictions to implement Title 1, or face 10% reduction in federal Edward Byrne Memorial Justice Assistance Grant

(JAG) funding under 34 U.S.C 20927 (a), *Omnibus crime control and safe street act of 1968*, primarily used to fund statewide *"Sex Offender"* systems for law enforcement programs to comply with federal SORNA law. (P.R. 35,88-90)

For purpose of federal SORNA law, term ***"Convicted"*** is widely discussed, as convictions terminology can vary from jurisdiction to jurisdiction. Sometimes vacated convictions, adjudicated juvenile convictions, tribal convictions or convictions that predate *International Megan's Law* can vary from jurisdiction to jurisdiction. United States Department of Justice has stated for clarity, "While statutory definitions of *Sex Offenses* falling within SORNA's registration categories will vary from jurisdiction to jurisdiction, meaning of ***"Convicted"*** for purposes of SORNA is a matter of ***"Federal Law"***, and its applicability is not determined by terminology a jurisdiction uses in referring to disposition of a criminal case".

*42 U.S.C. §16911 (Pub. L. 109-248) Adam Walsh Child Protection and Safety Act of 2006* includes a very important subsection that pertains to Plaintiffs complex *"Inter-State"* matter before this United States District Court. *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111 Definitions, (5) Amie Zyla expansion of Sex Offense Definition, Article C*, excludes federal SORNA registration from *consensual sexual conduct* if victim was at least 13 years of age, and offender was no more than 4 years older than victim. Subsequently excluding such individual entirely from federal SORNA terminology defined as ***"Sex Offender"*** in which jurisdictions are required to implement to meet federal compliance under Title 1 (P.R. 35,41-55,81).

*C) Offenses involving consensual sexual conduct. —An offense involving consensual sexual conduct* **is NOT A SEX OFFENSE for purposes of this title** *if victim was an adult,*

unless adult was under custodial authority of offender at time of offense, *_or if victim was at least 13 years old and offender was not more than 4 years older than victim_

Federal SORNA law not only serves, but also protects such identifying parties under Title 1 (P.R. 46). Subsection (5) *Amie Zyla expansion of Sex Offense Definition* originally was Wisconsin law enacted by democratic Governor Jim Doyle. Republican State Representative Mark Green along with Amie, Zyla, her father introduced into federal legislation which forever honoring her great courage to advocate for both juvenile/youthful offenders as well as being a victim of sexual assault herself.

General purpose of federal SORNA law is to identify and to protect public from *Sex Offenders*. SORNA law acts to comprehensively provide a national *"baseline"* for notification requirements. SORNA law additionally requires jurisdictions provide a notification platform for identified and defined *Sex Offenders*, and enter into *National Sex Offender Registry (NSOR)* a database maintained by FBI. SORNA § 113 (b), 117 (a) requires *"Initial Jurisdiction"* whom *"Had Convicted"* Sex *Offender* during incarceration or within immediate release to assign a level as identified as Tier I-III based on risk and recidivism. federal SORNA law has made it very clear it sets national *baseline*, or *"floor"* as Department of Justice refers to it, while jurisdictions can decide how high *"ceiling"* should be as supervision and registration periods. However, SORNA law provides *"baseline"* for whom is defined under Title 1 (P.R. 41-55,82-90), as individual who was *"**Convicted of a Sex Offense**"*, In which defining the universe of individuals whom would be required to register as *"**Sex Offender**"* under federal SORNA law standards.

*"At this very moment, somewhere in this country, a child's heart is being stolen. He or she is young, afraid, confused and feeling dirty, that child is being terrorized by most horrible kind of criminal. It happens every day. And it still hurts me deeply to hear that another kid is experiencing same kind of pain that I did at 8 years old." -Amie Zyla*

## **DEFENDANTS**

Rhode Island Governorship is executive office that appoints Rhode Island Parole Board and Rhode Island *Sex Offender* Leveling Board members to conduct federally regulated SORNA functions. Rhode Island Governorship signs and enacts implementation into General Law via Senate Judiciary approval. Rhode Island Attorney General in conjunction with Rhode Island Public Service Department enforces this implementing of SORNA *Sex Offender* Requirements to become federally compliant which by requiring Rhode Island Sheriffs & State and local Police Departments to enforce. Rhode Island Governorship also appoints Rhode Island State Police Colonel to agency when required. Rhode Island State Police then subjects federally implemented SORNA *Sex Offender* Requirements which also general law onto its respective *Sex Offender* Community Notification Unit (SOCN), which then works in conjunction back with Rhode Island Governorship appointed Rhode Island Parole & *Sex Offender* Leveling Boards. Rhode Island State Police Colonel is then administratively in charge of functions that occur within its *Sex Offender* Community Notification Unit (SOCN) unit. Now federally implemented SORNA law *Sex Offender* Requirements can be ordered onto local law enforcement agencies via Rhode Island State Police to locally administer and enforce subject to Rhode Island General Law.

## JURISDICTION AND VENUE

This case arises under the United States Constitution which regards both *Federal question* and *Diversity of citizenship*.

**A. Federal Question;**

1. This action is brought pursuant to 42 U.S.C. §1983 for violations of United States Constitution deprivation of civil liberties.

2. This action is brought pursuant to 42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, Tile 1; § 111 - 155 et seq

3. This action is brought pursuant to 34 U.S.C. §20911 Expanded Definition (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, Title 1, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C

4. This action is brought pursuant to 34 U.S.C. §20927 Failure of Jurisdiction to Comply with SORNA, Tile 1 Full Federal Compliance

5. This action is brought pursuant to 34 U.S.C. §10151 "Edward Byrne Memorial Justice Assistance Grant Program"

6. This action is brought pursuant to 31 U.S.C. §3729 False Claims Act Pub. L. 99-562

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.

8. Venue is properly lodged in District of Rhode Island pursuant to 28 U.S.C. § 1391(b)

**B. Diversity of citizenship;**

1. Plaintiff, Pro Se, Mr. Michael Cogley is an individual/ *relator **Qui Tam*** is a citizen of Massachusetts.

2. Defendants, See Attached Listed, are citizens of Rhode Island.

3. Amount in controversy amount the Plaintiff claims the defendants owes is greater than $75,000, not counting interest and court costs because 34 U.S.C. §20927: Failure of Jurisdiction to Comply Title 1 of 42 U.S.C. §16911 Adam Walsh Child Protection & Safety Act. Subjecting to 10% loss of Edward Byrne Memorial Justice Assistance Grant Funding (JAG). Rhode Island has inadvertently accepted Millions under false compliance from 2013-2020. Plaintiff also incurred financial hardships during the period, and also high litigation costs in Rhode Island state courts to finally return his constitutional civil liberties regarding the deprivation.

## STATEMENT OF COMPLAINT

Plaintiff, Pro Se , Mr. Michael Cogley contends that all actors and/or defendants appointed/employed on behalf of State of Rhode Island et al, violated his *U.S.C 42 1983 Constitutional and Civil Liberties* by misinterpreting *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, Tile 1; § 111 - 155 et seq* (P.R.35-55), including subsection *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C* guidelines, which by failing to lawfully administer *Sex Offender* Registration Community Notification (SOCN) statewide guidelines by utilizing there individual capacity, rather than official capacity to his respective matter. Purposes to manipulate and administer State of Rhode Island *Sex Offender* Registration SORNA guidelines causing national and global peril onto Plaintiff. In doing so causing irreversible harm and financial hardships while Plaintiff at time had been a Rhode Island resident. Furthermore, defendants continued the negligent acts long after Plaintiff was no longer a domiciled resident of State of Rhode Island, for which had no jurisdictional control over Plaintiff. With purposes to cover up individual rather than official capacity

negligence over the 7-year time period. Uncovering Plaintiff *"Inter-State"* matter, exposed larger federal SORNA Title 1 noncompliance issue, for which would have been federally subject to grant funding reductions, however Rhode Island already has successfully obtained and utilized. Federal law requires noncompliance grant funding to be returned to other states being in compliance to utilize. It is noted that this *"Inter-State"* subject matter pertains to a 2004-2007 Barnstable Massachusetts Superior Court proceeding. Plaintiff contends State of Massachusetts which *"Initial Jurisdiction"* occurred, was neither subject to Massachusetts State and/or Federal Sex *Offender* Registration SORNA Statues; via 34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C respectively.

## RHODE ISLAND PUBLIC DUTY DOCTRINE IMMUNITY

State of Rhode Island requested tort immunity in Rhode Island Superior Court on January 7th 2020 prior to vacating the concerning matter. On January 9th 2020 when actions had been granted to Plaintiff vacating immediately Rhode Island *Sex Offender* Registrations which had taken place from 2013-2020. Immunity was discussed again, denied and disregarded by Rhode Island Superior Court Judge Flynn. Plaintiff has identified immunity facts and its discussion in greater detail below in this complaint as he has been advised it will play a major role in matter.

Much like Federal Tort Claims Act (FTCA) determining where an act is discretionary for purpose to shield United States Federal Government from liability tort claims. Similarly, *Rhode Island Public Duty Doctrine* would afford tort immunity to state and municipal government bodies and/or actors from threat of tort claims. Primary purpose of *Rhode Island Public Duty Doctrine* is to effectively shield administrations of governmental operations by removing threat

of potential litigation. However, there are **(2) two specific exceptions** which would not shield

state and/or actors of such immunity protections within *Rhode Island Public Duty Doctrine.*

**Special Duty Exception**, and **Egregious Conduct Exception.**

**_Special Duty Exception:_** *Provides state may be held liable if it owed a duty to individual*

*Plaintiff, as opposed to the general public.*

**_Egregious Conduct Exception:_** *Provides state be liable if it had knowledge, it had*

*created a situation that forced and individual into a position of peril and thus subsequently chose*

*not to remedy situation. Egregious Conduct Exception requires* **_(3) three distinct elements_** *to be*

*met in order to find state actions be held egregious:*

1. *The state, in undertaking a discretionary action or in maintaining or failing to maintain product of a discretionary action, created circumstances that forced a reasonably prudent person into a position of extreme peril.*

2. *The state, through its employees or agents capable of abating danger, had actual or constructive knowledge of perilous circumstances.*

3. *The state, having been afforded a reasonable amount of time to eliminate dangerous condition, failed to do so.*

**Egregious Conduct Exception** is an exact exception to the *Public Duty Doctrine* as it

permits a Plaintiff to recover liability from Rhode Island, though the negligent activity is

governmental, not being limited to duty owed to general public, opposed to the **Special Duty**

**Exception** which necessitating duty is owed <u>exclusively</u> to such individual. Undressing Rhode

Island immunity allows Plaintiff to make a tort claims against Rhode Island simply by presenting

breach of official duty, regardless if duty wed to Plaintiff or general public, regardless such duty

began from Rhode Island functioning in official governmental or individual capacity, thus

permitting Plaintiff a case of ordinary negligence against Rhode Island. Following exceptions no longer affords applicable immunity protections from liability under *Public Duty Doctrine.*

## CONTENDS RHODE ISLAND PUBLIC DUTY DOCTRINE IMMUNITY

Plaintiff, Pro Se , Mr. Michael Cogley was an individual and person whom was never subject to registration requirements of *Sexual Offender Registration and Community Notification Act, RI 11-37.1 (d)* of general laws state of Rhode Island, and hereinafter referred to as "SORNA," and had been placed at "level II *(Risk Level II danger to community is a Sex Offender whose risk assessment indicates a moderate risk of re-offense)*" (P.R. 335) within meaning of SORNA by State of Rhode Island after he was no longer a resident (P.R. 199-200). On January 9th, 2020 Rhode Island Superior Court vacated effective immediately all Rhode Island actions regarding matter, by upholding respective 2007 Massachusetts Honorable Superior Court judgement regarding matter identified in further detail in this complaint. (P.R. 336)

Plaintiff feels Rhode Island State Police Department (RISP) RI §42-28, Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN Unit) RI §11-37.1-1 et seq, Rhode Island Division of Sheriffs (RIDS) RI §42-29, Rhode Island *Sex Offender* Registration Board (RISORB) appointed by Gina Raimondo (2015-2021) Rhode Island Governorship pursuant to RI §11-37.1-1 et seq, initiated North Providence Police Department (NPPD) to continuously misinterpret and miscommunicate the Barnstable Massachusetts Superior Court Judgment of 2007 internally within its respective *Sex Offender* Divisions, which by owing a ***special duty,*** and additionally causing ***egregious conduct*** by creating a situation which forced the Plaintiff into a traumatic life of peril for almost a decade.

Both *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act,* Tile 1 § 131 subchapter H.R 4472-15, and additionally Rhode Island *Sex Offender*

Community Notification Guidelines RI §11-37.1-1 et seq part VI § 14.0 discloses a good faith immunity (P.R.35-55). However, that would be construed as initially being compliant with Title 1 *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act*, which includes *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C* definitions. Whom were subject under federal law as this matter pertains to *"Inter-State"*, and *"Nominal Jurisdiction"* is a matter of ***"federal law"*** as identified by United States Department of Justice § 111 (5)-(8) respectively.

Plaintiff matter within Department of Justice Federal Register Vol 73, No 128-commentary guidebook for state implementation of federal compliances stipulates a ***special duty*** is owed to individual rather than public to address *"Inter-State"* federal jurisdictional concerns prior to any *Sex Offender* registration implementation, as Plaintiff had no *"Initial Registration"* requirements from his *"Initial Conviction State"*.

Plaintiff requests United States District Court to uphold following federal laws and hold following defendants to the tort claims as they ***owed Plaintiff a special duty***.

2013 Rhode Island Annual Report states retired State Police Colonel 2011-2019 appointed by Governor Lincoln Chafee and then superseded by Gina Raimondo (2015-2021) RI General Law: State Affairs of Government RI §42-28-11 Powers of superintendent will *"Undertake a Comprehensive study of Sex Offender registration and notification legislation in state of Rhode Island"* (P.R. 114), goes on to state *"there is also a new Sex Offender registry unit, which will assist local police departments with proper registering of Sex Offenders"* (P.R. 115).These **two** following units are ***Major Crimes Unit*** led by Lieutenant Benjamin Barney whom to over sees sexual assaults, and ***RILETS/NCIC Control Unit*** led by supervisor and defendant Joan Collins.

This 2013 Rhode Island annual report identifies defendant Collins as *"Rhode Island Sex Offender Registry Database Manager"*. Defendant Collins individual job description role is to ***"provide assistance to municipal police department, state, and federal agencies concerning policies and procedure for national crime information center (NCIC)* "**, additionally ***"this unit is responsible for maintaining affidavit and arrest warrants for state police, conducting INTENSIVE backgrounds through database searches"***. Defendant Collins individual capacity should have conducted intensive research on Plaintiff as he was ***owed a special duty*** regarding complicated *"Inter-State"* circumstances as an individual, opposed to general public, both at Rhode Island State level, and federal level. *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act*, Tile 1, § 122 requires appropriate state official to notify Attorney General to then contact United States Department of Justice *Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking* known as SMART.Gov to advise when a complicated *"Inter-State"* matter is subject to SORNA registration under § 146 et seq. After an *"effort must be made by jurisdiction where subject has absconded"* jurisdiction can then utilize national NCIC system, and United States Marshal Service to investigate and locate absconded *Sex Offender*. Plaintiff would not have been subject under *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act*, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C definitions being a subsection of *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act*, Title 1 (P.R. 35-55) inclusive. Rhode Island State Police affidavit identifies defendant Joan Collins as individual capacity whom initiated NCIC national arrest warrant (P.R. 201), used individual choice as free thought vs using official administrative protocol by first contacting Rhode Island Attorney General as required by federal SORNA law, thus triggering remaining defendants to be required to take part in

following years of peril, which ultimately January 9th 2020 Rhode Island Superior court vacated judgement and upheld Plaintiffs 2007 Massachusetts Honorable Superior Court judgement. (P.R. 336). Rhode Island Chief Assistant Attorney General Laura Nicholson RI Title 42-28-20 as legal advisor requested immunity which had been denounced in Honorable Rhode Island Superior Court on January 9th 2020. In conclusion following defendants should not be shielded by state immunity by means of *Special Duty Exception* of Rhode Island Public Duty Doctrine. Defendants owed Plaintiff individual duty rather than general public, as because his Massachusetts *"Initial Conviction"* proceedings and judgement never initially occurred within Rhode Island courts. United States Department of Justice has additionally clarified that *"while statutory definitions of sex offenses falling within SORNA § 111 (5)-(8) will vary from jurisdiction to jurisdiction, meaning of "Convicted" for purpose of SORNA is a matter of federal law, and its applicability is not determined by terminology of a jurisdiction"* Defendants owed Plaintiff this individual duty as Massachusetts judgment probationary terms dated July 13th 2007-July 13th 2012 (P.R 66,67) had been transferred administratively to Rhode Island via *"Inter-State" Compact ICOS system* for supervision. Never once totaling 2,254 days, the Plaintiff had never been advised he was subject to Rhode Island State *Sex Offender* Registration Laws or federal SORNA laws. State of Rhode Island knew Plaintiff and probationary terms of honorable Massachusetts judgment and also knew he was a resident of Rhode Island during this time with active driver's license via residency.

Plaintiff also examines *Egregious Conduct Exception* and requests United States District court to hold following defendants to tort claims, as it had created a situation which forced Plaintiff into a position of peril, subsequently choosing not to remedy situation; The *Egregious*

*Conduct Exception* within Rhode Island Public Duty Doctrine. *(3) three distinct elements* to be met in order to find state actions egregious are the following:

**first distinct element**, *"The state, in undertaking a discretionary action or in maintaining or failing to maintain product of a discretionary action, created circumstances that forced a reasonably prudent person into a position of extreme peril"*. Defendants acted negligently by following actions from 2013-2018 which had improperly concluded to investigate matter internally within state and federal regulations required, and or as to comprehensively follow federal Adam Walsh Act SORNA laws while Plaintiff was still in fact a domiciled Rhode Island resident. As noted in January 9th 2020 Rhode Island Superior Court vacated (P.R. 336) all state actions and upheld Plaintiffs 2007 Massachusetts Honorable Superior Court judgement with following,

**4-line items.**

1. That the Petitioner's Objection is Granted.

2. That the Petitioner's shall not be required to register as *Sex Offender* in Rhode Island on the basis of his guilty pleas to certain criminal offenses in Massachusetts in July 2007.

3. That all records and indications of the Petitioner's status as *Sex Offender* in Rhode Island shall be destroyed forthwith and without unnecessary delay.

4. That the Petitioner's Rhode Island BCI shall be amended to reflect that the Plaintiff is not *Sex Offender*.

However, once Plaintiff changed his domicile residency back to Massachusetts on October 1st 2018, listed defendants of Rhode Island *Sex Offender* Registration Board (RISORB)

appointed by Gina Raimondo (2015-2021) did not have sovereignty and or jurisdiction over Plaintiff. Action had been created to push matter negligently within respective Rhode Island governments pertaining to matter with no sovereignty and jurisdictional control should have poised for immediate vacate of Plaintiff *Sex Offender* Status. ***Instead (80) calendar days*** after Plaintiff was no longer a Rhode Island resident, still utilizing their respective administrative protocols causing following ***two more years*** of nationwide and global deprivation of liberties by identifying Plaintiff as a level II (P.R.335) *(Risk Level II danger to community is a Sex Offender whose risk assessment indicates a moderate risk of re-offense)* with federal registration requirement of 25 years or until 2032 under SORNA § 115 (a) et seq, subsequently causing additional jurisdictional conflicts as Plaintiff now back in *"Initial Conviction"* jurisdiction now subject to federal SORNA, by another state whom could not enforce, otherwise thus be incompliance themselves, which complying with state or federal registrations would not be subject. A negligent situation of peril had been created as federal SORNA law § 115 (a) required all *Sex Offender*s to be registered during incarceration or within 3 days of nonincarcerative sentence such as probation by *"Initial Conviction"* jurisdiction, and a Tier level promptly to follow. Administrative legwork was negligently completed months later while Plaintiff was no longer governed by Rhode Island sovereignty.

Additionally, Plaintiff being again a resident of *"Initial Conviction"* state of Massachusetts, now being advised by another state Rhode Island his *Sex Offender* status now warranted travel restrictions under § 114 et seq caused much peril during 2018 Christmas season, while in Colorado, resulted in Plaintiff hiring respective council. Being identified as a *Sex Offender* in National *Sex Offender* Registry (NSOR) maintained by FBI regulated § 119 (a) has National and Constitutional limiting measures under § 114 et seq, and globally under

International Megan's Law. Rhode Island was unaware on how to even administer actions as Rhode Island (SOCN) unit was aware of jurisdictional residency change which caused even more traumatic peril.

**_The Second distinct element is_** **_"The state, through its employees or agents capable of abating danger, had actual or constructive knowledge of perilous circumstances"._**

Plaintiffs 2007-2012 probationary period (P.R 66) had Massachusetts judgment relief documentation (P.R. 67) and probationary terms within its *"Inter-State" Compact ICOS System* file. Assuming Rhode Island no longer had in its possession in 2013, however Plaintiff again provided it to North Providence Police many times as noted in (P.R. 150-155) transcripts indisputably clarifying that was in their possessions. Additionally, November 26th 2018 Rhode Island *Sex Offender* Leveling Board risk assessment report utilizing 3 main Actuarial Risk Assessment Tools Static 99R, Static 2002R, and Stable 2007 were not ever administered or conducted on Plaintiff Tier level hearing on December 20th 2018, (P.R. 233-237) required under guidelines approved Rhode Island *Sex Offender* Registration Board (RISORB) appointed by Gina Raimondo (2015-2021). Honorable Massachusetts Superior Court judgement and probationary terms were also not provided to this governor appointed Board. Rhode Island (SOCN) writer Defendant V. Lisi, although had provided initial Falmouth Massachusetts police narratives collected during investigation, however did not obtain secondary round of police narratives which were contradicting. 2006 Falmouth District Court cross examination by grand jury, concluded victim and witnesses had provided much false and misleading information. Which is why SORNA require *"Initial Conviction"* state to implement initial registration under § 117 et seq. Defendant V. Lisi, however does mention review of **_INFACT SYSTEM_** identifying *"Inter-State"* compact probation transfer, proving Rhode Island would in fact had been in

possession of respective materials at time (P.R 66,237). However, if that information had been yielded to respective Rhode Island *Sex Offender* Leveling Tier Board that subject matter was being collected for, it would have been clear Plaintiff was never required to have *Sex Offender* designation under SORNA at all. Negligent Leveling Tier process being required action under SORNA of those being subject under § 111 et seq. However, Rhode Island *Sex Offender* Leveling Tier Board was in fact aware of complex jurisdictional and residential change, as Plaintiff Tier level designation certified letter and notices had been mailed to Plaintiff home address in Massachusetts. Exposing that there was no fair due process conducted during hearing, and also *"capable of abating danger"* government entity *"had actual or constructive knowledge of perilous circumstances"* which that had arisen. (P.R. 242)

Rhode Island Attorney General RI §42-1-2 another *"capable of abating danger"* government entity which having *"had actual or constructive knowledge of perilous circumstances"*. Rhode Island Attorney General Investigation Detective John Rabbitt listed as defendant had obtained Plaintiff registration form from North Providence Police. Once realizing Plaintiff had no longer been a Rhode Island resident for (352 days), Rabbitt being *"capable of abating danger"* and having *"had actual or constructive knowledge of perilous circumstances"* could have communicated his investigation with respective Attorney General to rectify, instead chose to enter into Massachusetts jurisdiction to verify Plaintiff out of state place of employment by conducting his *Sex Offender* investigation matter. (P.R. 287-289)

North Providence Police Department another *"capable of abating danger"* government entity which having *"had actual or constructive knowledge of perilous circumstances"*. Defendants of North Providence Police Department on behalf of Plaintiff request, attempted to contact respective governmental entities to correct and abate matter from 2013-2018 (P.R. 134-

155,161-167,201-230), Additionally, continued again after Plaintiff was no longer a Rhode Island resident. October 3rd 2018 after Plaintiff North Providence Police Detective Christopher Petteruti (P.R. 213) advised Detective Daniel Biafore *"he never charged you, so this is his paperwork to charge you, but he never actually filed,* Detective Daniel Biafore ***"capable of abating danger".*** attempted to do so, however those entities were same entities whom negligently administered said actions to begin with. Again, proving higher Rhode Island administrative agencies ***"had actual or constructive knowledge of perilous circumstances".*** (P.R. 150)

Additionally, Rhode Island Superior Court Honorable Judge Flynn and Chief Assistant Attorney General Laura Nicholson whom in a position being *"capable of abating danger"* initially proposed a level 1 reduction *(Risk Level I danger to community is a Sex Offender whose risk assessment indicates a low risk of re-offense)* regarding this *"Complex "Inter-State" Jurisdictional"* matter. Reducing to 15-year FBI National *Sex Offender* Registry designation which Rhode Island and Massachusetts would be federally required to negligently maintain as having ***"had actual or constructive knowledge of perilous circumstances"***, However promptly following Rhode Island Superior Court next hearing, Honorable Judge Flynn and Chief Assistant Attorney General Laura Nicholson recanted this position in its sole entirety as they were ***"capable of abating danger",*** thus vacating entire actions and upholding Plaintiff 2007 Massachusetts Honorable Superior Court judgement. (P.R. 336)

<ins>Lastly, the 3rd distinct element is</ins> "The *state, having been afforded a reasonable amount of time to eliminate dangerous condition, failed to do so".* Plaintiff had been on probation from 2007-2013 by Massachusetts Superior Court and under administrative supervision by Rhode Island via *"Inter-State"* compact ICOS system. (P.R. 66) 5 years of

documented evidence would have been sufficient to validate Plaintiff was not required to register as a *Sex Offender* under state statutes or federal SORNA Law. Over one year (427 days) continued from July 13th 2012 to September 13th 2013 as Rhode Island resident went unattested before defendant Joan Collins *"capable of abating danger"* issued National NCIC arrest warrant for *failure to register* under her individual capacity, triggering chain of events before this United States District Court. As mentioned, Retired Rhode Island State Police Colonel Steven O'Donnell again *"capable of abating danger"* was Collins respective superior controlling two *Sex Offender* units referred in Rhode Island annual report of 2013. (P.R 111-117) "*"Inter-State" Jurisdictional"* conflict which had arisen, should and been obviously noticeable internally within Rhode Island State Police official administrative capacity. Colonel Steven O'Donnell being appointed supervisor which either to approve or deny investigative circumstantial measures which his unit was assigned to under governorship by Lincoln Chafee (2011-2015), which then proposing that evidence to engage help of Rhode Island Attorney General prior to contacting Department of Justice *Sex Offender* Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART.Gov), and United States Marshal Service under SORNA law, as he did not. If defendant Collins in fact had made a negligent clerical mistake, Colonel Steven O'Donnell, and or Rhode Island Attorney General *"The state, having been afforded a reasonable amount of time to eliminate dangerous condition, failed to do so"*, could have corrected circumstances promptly. It is virtually inconceivable Colonel Steven O'Donnell, Colonel Ann Assumpico, or Colonel James Manni was un-aware begs to differ whether defendant Collins chose to administer and utilize state and federal resources by her individual capacity, or by way of official capacity. Three appointed State Police Colonel terms assigned all under Rhode Island governorship should be considered *"the state, having been afforded a reasonable amount of time to eliminate*

*dangerous condition, failed to do so"*, (P.R. 118,119) September 13th 2013 National NCIC Rhode Island State Police arrest warrant has been noted as Plaintiff was in fact never arrested under official capacity. When Plaintiff instructed to arrive at North Providence Police Headquarters, Plaintiff was advised this was a civil matter as Plaintiff produced subjective 2007 Massachusetts Honorable Superior Court judgement documents. *"The State, having been afforded a reasonable amount of time to eliminate dangerous condition, failed to do so".* North Providence Police Detective Daniel Biafore advise it was a clear mix-up and a reasonable amount of time was needed to clarify, as he was initially supplied with Plaintiffs 2007-2012 probationary period (P.R 66) and Massachusetts judgment relief documentation (P.R. 67) on 9/18/2013. However still forcing Plaintiff to take part in mugshot, finger printing, and completion of registration form under § 114 of SORNA. Yearly required completion of keeping current registration forms § 113 followed, otherwise advised failure to do so § 113 (e) requiring term of imprisonment to exceed more than 1 year. Additionally, under Rhode Island General law an additional *Sex Offender* criminal charge would be applied. Plaintiff in following years other than national NCIC arrest warrant, was unaware of Rhode Island State Police individual capacity until advised by North Providence Police Detective Christopher Petteruti whom read 2013 affidavit highlighting defendant Joan Collins individual capacity (P.R 201) solely to be kept internally. Continual enforcement subject to SORNA registration took place from 2013 up to 2018 prior to Plaintiff changing residency to Massachusetts. As mentioned previously Detective Christopher Petteruti had on several occasions acted as *"capable of abating danger"* government entity which *"had constructive knowledge of perilous circumstances".* (P.R. 134-155,161-167,201-230), However, those same entities were whom negligently administered said actions to begin with again proving *"The state, having been afforded a reasonable amount of time to*

*eliminate dangerous condition, failed to do so"* totaling (5 years 19 days). United States District Court shall assume Rhode Island was clearly afforded a reasonable amount of time to correct perilous and dangerous condition. Additionally, SORNA § 113 (d) and 117 (b) suggests *"initial registration"* may not be feasible with required 3 days prior to sentencing, which Attorney General can proscribe alternative measures to correct a problem regarding timing, though primarily reserved if subject is unconscious or hospitalized. Under SORNA § 125 (b) requires SMART.Gov to aid and inform jurisdiction identified as Rhode Island Attorney General in correcting matter. Suggesting all Rhode Island convicted *Sex Offenders* are released into state population without any Tier level hearing, required under guidelines under governorship by Gina Raimondo (2015-2021), and Parole Board exceeding (5 years 19 Days) would be in violation of Rhode Island and federal SORNA law, and additionally just preposterous. One would assume *"they owed Plaintiff a special duty"* and that *"The state, having been afforded a reasonable amount of time to eliminate dangerous condition, failed to do so"*.

Once Plaintiff changed jurisdictional residency back to Massachusetts on October 1st, 2018, following defendants were so negligent to entire sovereignty to Rhode Island as a whole, by mismanaging notification of Rhode Island *Sex Offenders* and federal SORNA laws, or following defendants simply knew Plaintiff complex *"Inter-State"* circumstance was not a serious concern from nature. In either circumstance a complete disregard to laws and public safety to which SORNA defines to protect is atrocious. Following (56 days) on November 26th, 2018 Rhode Island Leveling Board appointed under governorship by Gina Raimondo (2015-2021), concluded risk review without administering required Actuarial Risk Assessment Tools Static 99R, Static 2002R, and Stable 2007, which *"they owed Plaintiff a special duty"*, furthermore on December 20th, 2018 (24 days) later designated level II *(Risk Level II danger to*

community is a *Sex Offender whose risk assessment indicates a moderate risk of re-offense)* certified letter (P.R. 242) mailed to Plaintiff home in Massachusetts totaling (80 more calendar days) suggesting " ***The state, having been afforded a reasonable amount of time to eliminate dangerous condition, failed to do so*** as Rhode Island *Sex Offender* notification unit SOCN and North Providence Police were advised Plaintiff on October 1st 2018 of residency and jurisdictional change (P.R. 199,200). Finally, such example following (2 years 8 days) of jurisdictional peril is clear defendants made and chose conscious decision not to remedy citation in a ***"reasonable amount of time"*** in fact requiring Plaintiff to take part in a lengthy and consuming Rhode Island Superior Court proceeding from July 5th, 2019 to January 9th 2020 some (6 months 8 days) to vacate and reverse such actions. On January 9th 2020 Rhode Island Honorable Superior Judge Flynn did relay if Plaintiff did not contest this unjust act, these actions would have continued for well into the future. It's evident that following defendants were never interested in ending traumatic levels of peril on Plaintiff in any ***"reasonable amount of time to eliminate dangerous conditions"***. It is additionally noted on **December 5th 2022 some (2 years 10 months)** after Rhode Island Honorable Superior Judge Flynn **4-line items** judgement, Rhode Island Public Judiciary Public E-service Access publicportal.courts.ri.gov identifies Rhode Island Attorney General vs Michael Cogley PM-2019-7278 court proceeding as *Sexually Violent Predator case type*. While order 3) states **"That all records and indications of the Petitioner's status as** *Sex Offender* **in Rhode Island shall be destroyed forthwith and without unnecessary delay."**

## FEDERAL SORNA TITLE I § 131 IMMUNITY

Over last two decades federal definition of *Sex Offender*s has been reclassified many times under United States Code (U.S.C) law. Early 2000's enacted *42 U.S.C §14071 (Jacob*

*Wetterling Crimes Against Children and Sexually Violent Offender Registration Program)* (P.R. 18-25,34) which repealed to then be replaced by *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act* enacted by 109th United States Congress on July 27th 2006 (P.R.35-55). Relevant definition sec §§ of Title 1 has been identified under sec §§ 111 as whom was subject to SORNA. Included in sec §§ 111 (5) is Amie Zyla expansion of Sex Offense Definition, known as *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act.*

## SECTION 131. IMMUNITY FOR GOOD FAITH CONDUCT.

*Federal Government, jurisdictions, political subdivisions of jurisdictions, and their agencies, officers, employees, and agents shall be immune from liability for good faith conduct under this title.*

## CONTENDS FEDERAL SORNA TITLE I § 131 IMMUNITY

It is presumed to imply immunity for good faith would be subject to full authentic compliance of *42 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act* and all subdivisions within Title 1 et seq (P.R. 35-55,82-90). Applying immunity (P.R. 37) for application which Plaintiff, Pro Se, Mr. Michael Cogley was never subject initially is likely moot. United States Department of Justice has identified "While statutory definitions of sex offenses falling within SORNA's registration categories will vary from jurisdiction to jurisdiction, meaning of *"Convicted"* for purposes of SORNA is a matter of *"Federal Law"*, and its applicability is not determined by terminology a jurisdiction uses in referring to disposition of a criminal case".

## RHODE ISLAND §11-37.1-17 IMMUNITY 2013-2018 ERA

*42 U.S.C. §14071 – 14073 Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program* (P.R. 18-25,34) was repealed and replaced by *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act* enacted by 109th United States Congress on July 27th 2006 implemented by President George W. Bush same day.

*Rhode Island Sexual Offender Community Notification Guidelines R.I. General Laws §11-37.1-1 et seq* guidebook approved by Rhode Island Parole Board appointed under governorship Gina Raimondo (2015-2021) **had been explicitly utilizing the repealed** *42 U.S.C. §14071 – 14073 Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program* from *July 10th 2007 through November 23rd 2011* (P.R. 61-65), again *November 23rd 2011 through July 11th 2012* (P.R 92-96), again *July 11th 2012 through June 10th 2013* (P.R. 97-101), again *June 10th 2013 through June 5th 2014* (P.R. 105-109), again *June 5th 2014 through December 7th 2016* (P.R.125-129), again *December 7th 2016 through January 20th 2019* (P.R. 156-160). Rhode Island admitting to the regulatory issues (P.R. 238,239,243-245) While expressing federal compliance for purposes of (Title 1) (P.R. 41-55). of *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act* to gainfully accept *34 U.S.C. §10151 "Edward Byrne Memorial Justice Assistance Grant Program"* (P.R. 102-104,194,195,263,264,308,309,339,340) which governorship Gina Raimondo (2015-2021), had not enacted into Rhode Island General Law. (P.R. 170-193,198,243-245,

Respectfully, the Department of Justice however did allow Attorney Generals 3-year grace periods to phase out and replace with final version federal SORNA law or be mandatorily subject to 10% grant reduction SORNA § 125 of *34 U.S.C. §10151 "Edward Byrne Memorial*

*Justice Assistance Grant Program"*, otherwise would be subject to *34 U.S.C. §20927 "Failure of Jurisdiction to Comply with SORNA".* (P.R. 351-353)

Rhode Island General Law and *Rhode Island Sexual Offender Community Notification Guidelines R.I. General Laws §11-37.1-1 et seq* had been notably implementing *42 U.S.C. §14071 – 14073 Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program* from November 5th 2003 until February 28th 2012. Rhode Island Senator Doyle, Gallo, Dipalma and Tassoni referred to Rhode Island Senate Judiciary to comprehensively study, and legally specified constitutional and logistical concerns to Rhode Island General Law regarding *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act.* It was not until March 1st 2018, S2586a sponsored by Rhode Island Senator Gallo, Colney, Prata, Goodwin, and Jabour introduced the update to correct the outdated statewide SORNA registry (P.R. 170), be replaced with new computerized system under act no. 2018-259, finally approved by governorship Gina Raimondo (2015-2021) on July 2nd 2018. (P.R. 170-195,198)

Hence 12 years later *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act,* including subsection *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C,* Rhode Island would finally be compliant under Title 1 (P.R. 41-55) federally regulated SORNA law by governorship Gina Raimondo (2015-2021) (P.R. 170-195,198) to actually take public effect July 1st 2020. , Almost (6 months) after Plaintiff's vacated Rhode Island Superior Court judgement. November 30th 2018 just 4 days after Plaintiffs Rhode Island Leveling Board appointed under governorship by Gina Raimondo (2015-2021) level II *(Risk Level II danger to community is a Sex Offender whose risk assessment indicates a*

*moderate risk of re-offense),* Rhode Island Parole official Degnan proposed repeal to 242-RICR-XXX-XX-2745, Public Notice letter stating ***"however, these guidelines were erroneously codified as regulations"*** referring to incorrectly utilizing wrong United States Code SORNA Law *42 U.S.C. §14071 – 14073 Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program* (P.R. 243-245)

### *RHODE ISLAND GENERAL LAW § 11-37.1-17 § § 14.0 GOOD FAITH IMMUNITY*

*§ 14.1 -Any person who performs any act, or fails to perform any act hereunder, shall have good faith immunity from any liability, civil or criminal, that might be incurred as a result of the performance of or failure to perform any act hereunder.*

*(Approved by RI Parole Board 12/5/2015 ERL ID #7726)*

### CONTENDS RHODE ISLAND §11-37.1-17 IMMUNITY 2013-2018 ERA

Rhode Island General Law and *Rhode Island Sexual Offender Community Notification Guidelines R.I. General Laws § 11-37.1-3. Registration required — Persons covered.*

*(A) Any person who, in this **or any or jurisdiction:** (1) has been **convicted** of a criminal offense against a victim who is a minor, (2) has been **convicted** of a sexually violent offense, (3) has been determined to be a sexually violent predator, (4) has committed an aggravated offense as defined in § 11-37.1-2, (5) is a recidivist, as defined in § 11-37.1-4, (6) has been **convicted** of a federal offense, (7) has been **convicted** of a foreign offense, (8) has been **convicted** of a military offense, or (9) has been **convicted** of a violation of § 11-37.1-10 shall be required to register his or her current address with local law enforcement agency having jurisdiction over city or town in which person having duty to register resides for time period specified in § 11-37.1-4.*

(D) *"subject to registration in the state"*

Part (d) *"if a person is **REGISTERED** as a Sex Offender in **ANOTHER STATE** for an offense which, if committed within the jurisdiction of this state, would require the person to register as a Sex Offender, then that person, upon moving to or returning to this state, shall register as a Sex Offender in the same manner as if the offense were committed within Rhode Island"*

United States Department of Justice has identified "While statutory definitions of sex offenses falling within SORNA's registration categories will vary from jurisdiction to jurisdiction, the meaning of *"Convicted"* for purposes of SORNA is a matter of *"Federal Law"*, and its applicability is not determined by terminology a jurisdiction uses in referring to disposition of a criminal case".

However, for the purpose of SORNA, term *"convictions"* is widely discussed, as convictions terminology can vary from jurisdiction to jurisdiction. Sometimes vacated convictions, adjudicated juvenile convictions, tribal convictions or convictions that predate *42 U.S.C. §14071 – 14073 Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program* an or *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act* and or foreign convictions under *International Megan's law* can vary from jurisdiction to jurisdiction. Federal SORNA law has made it clear it establishes national *"baseline"*, or *"floor"* as they also refer to it, however states can decide how high *"ceiling"* should be for supervision and registration period criteria. For example, an *"initial registration"* jurisdiction may subject all individuals whom are identified as *Sex Offenders* under SORNA law, to lifetime registration under level Tier-III criteria, in effect such jurisdiction would still be in federal SORNA compliance, effectively allowing jurisdiction to raise concerns to maximum *"ceiling"* practices. However, whom is identified as initially being subject is below threshold or

*"baseline",* and or *"floor"* as Department of Justice has identified, whom of which would not be subject initially.

State law and federal law conflicted in Plaintiff *"Inter-State"* matter, it is understood federal preemption will displace state law, due to *Supremacy Clause* article VI, paragraph 2 of *United States Constitution* establishing federal constitution, and federal law commonly yields precedence over state constitution law.

*Rhode Island Sexual Offender Community Notification Guidelines R.I. General Laws § 11-37.1-17*

*sec §§ 14.0 Good Faith Immunity*

*14.1 Any person who performs any act, or fails to perform any act hereunder, shall have good faith immunity from any liability, civil or criminal, that might be incurred as a result of the performance of or failure to perform any act hereunder.*

*(Approved by RI parole Board 12/5/2015 ERL ID #7726)*

Plaintiff contends that Rhode Island General Law and *Rhode Island Sexual Offender Community Notification Guidelines R.I. General Laws* guidebook had been utilizing incorrect *42 U.S.C. §14071 – 14073 Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program* which had been federally repealed, so such establishing state general law § 11-37.1-17 sec §§ 14.0 good faith immunity would be likely another moot point.

Additionally allowing state general law § 11-37.1-17 sec §§ 14.0 good faith immunity if perhaps Rhode Island had in fact implemented correct *42 U.S.C. §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act* , and to include required *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C* pertaining matter, Plaintiff would still not be

subject to Federal or *R.I. General Laws § 11-37.13 Registration required — Persons covered*,

D) *"subject to registration in state"*. Again, likely suggesting another moot point.

Lastly, Rhode Island General Law and *Rhode Island Sexual Offender Community Notification Guidelines R.I. General Laws* guidebook requires in addition to registration requirement forms, but also Tier I-III Leveling by Rhode Island Leveling Board appointed under governorship by Gina Raimondo (2015-2021 to be performed in a timely manner. Plaintiff had been a Rhode Island resident during this 2013-2018 era, one would assume respective administration having 5 years to apply regulated Tier I-III had been suffice to prove a timely manner. However, Rhode Island General Law and *Rhode Island Sexual Offender Community Notification Guidelines R.I. General Laws* guidebook does not inform or suggest *"Inter-State"* overstepping *""Initial Jurisdiction""* or terms such *"Convicted"* for purposes of SORNA being actually a matter of *"Federal Law"*.

Again, for *R.I. General Laws § 11-37.1-17 sec §§ 14.0 Good Faith Immunity* purposes it would essentially be authorizing a license to kill without any disregard to actual federal question *"Inter-State"* subject matter as never disclosed, stated, or discussed in *Rhode Island Sexual Offender Community Notification Guidelines book R.I. General Laws § 11-37.1-17 (Approved by RI parole Board 12/5/2015 ERL ID #7726)*

### RHODE ISLAND STATE IMMUNITY 2018-2020 ERA

Plaintiff, Pro Se, Mr. Michael Cogley was an individual whom was not jurisdictionally subject to **ANY** registration requirements under Rhode Island General Law and *Rhode Island Sexual Offender Community Notification Guidelines* after he was no longer a resident on October 1st, 2018. (P.R. 199,200)

October 5th 2018 (P.R. 232) defendant Rhode Island Attorney General provided a Bureau of Criminal Identification "BCI" identified Plaintiff was a Registered *Sex Offender* in Rhode Island. Orwellian logic described as *"attitude of disinformation, manipulation of past, brutal policy of draconian control by surveillance, and denial of truth practiced by repressive government"*.

(56 days) after jurisdictional residency change on November 26th 2018, Rhode Island Leveling Board *Risk Assessment Report* conducted by writer defendant V. Lisi, had been provided with *"disinformation"*. This disinformation such as inaccurate initial police narrative had stated two victims, additionally writer defendant V. Lisi disregarding dozens of additional supplemental police narratives added some 2 weeks after in 2004. This disinformation was concluded before Massachusetts grand jury testimony of Falmouth Police Sergeant Jeffery Smith on February 27th 2006. Additionally, writer defendant V. Lisi identified Plaintiff date of birth D.O.B *choosing to specify the actual "singular" victim D.O.B instead*. Moreover, this *Risk Assessment Report* was to utilize 3 main Actuarial Risk Assessment Tools Static 99R, Static 2002R, and Stable 2007 as required under Rhode Island *Sex Offender* Registration Board (RISORB) guidelines appointed by Gina Raimondo (2015-2021), **were not ever administered or conducted**.

Furthermore (80 days) after jurisdictional residency change on December 20th, 2018, the designated level II *(Risk Level II danger to community is a Sex Offender whose risk assessment indicates a moderate risk of re-offense)* certified letter (P.R. 242) mailed to Plaintiff home in Massachusetts conveyed *"manipulation of past"* as Plaintiff was not subject under federal SORNA or Jurisdictional Rhode Island General Law and *Rhode Island Sexual Offender Community Notification Guidelines*. Most notably January 9th 2020 Rhode Island Superior Court vacated (P.R. 336) Rhode Island actions, in which upholding Plaintiff 2007 Massachusetts

Honorable Superior Court judgement under second line item, *That Petitioner shall not be required to register as Sex Offender in Rhode Island on basis of his guilty pleas to certain criminal offenses in Massachusetts in July 2007.* Understanding that Rhode Island's respective Superior Court interpreted the Plaintiff held **no Sex Offender obligations during era entirely**, not just because of jurisdictional residency change on October 1st 2018.

On February 21st 2019 Plaintiff applied for Federal Bureau Investigation "RAP SHEET" check (P.R. 265-267). Witnessing inaccurate *"manipulation of past"* by a federal FBI entity advised Plaintiff to Speak with Department of Justice *Sex Offender* Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART.Gov) regarding "*Inter-State*" jurisdictional matter.

Rhode Island Attorney General Investigation Detective John Rabbitt knowingly aware (352 days) after jurisdictional residency change of October 1st 2018, could have communicated what complexities arose regarding jurisdictional concerns with respective Attorney General superiors. Instead, defendant Detective John Rabbitt whom being *"capable of abating danger"* and having *"had constructive knowledge of perilous circumstances"*, reactively chose *"brutal policy of draconian control by surveillance"* in which solely electing individual capacity to cross into Massachusetts jurisdictional sovereignties without Massachusetts jurisdictional enforcements knowledge to verify and surveil Plaintiff out of state place of employment. (P.R. 287-289)

Contending Rhode Island General Law and *Rhode Island Sexual Offender Community Notification Guidelines R.I. General Laws* guidebook December, 7th 2016 through January 20th 2019 had been utilizing a federally repealed *42 U.S.C. §14071 – 14073 Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program,* (P.R.170-193,238-240) in which Rhode Island Governor Gina Raimondo had not yet implemented correct *42 U.S.C.*

*§16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act* ,(P.R. 198) and to include required *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C* as required by federal law for Title 1 (P.R. 41-55) compliance. Plaintiff would still not be subject to federal or *R.I. General Laws § 11-37.1-17 sec §§ 14.0* good faith immunity would likely be another moot perspective.

Rhode Island Honorable Superior Judge Flynn on January 9th 2020 **4-line items** judgement, 3) states **"That all records and indications of Petitioner's status as *Sex Offender* in Rhode Island shall be destroyed forthwith and without unnecessary delay."** Rhode Island Public Judiciary Public E-service Access known to Rhode Islanders as ricourtconnect.gov identifies Rhode Island Attorney General vs Michael Cogley PM-2019-7278 closed court proceeding as *Sexually Violent Predator case type*. (P.R. 363,364) It's evident Rhode Island defendants collectively were not and are not (2 years 10 months) after, interested in ending the traumatic levels of peril on Plaintiff, understandably because they are in *denial of truth practiced by repressive government"* as noted by Orwellian logic

Concluding that to apply *R.I. General Laws § 11-37.1-17 sec §§ 14.0 Good Faith Immunity* shall interpret overstepping of federal question existing under SORNA *"federal law"* 28 U.S.C 1331, by subjecting against an individual whom not jurisdictionally subject to <u>ANY</u> registration requirements some (2 years 10 months) after residency change prior on October 1st, 2018 would be another likely moot perspective.

## RELEVANT PROCEDURAL TIMELINE

- 7/09/2010 United States Department of State issued Plaintiff, Pro Se, Mr. Michael Cogley US Passport valid until 7/08/2020 with no *Sex Offender* designations for any

global entries. United States Department of State 22 U.S.C 212 (b) *International Meghan's Law* understood Plaintiff not federally subject to *Sex Offender* SORNA 22 C.R.F. 51.60 (g). (P.R. 91)

- 9/13/2013 Rhode Island State Police (RISP), and Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) Joan Collins administers under individual capacity the affidavit to issue a National Arrest Warrant for *"Failure to notify & register as a Sex Offender"* entering Plaintiff in National Crime Information Center (NCIC) Database (P.R. 118,119).

- 9/17/2013 11:34am Verizon wireless voicemail from North Providence Police Department (NPPD) Detective Dan Biafore asking Plaintiff to please call him back 401-231-4533 ext.174

- 9/18/2013 Following day North Providence Police Department (NPPD) call Plaintiff again while in Massachusetts. Detective Dan Biafore, demanded Plaintiff return back to Rhode Island for urgent matter to surrender at North Providence Police Department (NPPD) Headquarters. (P.R.120,121)

- 9/18/2013 Detective Dan Biafore required Plaintiff sign North Providence Police Department *Sex Offender* Registration Form or face immediate arrest. Fingerprints and mugshots taken below in prisoner intake. Detective Dan Biafore advised no future *Sex Offender* Tier Leveling would occur as Plaintiff was compliant with North Providence Police Department (NPPD) requests. Actions just for internal purposes; no images or descriptions would be publicly published. Plaintiff advised comply with North Providence Police Department (NPPD) and Rhode Island State Police (RISP) requests or be subject to criminal charges. (P.R. 120,121)

- 9/18/2013 Constant peril began from North Providence Police Department (NPPD). Plaintiff advised calls to Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) went unreturned by Detective Petturtti.

- 10/15/2014 North Providence Police Department (NPPD) required Plaintiff renew North Providence Police Registration *Sex Offender* Form. Plaintiff under no impression was to become an annual matter from prior 9/18/2013 discussion Detective Dan Biafore. Plaintiff advised calls to Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) went unreturned by Detective Petturtti. (P.R. 123,124)

- 10/15/2015 North Providence Police Department (NPPD) requested Plaintiff renew North Providence Police Registration *Sex Offender* Form. Plaintiff advised calls to Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) went unreturned by Detective Petturtti. (P.R. 130,131)

- 3/8/2016 Plaintiff on Caribbean vacation island of Vieques, Commonwealth of Puerto Rico, a US territory, considered visiting Jamaica and Dominican Republic for day trips, would require valid U.S. passport was required which he held in his possession. Unmarked U.S. Passport 22 U.S.C 212 (b) ***International Meghan's Law*** without *"Sex Offender"* SORNA 22 C.R.F. 51.60 (g). designations prompted major perilous concern. (P.R. 91)

- 11/28/2016 North Providence Police Department (NPPD) requested Plaintiff renew North Providence Police Registration *Sex Offender* Form. Plaintiff advised calls to Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) went unreturned by Detective Petturtti. (P.R. 132-149)

- 12/1/2016 North Providence Police Department (NPPD) Detective Christopher Petteruti advised Plaintiff he spoke with Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) confirming Plaintiff not subject to *Sex Offender*, which Plaintiff packet sent over to AG. Detective Christopher Petteruti advised Plaintiff he would provide answer following day. (P.R. 150-155)

- 3/7/2017 North Providence Police Department (NPPD) *Sex Offender Unit* arrive at Plaintiff residence. Plaintiff confused as not subject for another 8 months registration. Officers in marked *Sex Offender Unit* jackets there to perform *Compliance Address Check* demand new North Providence Police Registration *Sex Offender* Form obtained. *Sex Offender Unit* officers advised Plaintiff *Sex Offender* level was marked unknown, demanding Plaintiff would know answer. *Sex Offender Unit* officers confused over matter, and assumed Plaintiff volunteered for Sex *Offender* Registrations. (P.R. 161-167).

- 10/30/2017 North Providence Police Department (NPPD) requested Plaintiff renew North Providence Police Registration *Sex Offender* Form. Plaintiff advised calls to Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) went unreturned by Detective Petturtti. (P.R. 168,169)

- 03/17/2018 North Providence Police Department (NPPD) requested Plaintiff renew North Providence Police Registration *Sex Offender* Form. Plaintiff advised calls to Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) went unreturned by Detective Petturtti. (P.R. 196,197)

- 4/3/2018 Plaintiff requested an attorney call Rhode Island *Sex Offender* Registration Board (RISORB). "Celeste" confirmed Plaintiff was not required to register in Rhode Island.

- 9/28/2018 Plaintiff at work in Attleboro, Massachusetts on Friday afternoon when Verizon wireless call received from Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit). Woman named Joanne advising Plaintiff SOCN unit referred by Rhode Island *Sex Offender* Registration Board (RISORB) to apply Tier Level under federal SORNA regulations. Plaintiff, advised Joanne for most part working and living out of Massachusetts to aid his mother's failing cognitive health. Plaintiff had just advised North Providence Police Department (NPPD) Detective Petturtti recently he would be relocating back to Massachusetts, and explain how that process works. Joanne advised Plaintiff Rhode Island *Sex Offender* Community Notification Unit (SOCN unit), Rhode Island *Sex Offender* Registration Board (RISORB) ***must absolutely vote on a Level due to compliance and federal regulations (Sex Offender Registration and Notification Act SORNA. Under Adam Walsh Child Protection and Safety Act of 2006).*** Plaintiff advised Joanne he did not think he had an obligation to register as a *Sex Offender*. Joanne advised to Plaintiff, "*you're on the books, so we need a level for you, we need to inform the public of your convictions*". Joanne requested Plaintiff come to Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) to be interviewed following week, and to prepared for very personal questions prior to Rhode Island *Sex Offender* Registration Board referral from her. Plaintiff advised was fully employed in a salaried position currently taking that phone call at work located in Massachusetts. Joanne demanded it was urgent under federal SORNA. Plaintiff advised he did not feel comfortable without an Attorney and would respond following week. Joanne responded dissatisfied n advised Plaintiff *"Not to play hardball, which is not how you want to play this game"*.

## *JURISDICTIONAL RESIDENCY CHANGE OF PLAINTIFF*

- 10/1/2018 Following Monday, 3 days after Plaintiff taken day off from work. Plaintiff entered Massachusetts Registry of Motor Vehicles RMV applying to reinstate 2001 Massachusetts Driver's License MA-S16730800, and reinstated his same Boxford Massachusetts residency. Proof of residence supplied as Plaintiff in fact a trustee of family trust having been holding equable title over Massachusetts address for many years prior. Rhode Island Driver's license RI2511796 surrendered to Massachusetts Registry of Motor Vehicles RMV. Plaintiff then entered Boxford Massachusetts Town Hall Canvassers Office to register voting privileges as Republican. Rhode Island General Law *(44-30-5. "Resident" and "nonresident" defined).* Plaintiff was no longer a domicile Rhode Island Resident. (P.R. 199,200)

  10/2/2018 Following day, Plaintiff returns phone call to Joanne at Rhode Island *Sex Offender* Community Notification Unit (SOCN unit) advising of jurisdictional residency change. Joanne advised it did not matter, *"You are in national database and now require a level. You visit Rhode Island to return something at Walmart, we need to let public know of your Massachusetts Sex Offender conviction status".* Additionally stating Rhode Island State Police (RISP) had listed Plaintiff on National Crime Information Center (NCIC) Database and therefore now federally required to assign Tier Level as one had not been assigned yet. Plaintiff questioned Joanne why Rhode Island State Police (RISP) and Rhode Island *Sex Offender* Community Notification Unit (SOCN unit) had waited 5 years before a Tier Level request from Rhode Island State Police *Sex Offender* Registration Board (RISORB) was made. Plaintiff not given direct answer regarding time delay. Joanne demanded Plaintiff was in Rhode Island State Police (RISP) *Sex Offender*

computer system, so subject matter will go before Rhode Island State Police *Sex Offender* Registration Board (RISORB) per Rhode Island law, regardless of what state he lives in. Joanne advised sending file to Rhode Island State Police *Sex Offender* Registration Board (RISORB) as *Sex Offender* noncompliant.

- 10/3/2018 Plaintiff entered North Providence Police Headquarters (NPPD). Still concurrent under previous North Providence Police Registration *Sex Offender* Form. Plaintiff wanted to advise in person of jurisdictional residency change by providing driver's license MA-S16730800 to North Providence Police Department (NPPD) Detective Petturtti. (P.R. 199,200) Detective Petturtti advise he would need to contact Rhode Island State Police (RISP) regarding matter to transfer *Sex Offender* requirements over to Massachusetts. North Providence Police required in meantime to renew again the Registration *Sex Offender* Form while he was there to safeguard against future criminal charges. (P.R. 199-231)

*RI 11-37.1 Sex Offender Laws.*

*Part (b) "subject to registration in the state"*

*Part (d) "if a person is **REGISTERED** as a Sex Offender in **ANOTHER STATE** for an offense which, if committed within the jurisdiction of this state, would require the person to register as a Sex Offender, then that person, upon moving to or returning to this state, shall register as a Sex Offender in the same manner as if the offense were committed within Rhode Island"*

*Plaintiff had absolutely no duty or obligation to **REGISTER** in another state to begin with.*

- 10/05/2018 Plaintiff entered Rhode Island Attorney General to obtain Rhode Island Background Check Inquiry (BCI), provided with markings **No Criminal Record**, however marked with Stamp **"Registered Sex Offender"**. Rhode Island Attorney General

admins discussed privately approximately 40 minutes to conclude undisclosed issue with Rhode Island State Police (RISP). (P.R. 232)

- 11/26/2018 *(56 days)* after Plaintiff no longer domiciled resident of Rhode Island, Governor Gina Raimondo appointed Rhode Island *Sex Offender* Registration Board (RISORB) members *(Bonita Cade, J.D., PhD Detective Kyle Shibley, RISP Captain Alyssa DeAndrade, Providence PD Marlene Roberti, MPA Jason Lyon, LICSW JoAnne Waite, LMFT Jessica Nash, LCSW, DCYF)* elected and voted upon Plaintiff *Sex Offender* Level as II *(Risk Level II danger to community is a Sex Offender whose risk assessment indicates a moderate risk of re-offense)* which had been regulated by *(Sex Offender Registration and Notification Act SORNA, additionally required Under Title 1 of Adam Walsh Child Protection and Safety Act of 2006)*. Incorrect date of birth D.O.B noted actually was consensual victim. **Unable to administer 3 following *Rhode Island State Law Required* Actuarial Assessment Instruments, Static-99r, Static-2002R, and Stable 2007.** Actuarial Risk Recidivism Assessment Instruments to estimate probability of individuals was noted as N/A *(Not Applicable)* on all 3 Leveling actuarial assessments. A 5/29/2004 Falmouth Police Department (FPD) initial *incorrect police narrative* somehow been improperly obtained and singularly used by Rhode Island *Sex Offender* Registration Board (RISORB) voting purposes. Unbeknownst by Rhode Island State Police *Sex Offender* Registration Board (RISORB), *these initial police narratives had later been discredited in Falmouth District Court February 26th 2006 by grand jury testimonies*, as inaccurately indicated two victims later found to have falsified information to Falmouth Police Department (FPD). Additionally, Massachusetts State Police Crime lab had no direct DNA or rape kits to prove event ever occurred. Victim

testified under oath it was consensual which she began the sexual acts on the Plaintiff. However, because of her age Commonwealth of Massachusetts brought Superior Court statutory inditements. (P.R.233-237)

- 12/20/2018 Plaintiff in Denver, Colorado for Christmas. Staying at Brown Palace Hotel. Literally residing in ***Theodore Roosevelt Presidential Suite***, historical landmark which Mr. and Mrs. Roosevelt would frequently stay (P.R. 241). Plaintiff mother back in Massachusetts received certified United State Postal letter from Rhode Island *Sex Offender* Registration Board (RISORB) regarding Plaintiff newly nationally published Rhode Island *Sex Offender* Status of Level II *(Risk Level II danger to community is a Sex Offender whose risk assessment indicates a moderate risk of re-offense)*. Just days before Christmas which mailed directly to Plaintiff's Massachusetts home address. (P.R. 242) From Theodore Roosevelts personal desk within Presidential suite, Plaintiff called Rhode Island *Sex Offender* Community Notification Unit (SOCN) unit and spoke with Joanne. Plaintiff extremely concerned about Level II *(Risk Level II danger to community is a Sex Offender whose risk assessment indicates a moderate risk of re-offense)* Status and how it would affect National or even Global travel as *Sex Offenders* have many limited civil liberties. Joanne irate Plaintiff was in Denver, Colorado demanding Plaintiff report to Colorado State Patrol (CSP) to inform of his *Sex Offender* Status. Joanne advised Rhode Island State Police would also be informing Colorado State Patrol (CSP) of Plaintiff presents.

*At this point Plaintiff has no idea whom his controlling State is or was. Is Plaintiff allowed to leave State? fly to Florida and or Colorado? Plaintiff has family all over Nation. Is Plaintiff a Registered Sex Offender? What are his restrictions regarding public notification?*

- 12/20/2018 Same day Plaintiff contacted Barnstable Massachusetts Superior Court to confirm no agencies of Rhode Island ever requested Plaintiff court records, specifically Rhode Island *Sex Offender* Registration Board (RISORB). Plaintiff advised to call Massachusetts Commissioner of Probation (617- 727-5300) to discuss whom had jurisdiction over complex ""*Inter-State*"' matter. Plaintiff advised directly from Massachusetts Commissioner of Probation was not required to any state of federal Sex *Offender* Requirements. Additionally, Plaintiff advised to seek council immediately regarding Rhode Island jurisdictional matter.

- 12/21/2018 Plaintiff had conversations with two highly qualified Rhode Island *Sex Offender* Criminal Defense Attorneys whom referred Craig V. Montecalvo, Esq.

- 12/29/2018 Craig V. Montecalvo, Esq. retained by Plaintiff

- 12/30/2018 Craig V. Montecalvo on Plaintiff behalf submits objection letter for appeal of *Sex Offender* Registration Level II before Honorable Rhode Island Superior Courts under Rhode Island Law (P.R. 246-262)

- 2/21/2019 Plaintiff obtains Federal Bureau of Investigation (FBI) criminal record report. *"Sex Offender Status"* was noted (P.R. 265-267). FBI contacted Plaintiff to Speak directly with Department of Justice *Sex Offender* Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART.Gov) regarding matter. Director and Senior Policy advisor to DOJ (SMART.Gov) advised hiring council was *"good idea"*.

- 2/26/2019 Certified United States Postal notice from Rhode Island *Sex Offender* Community Notification Unit (SOCN) left at Plaintiff home residence in Massachusetts. Noticed stated certified United States Postal letter require signature be left at Boxford, Massachusetts Post Office.

- 2/28/2019 Plaintiff certified United States Postal letter per Rhode Island General law under Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN) to comply federal (*Sex Offender Registration and Notification Act SORNA*) to validate out of state address verification mailed to previous Rhode Island address. (P.R. 268)

- 3/08/2019 Plaintiff met criteria to have Massachusetts Criminal Offender Record Information (CORI) be Sealed. Plaintiff rightfully waited many years to be privileged with this ability. However, could not be sealed as Plaintiff had obligations to register as *Sex Offender* in Rhode Island. (P.R. 269,270)

- 3/16/2019 7:00pm Rhode Island State Police (RISP) pulled Plaintiff over on route 138 just after bridge leaving Newport Saint Patrick's Day festivities. No citation issued, Plaintiff not speeding and Cadillac Escalade bearing Massachusetts Breast Cancer awareness plates BC-7899 registered to home address in Boxford Massachusetts (P.R. 196). Plaintiff had 2 other family occupants in vehicle. Plaintiff advised to step out of vehicle. Plaintiff outside vehicle Rhode Island State Police (RISP) asked or family members if they had known of Plaintiff's *Sex Offender* status and if they were in harm. Rhode Island State Police (RISP) Trooper whom discussing with Plaintiff if he had been drinking earlier. Plaintiff stated *"Having 2 Coors lights beer bottles possibly 7 hours prior while dining for lunch"*, Trooper responded *"So, you drank water"*? Plaintiff confused as is Trooper was asking if consumed plenty of water after beers. Trooper irritated as Plaintiff did not understand, Trooper clarified *"He was making a joke as Coors light is like drinking water"*, Plaintiff replied roadside before both Troopers, he did not think joking about jamming Plaintiff up regarding a DUI was a laughing matter. Second Trooper said, *"Valid point taken"* and stated Plaintiff was free to go.

- 3/18/2019 North Providence Police Department (NPPD) Detective Christopher Petteruti advised Plaintiff continue *Sex Offender* registration for his own protection from facing new Rhode Island criminal charges. Detective Christopher Petteruti advised Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) about Plaintiff jurisdictional change prior to (RISORB) level process (P.R. 271-281)

- 3/19/2019 North Providence Police Registration *Sex Offender* Form. North Providence Police Department (NPPD) advised were required to enforce address verification. Plaintiff stated his legal address was Boxford, Massachusetts. Plaintiff confused as Rhode Island *Sex Offender* Community Notification Unit (SOCN) already had verified his home address of Boxford Massachusetts with certified United States Postal letter. North Providence Police Department (NPPD) advised would not work, needing to write or choose a Rhode Island address for Registration *Sex Offender* Form. Plaintiff advised working in Attleboro; Massachusetts Plaintiff's long-time female life partner held sole ownership of her North Providence townhouse. Plaintiff advised to submit previous Rhode Island address again as was on record. (P.R. 282-285)

- 9/16/2019 5:26pm Plaintiff received Verizon wireless call 401-965-7026 from Rhode Island Attorney General Investigator John Rabbit. Investigator John Rabbit demanded meeting Plaintiff to see Rhode Island BCI received on 10/5/2018 immediately. Plaintiff advised Attorney Craig V. Montecalvo would respond to Investigator John Rabbit's demands. (P.R. 286)

- 9/17/2019 Rhode Island Attorney General Investigator John Rabbit calls Plaintiff Verizon wireless again demanding to see Rhode Island BCI Plaintiff obtained on 10/5/2018, Plaintiff again advised he was not a Rhode Island Resident, and would not communicate

without his Attorney Craig V. Montecalvo present. Investigator John Rabbit advised Plaintiff Attorney was not necessary. Plaintiff relayed complexities around jurisdiction and registration proceedings which Investigator John Rabbit was aware of. Plaintiff assures Investigator John Rabbit his Attorney Craig V. Montecalvo will in fact contact him shortly.

- 9/18/2019 Following day, Rhode Island Attorney General Investigator John Rabbit enters North Providence Police Department (NPPD) requesting Detective Petturtti release Plaintiff file to obtain his place of employment or a location. Plaintiff employment listed as located in Attleboro, Massachusetts. Rhode Island Attorney General Investigator John Rabbit and unknown Detective travel in ford vehicle bearing Rhode Island state plates *(later seen roadside)*. Investigator John Rabbit and unknown Detective cross jurisdictional boundary into Massachusetts without local Attleboro Massachusetts Police Department (APD) and or Massachusetts State Police (MSP) knowledge, as Plaintiff contacted departments after. Investigator John Rabbit and other Detective enter Plaintiff's place of employment via front office, which make law enforcement presence known with visible police badges exposed on hips. Investigator John Rabbit and other Detective demand to speak with Plaintiff publicly while or employees and customers watch. (P.R. 287-289). Plaintiff on lunch break out of office at time contacted by fellow coworkers. Plaintiff immediately called Attorney Craig V. Montecalvo. Upon return, Plaintiff met Investigator John Rabbit and other Detective in his front office space. Plaintiff a senior project manager overseeing commercial production for private company at the time. Plaintiff suggested they go outside to discuss matter. Plaintiff was interrogated whether the employed position knew of his *Sex Offender* status. Additionally, if BCI report

provided by Rhode Island Attorney General office on 10/5/2018 may not have had "*Sex Offender Status*" ink stamp. Investigator John Rabbit demanded to see Plaintiff 10/05/2018 BCI (P.R. 232), which his investigation would not conclude until otherwise. Investigator John Rabbit additionally advised needing to contact ownership or upper management of private company to confirm they were aware of "*Sex Offender Status*". Plaintiff reminded Investigator John Rabbit his Attorney Craig V. Montecalvo was going to contact him, which showing up at his place of employment was extremely disrespectful. Plaintiff questioned Investigator John Rabbit being not within his jurisdiction to be making such demands, which should Attleboro Police Department (APD) be dispatched. Investigator John Rabbit and other Detective abruptly ended communication with Plaintiff, promptly leaving Plaintiff place of employment. This was major turning point to Plaintiff's relationships at that place of employment and position he had held for some time.

- 9/18/2019 Attorney Craig V. Montecalvo contacts Rhode Island Attorney General and additionally Chief Assistant Attorney General Laura Nicholson whom being assigned to Rhode Island Superior proceedings. Plaintiff later advised Rhode Island Attorney General Investigator John Rabbit will no longer be contacting Plaintiff by any means.

- 10/13/2019 SMART.Gov Department of Justice Senior Policy Director contacted Plaintiff regarding concerns of compliance of *42 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act.*

- 10/21/2019 Attorney Craig V. Montecalvo submits objection letter requesting bifurcation before Kent County Superior Court Honorable Judge Flynn to decide whether Plaintiff was subject to federal and or state *Sex Offender* registration to begin with. (P.R. 246-262)

- 10/31/2019 North Providence Police Registration *Sex Offender* Form. Plaintiff briefly stopped at North Providence townhouse after leaving work in Attleboro prior to returning to Boxford, Massachusetts. North Providence Police Department (NPPD) *Sex Offender Unit* waiting for Plaintiff to appear as was Halloween to relay *Sex Offenders* turn off lights, not answer doors and stay away from interacting with Trick or Treating children.

- 11/26/2019 Kent County Superior Court Honorable Judge Flynn proposes to Attorney Craig V. Montecalvo a reduction in *Sex Offender* level, reducing to Level I *(Risk Level I danger to community is a Sex Offender whose risk assessment indicates a low risk of re-offense).*, subject to 15-year *Sex Offender* registration period, instead of 25-year. However, it would remove Plaintiff nationally published mugshot from national (NSOR) website controlled by FBI and Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN). Under Rhode Island General Law, this time period would eventually expire, however would stay in after Plaintiff's death. Plaintiff had lived a traumatic experience from 2004-2007 during long court proceedings, and again 2007-2012 during probationary period regarding this matter, it would have been insulting to Barnstable Massachusetts Honorable Superior Court Judge Nickerson's Judgement over matter. In addition to insulting President George W. Bush and Amie Zyla for implementing *42 U.S.C §16911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, (5) 34 U.S.C. §20911 Amie Zyla expansion of Sex Offense Definition; Title 1, § 111, Article C.* Plaintiff refused to be nationally categorized for such matter decades later while not a Rhode Island domiciled resident. Kent County Superior Court Honorable Judge Flynn proceedings continued pending further review discussions.

- 12/3/2019 Plaintiff testified at Massachusetts State House in support of Democratic Senate President Karen E. Spilka, numerous other Massachusetts State Senators and State Representatives alongside national advocacy groups before Massachusetts Senate Judiciary Committee, regarding House and Senate bills in relation to *Juvenile Justice Reform Acts* H.1726 & S.1126. Plaintiff's testimony was informative as enlightened long-term impacts and ramifications due to implementing teenagers onto *Sex Offender* Registries. Additionally, Plaintiff matter not being required to be on FBI (NSOR) and *Sex Offender* registries due to *(Sex Offender Registration and Notification Act SORNA)*, however ending up on one decade later. Rhode Island jurisdictional issue before Kent County Superior Court Judge Flynn was discussed at large and was extremely concerning before Massachusetts Senate Judiciary Committee. (P.R. 290-292)

- 12/14/2019 Plaintiff and female life partner were in Massachusetts in route to see a performance of *A Christmas Carol* at local theater venue. Plaintiff received at 5:08pm Verizon Wireless (401.203.8861) phone call (P.R.293-307). Rhode Island Division of Sheriffs (RIDS) under governorship of Rhode Island State Police, Sergeant Michael Wheeler odd sounding wire tapped phone call demanded Plaintiff come to Rhode Island Division of Sheriffs (RIDS) located at 670 New London Avenue to satisfy Sex *Offender* warrant of *"Failure to Register"* from 2013 Rhode Island State police to be arrested, and go before a judge surrender immediately. Plaintiff relayed an active court proceeding regarding matter hoping to vacate, and which Plaintiff was currently hours away in Massachusetts. Rhode Island Division of Sheriffs (RIDS) Sergeant Michael Wheeler advised Plaintiff, Rhode Island Division of Sheriff's (RIDS) was under a federal audit regarding *Sex Offender Registry*. Sherriff Sergeant Michael Wheeler relayed if Plaintiff

was not going to surrender to Rhode Island, then fugitive status for sex crime of *"Failing to Register"* would follow. Rhode Island Division of Sheriffs would dispatch *Fugitive Task Forces* to apprehend him. *(Rhode Island Sheriffs Fugitive Task forces consists of **U.S. Marshals Service, Rhode Island State Police, and Warwick, Cranston, Middletown, Pawtucket, Portsmouth, and Providence Police Departments**)*

- 12/19/2019 SMART.Gov Department of Justice Senior Policy Director contacted Plaintiff again regarding concerns of compliance of *42 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act*. Explaining larger issue pertaining to implementation of Title 1 of Adam *Walsh Child Protection and Safety Act of 2006*. Senior Policy Director advised Plaintiff Title 1 § 111 Part C definition excluding Plaintiff from federal definition of a *"SEX OFFENDER"* requiring registration under 4-year exemption. (P.R. 46) *(Plaintiff DOB 08/06/1985, Victim DOB 05/19/1989= 3y9m13days)* (P.R. 81). Senior Policy Director suggested Plaintiff advise council Craig V. Montecalvo provide information before Kent County Superior Court Judge Flynn prior to pending court proceeding.

- 1/7/2020 Court proceeding Kent County Superior Court Honorable Judge Flynn to decide whether Plaintiff shall accept Rhode Island Level I *(Risk Level I danger to community is a Sex Offender whose risk assessment indicates a low risk of re-offense) Sex Offender* registration reduction status. Craig V. Montecalvo advised Plaintiff outside courtroom much has changed since last request, Rhode Island is now fully prepared to vacate *Sex Offender* requirements completely. Craig V. Montecalvo prepared a 4-line-item objection order requested by Kent County Superior Court to be granted dated 1/7/2020. Honorable Superior Court Judge Flynn, Craig V. Montecalvo, Chief Assistant Attorney General

Laura Nicholson took objection order into Judge Flynn's chambers for discussion. Craig V. Montecalvo after discussion advised Plaintiff issue had arisen with State of Rhode Island requesting a 5th line-item provision pertaining to requesting full immunity regarding matter. Craig V. Montecalvo advised Plaintiff, himself nor Honorable Superior Court Judge Flynn were not in favor of that request. Additionally, Craig V. Montecalvo advised Judge Flynn requested a continuance of two days later until 1/9/2020.

- 1/9/2020 Craig V. Montecalvo advised Plaintiff this was a special hearing to not take *"precedence"*, appear privately in courtroom at 9am prior to court opening at 9:30am. Plaintiff advised Chief Assistant Attorney General Laura Nicholson and other people unknown to Plaintiff would be present in Courtroom, however this would not take *"precedence"* in other court matters. Plaintiff could feel uneasy energy within courtroom unlike any judicial experience he has had. Rhode Island Attorney General agreed to prepared 4-line-item objection order dated 1/7/2020 which modified date to 1/9/2020. (P.R. 336) Most notably upholding Plaintiff 2007 Barnstable Massachusetts Honorable Superior Court Judge Nickerson Judgement. Kent County Superior Court Honorable Judge Flynn then requested Plaintiff to front podium. Honorable Judge Flynn advised Plaintiff if he had not contested this unjust, this unfair treatment would have continued for many more years. Honorable Judge Flynn also commended Plaintiff for seeking counsel, and additionally apologized on behalf of State of Rhode Island.

- 1/9/2020 later same day Plaintiff meets with Massachusetts Senate Republican Majority Leader Bruce Tarr, State Representative Lenny Mirra, and Chief of Staff Attilio Paglia at Massachusetts State House. Chief of Staff advised Plaintiff what occurred in Rhode Island was an absolute injustice, which should have been easily resolved over lack of

Jurisdiction. Chief of Staff advised Plaintiff Rhode Island State Police *Sex Offender* Registry Board (RISORB) needs to be held accountable for such negligent actions. Chief of Staff advised Plaintiff Massachusetts Governor Deval Patrick recently had illegally removed his brother from Massachusetts *Sex Offender* Registry which was negligent and made national headlines, as they did not have tort immunity.

- 1/21/2020 Lisa Hewitt of Massachusetts Committee for Public Counsel Services, once serving on Massachusetts Senate Judiciary Committee recovers 592pg 2004-2007 full grand jury testimonies and council court records from Massachusetts Court records archival storage facility.

- 7/08/2020 Plaintiff U.S. Passport issued by United States Department of State "with no *Sex Offender* Designations for any global entries" 22 U.S.C 212 (b) *International Meghan's Law* expires (P.R. 91)

- 3/17/2021 (433) days after Kent County Superior Court Honorable Judge Flynn granted objection order 1/9/2020. Plaintiff entered Rhode Island Attorney General to obtain Rhode Island Background Check Inquiry (BCI). Prior to clerk handing Plaintiff non reflected *Sex Offender* status BCI, (P.R. 341) window clerk advised a supervisor needed to obtained. Plaintiff provided supervisor with Kent County Superior Court Honorable Judge Flynn granted objection order 1/9/2020. (P.R. 336) Supervisor then called Rhode Island State Police (SOCN Unit), as (433) days had been unacceptable of Rhode Island State Police (RISP) to correct internal clerical errors. Plaintiff waited another approximately 40 minutes while investigated internally. Conclusion was Rhode Island had 3 *Sex Offender* Notification Systems. One System held locally at Rhode Island State Police (SOCN Unit), another being held at Rhode Island State Police (RISP) under Rhode

Island *Sex Offender* Registration Board (RISORB), third System being National Crime Information Center (NCIC) Database FBI (NSOR). Plaintiff advised after review he in fact was removed from National Crime Information Center (NCIC) Database FBI (NSOR); However, Plaintiff was still active within Rhode Island State Police (RISP) and Rhode Island State Police (SOCN Unit) systems as a *"Sex Offender"* which drew Rhode Island Attorney General supervising personnel concerns, as were unsure if they should issue a Rhode Island Background Check Inquiry (BCI) Without *"Sex Offender"* stamping mark. Plaintiff believes error still persists to this day as to the lack of sufficient administration within Rhode Island State Police (RISP).

*(Note: 10/3/2018 North Providence Police Department (NPPD) Detective Petteruti advised Plaintiff when Sex Offender relocates to another state, controlling state whom is administering Sex Offender registration file will transfer to new jurisdiction via "Inter-State" Compact system. Detective Petteruti advises Plaintiff his controlling state was and always had been Massachusetts, Detective Petteruti would not be able to transfer file, they're for Plaintiff Sex Offender registration file would stay doormat with North Providence Police Department (NPPD) case logs for indefinite, even after Plaintiff death as per Rhode Island General Law. (Note: stated on audio transcripts))*

*(Note: This is alarming as Kent County Superior Honorable Judge Flynn 3rd line-item states "That all Records and indications of Petitioner's status as Sex Offender in Rhode Island shall be **DESTROYED** forthwith and without unnecessary delay." (P.R. 199-231)*

- 12/07/2021 During Covid-19 pandemic, Plaintiff again testified before Massachusetts State House before Massachusetts Senate Judiciary Committee, regarding House and Senate bills in relation to *Juvenile Justice Reform Acts H.1726 & S.1126*. Plaintiff

testimony was also to additionally inform update in regards to Rhode Island jurisdictional issues before Kent County Superior Court Honorable Judge Flynn and life long-term impacts and ramifications due to implementing teenagers onto *Sex Offender* Registries. Plaintiff is grateful to no longer be on National *Sex Offender Registry*. (P.R. 342-347)

- 12/05/2022 (2 years 10 months) after Rhode Island Honorable Superior Judge Flynn <u>4-line items</u> objection judgement, Rhode Island Public Judiciary Public E-service Access known to Rhode Islanders as *ricourtconnect.gov* identifies Rhode *Island Attorney General vs Michael Cogley PM-2019-7278* court proceeding as ***Sexually Violent Predator case type***. While order 3) states ***"That all records and indications of the Petitioner's status as Sex Offender in Rhode Island shall be destroyed forthwith and without unnecessary delay."*** (P.R. 363,364)

## PLAINTIFF PERSONAL HISTORY

Plaintiff, Pro Se, Mr. Michael Cogley was born on August 6, 1985 in Menomonie, Wisconsin. Plaintiff and his two parents moved to Boxford, Massachusetts on January 29, 1987. After Plaintiffs father left home in December 1992, Plaintiff and his mother continued to live in Boxford until June 2002. In June 2002 Plaintiffs mother invited his cousin to live with them in Boxford for summer after her mother, and aunt to Plaintiff recently passed away. Plaintiff mother insisted that he move out of his room to accommodate his cousin and that Plaintiff, then 16 years old, move into her room. As a result, Plaintiff relationship with his mother deteriorated and, in June 2002, his mother called police and asked that they remove Plaintiff from their home. That day Plaintiff, carrying only some cloths in a backpack, was picked up by his father's divorce Attorney and taken to his father's house in Medway, Massachusetts.

In August 2002 Plaintiff's father, and his step-mother moved into a house in Falmouth, MA. Plaintiff was enrolled into Falmouth High School for upcoming school year. Due to his late enrollment being 1st day of school, Plaintiff shuffled between general study halls with student's freshman through senior years while school authorities awaited his IEP from Masconomet High School in Boxford, MA. Apparently not equipped to support Plaintiffs IEP (Dyslexia and ADD cognitive skills), Falmouth High School placed him in freshman and sophomore classes even though he was a junior, with understanding that he would still graduate with his 2004 senior class.

In August 2003 Plaintiffs father, attempting to avoid financial responsibilities contained in final divorce decree, kicked Plaintiff out of his home forcing Plaintiff to live in a boarding house with local transients. Unknown to Plaintiff at time, his father and step-mother threw out and gave away all of his possessions and forbade him from visiting their home.

In September 2003 Plaintiff, then 18 years old and living in boarding house, began his senior year at Falmouth High School. Under difficult circumstances described above, including living completely independently, Plaintiff did his best in school.

Sometime in April or May 2004, on night of incident leading to his arrest and prosecution, one of Plaintiff high school friends (Justin) had a party at his house while his parents were out of town. Plaintiff wasn't present at that party, which had ultimately gotten broken up by police, as Plaintiff was working at a local Auto Zone at time. When Plaintiff got off work at 9:30pm he, Justin, and one other male high school friend began driving around. Plaintiff and his friends ran into three female's roadside, whom were waiting for her 24-year-old boyfriend to pick them up at around 10:30pm. Plaintiff recognized one female whom briefly rode on school bus with him months prior

Plaintiff, his friends, and females made a plan to all go back to Justin's house to drink alcohol and hang out. Once at Justin's house, Plaintiff and one of the females, whom ditched her 24-year-old boyfriend, at time her age unbeknown to Plaintiff, performed oral sex on Plaintiff when they both then acted in intercourse in an empty bedroom, eventually following week during arrest Plaintiff was advised her age of 15 years old. This female testified that sexual interaction with Plaintiff was consensual, many contradicting statements and accusations that she made to Falmouth police in early narratives. One of the other females later alleged that Plaintiff had engaged in sexual contact with her. Charges associated with that allegation were later discredited and removed from prosecution. Afterward, Plaintiff drove the three females to a motel where the mother of one of the females had been living. Plaintiff was welcomed into the home with open arms and was thanked for bringing everyone home safely as the 3rd underage female friend was extremely inebriated.

The singular female with whom Plaintiff admitted to having consensual sex with understandably told her friends about party and word soon spread quickly throughout school. It later became known to Plaintiff, a senior, that this female was a freshman student. Days later Plaintiff heard an announcement instructing him to report to front office. Once there, and after being informed by school resource officer that female he had sex with was a freshman, Plaintiff was cuffed and arrested for act with female whom was charges were later dismissed. Plaintiff however admitted to sexual interaction with the other actual female who would later be identified as his consensual victim. Plaintiff high school graduation ceremony was scheduled for next day.

At time of his arrest in 2004 Plaintiff was an 18-year-old senior at Falmouth High School. New to Falmouth after moving to his father's house from his mother's house, Plaintiff presented himself with previous schools IEP and Falmouth High School authorities struggled to place him

in proper curriculum level. As a result, Plaintiff was in classes with students in grades 9-12 age

ranges from 14-18 years old.

The juvenile female victim was one of his classmates and an attendee of a house party

hosted by another student of school. Alcohol was served and juvenile female victim engaged in

intercourse with Plaintiff and, later that night, additionally with male host of party who would

eventually become a co-defendant in Massachusetts criminal case. Plaintiff spoke freely with

investigating police officers, acknowledging conduct that later gave rise to his plea.

Massachusetts crime lab DNA all resulted in no direct or indirect evidence linking Plaintiff even

to crime. Soon thereafter, Plaintiff moved back into his mother's home in Boxford where she

lived along with some tenants. Judge presiding over Plaintiff parents' divorce and child support

hearing. Plaintiff was unemancipated and his parents were still required to pay child support

during this time. In fact, Plaintiff father was retired over 65 and Plaintiff had been able to collect

a sum $800 per month from his father's pension because of their ages. Judge aware of his recent

arrest, called Plaintiff to bench and asked what he wanted to do with his life. Plaintiff answered

Judge, in front of his warring parents, that he wanted to attend college. Plaintiff father told Judge

that Plaintiff was a failure and that he wouldn't contribute financially to his son's college

education as his divorce decree stated, and tried to convince judge Plaintiff was emancipated to

relieve his child support responsibilities which he was not.

In September 2004 Plaintiff was accepted into New England Institute of Technology for

fall term. Studying first mechanical engineering and n transferring to architectural engineering,

Plaintiff earned high grades. His transcripts were delivered to Judge overseeing Plaintiff criminal

case who allowed case to be delayed and Plaintiff to attend school. Each court date was deigned

between school semester breaks.

In May 2006 Plaintiff became a full-time Rhode Island resident and registered voter to apply for 3 RISLA Pell Grant Loans. In June 2007 Plaintiff entered nolo pleas to certain counts and was sentenced to five years of probation. Plaintiff's probation was immediately transferred to Rhode Island via *"Inter-State" compact ICOS* Boston, Massachusetts to *"Inter-State" compact ICOS System* Cranston, Rhode Island office so that he could finish college seamlessly., Plaintiff was obligated to report monthly to RI probation officer Gerry Silva (himself subsequently sentenced to federal prison for possession of child pornography) and to authorities in Barnstable Superior Probation every six months. PO Silva required Plaintiff to submit to random drug testing and counseling. In 5 years at no point was Plaintiff required or suggested to Sex *Offender* registry under SORNA. As noted above, Plaintiff probation was successfully completed and formally terminated in Barnstable Superior Court on July 13th 2012.

### *(Plaintiff has been in a long-term relationship with female life partner since 2010.)*

Female life partner lost her mother at a young early age and her father became abusive. She had been temporarily placed in RI DCYF program until immediate family took guardianship of her. She now volunteers her time for nonprofits that help children that age out of foster care system with no guidance or support. Both Plaintiff and life partner will always be passionate about helping to aid young adults lost within justice system as they both needed it. Female life partner recently lost her reconnected father due to Covid 19 in a Rhode Island mismanaged nursing home during pandemic. He fortunately was able to hear that Rhode Island finally corrected and vacated Plaintiff matter which meant a lot to him. Plaintiff and female life partner take care of his aging mother whom has cognitive loss and early dementia, have been attempting to have children and have failed multiple rounds of IVF and IVI as gift of parenthood is becoming weaker reality. Topic and circumstances at hand regarding possible adoption, and

volunteering to benefit young adults has posed complicated regarding circumstances as understood before this court.

## 2007 MASSACHUSETTS COURT JUDGMENT SUMMERY

May 29th 2004 a consensual incident occurred between Plaintiff and said victim. After Massachusetts District Court proceeding discredited and removed much false an incorrect police statements from case log, it was bond over under Massachusetts Statutory law to Massachusetts Superior Court. On January 27, 2006 an indictment alleging three counts of felonious sexual misconduct was returned against Plaintiff in Barnstable Superior Court in Commonwealth of Massachusetts. All three counts were alleged to have occurred on same date in 2004 and at same time. On February 27, 2006 Plaintiff was arraigned on said indictment before Justice Nickerson and released on personal recognizance bail conditions. On July 13, 2007 Plaintiff entered guilty pleas to a single count of inducing a chaste minor to have intercourse, indecent assault of a person over 14 years old, and procuring alcohol for a minor. All counts pertained to a single otherwise consensual sexual encounter with a 15-year-old female at a time when Plaintiff was 18 years old during school year.

Plaintiff was placed on probation for 5 years on each count, running concurrently with each other. Special conditions required that Plaintiff have no contact with juvenile female victim, or unsupervised contact with other minors. Plaintiff was also ordered to submit to a substance abuse evaluation and comply with its recommendations and to submit to random breathalyzer tests and urine screens.

The sentencing Justice, at time of entry of plea and imposition of sentence, made a specific finding that Plaintiff be relieved of any obligation to register as a *Sex Offender*. For same

reasons, Court also waived otherwise required condition of GPS monitoring. 5-year probationary term was immediately transferred to Rhode Island. Additionally due to age *Plaintiff D.O.B 8/6/1985 and Victim D.O.B 5/19/1989* regarding consensual acts shielded protection under newly signed into law by President George W. Bush during Plaintiff courts proceedings, federal Adam *Walsh Child Protection and Safety Act of 2006* Title 1 § 111 Part (C) relieved from federal definition of whom is identified as a *"SEX OFFENDER"* for purpose of *(Federally regulated Sex Offender Registration and Notification Act (SORNA).* *4-year exemption as they were 3 years, 9 months 13 days apart*

## QUALIFIED IMMUNITY 42 U.S.C. § 1983

Qualified immunity doctrine protects state government employees and officials from liability unless they *"Clearly Established"* violated a constitutional right. *"Clearly Established"* defined as *"at the time of the official's conduct, the law was sufficiently clear that every reasonable official would understand that what he or she is doing is unconstitutional".* The United States Supreme Court identified *"qualified immunity protects all except the plainly incompetent or those who knowingly violate the law".*

## CONTENDS QUALIFIED IMMUNITY 42 U.S.C. § 1983

Defendant Collins *"Rhode Island Sex Offender Registry Database Manager",* and state government employee, description role (P.R.117) to *"provide assistance to municipal police department, state, and federal agencies concerning policies and procedure for national crime information center (NCIC)* ", additionally *"this unit is responsible for maintaining affidavit and arrest warrants for state police, conducting INTENSIVE backgrounds through database searches".* Collins the sole individual "whom after conducted intensive background" on Plaintiff, initiated NCIC and arrest warrant on behalf of Rhode Island State Police department,

not Rhode Island Attorney General Office under federal SORNA § 122 law. Collins having 21 years' experience (P.R.117) had been appointed to that respected *Sex Offender* position required under federal SORNA § 123 to be compliant with federal SORNA Title 1 (P.R. 35,88-90) to accept federal grant funding, or be *34 U.S.C. §20927 "Failure of Jurisdiction to Comply with SORNA"* then loss of *34 U.S.C. §10151 "Edward Byrne Memorial Justice Assistance Grant Program"* of 10% noncompliance grant reduction per federal SORNA § 125. Rhode Island utilizing these same federal funds (P.R. 102-104,194,195,263,264,308,309,339,340) to financially support the *Sex Offender* unit Collins had been assigned to supervise and manage under SORNA § 123. Emphasizing Collins with 21 years' experience either was *plainly incompetent*, thus un-shielding 1983 qualified immunity by United States Supreme Court, or *"at the time of the official's conduct, the law was sufficiently clear that every reasonable official would understand that what he or she is doing is unconstitutional"*, again noting Collins 21 years' experience of SORNA laws and regulations marking the *"Clearly Established"* violated a constitutional right, still un-shielding 1983 qualified immunity.

12/1/2016 North Providence Police Department (NPPD) Detective Christopher Petteruti advised Plaintiff, spoke with Collins (P.R. 150-155) Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit). Detective Christopher Petteruti confirming and advising Plaintiff he was not subject to *Sex Offender* registration, and identified Collins as whom officially contacted Massachusetts to confirm Plaintiff was not subject to *Sex Offender* registrations. Collins advised Detective Christopher Petteruti, Plaintiffs file needed forwarding to Rhode Island Attorney General, which would vacate the registration requirements. Noting that date in 2016 and Collins having 21 years of dedicated experience to *Sex Offender* registration law, *"Clearly Established"* knew at that very moment, Plaintiff was not subject to *Sex Offender*

registration, if she negligently did not "***conducting INTENSIVE backgrounds through database searches",*** back in 2013. Collins, now fully aware *"at the time of the official's conduct, the law was sufficiently clear that every reasonable official would understand that what he or she is doing is unconstitutional"*, unless any evidence exist defendant Collins actually sent Plaintiff case file to Rhode Island Attorney General in 2016, or either approached defendants Colonel Steven O'Donnell, Colonel Ann Assumpico, or Colonel James Manni at any time during. Additionally, Collins aware under federal SORNA law, Plaintiffs' matter *"official capacity"* should have been sent in 2013 to Rhode Island Attorney General as ***"interstate jurisdictional"*** matter pertained under ***"federal law"***, prior to Collins electing *"individual capacity"*, thus *"the plainly incompetent or those who knowingly violate the law"* by initiating Plaintiff identified as *Sex Offender* in National NCIC and National *Sex Offender* Registry (NSOR) maintained by FBI regulated SORNA § 119 (a)

On 4/3/2018 attorney hired by plaintiff contacted Rhode Island *Sex Offender* Registration Board (RISORB) at 401-462-0900, which advised by "Celeste", Plaintiff was not required to register. It is apparent the *"official capacity"* of Rhode Island Attorney General SORNA § 122 was not requiring Plaintiff to register, or be forced to under federal SORNA law. The *"official capacity"* of Rhode Island *Sex Offender* Registration Board (RISORB) from September 13th 2013- April 3rd 2018 was not either as *"at the time of the official's conduct, the law was sufficiently clear that every reasonable official would understand that what he or she is doing is unconstitutional"*, Therefore, defendant Collins and Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) were not acting under *"official capacity"*, rather *"individual capacity"*, for which *"qualified immunity protects all **except** the plainly incompetent or those who knowingly violate the law"*.

When defendant and state employee Lisi, referral writer of Rhode Island *Sex Offender* Registration Board (RISORB) contacted Plaintiff on 9/27/2018 to collect information per Risk Assessment Report, whom instructed under her *"official capacity.* Plaintiff agreed to a private meeting with defendant Lisi and his attorney on 10/2/2018 at 5pm. The day prior to scheduled meeting, Plaintiff called defendant Lisi, advising jurisdictional residency change and provided his Boxford Massachusetts address. ***"Clearly Established"*** Lisi undisputedly cannot deny acknowledgement of that pertinent information prior to *"individual capacity"* referring her incomplete and nonfactual Actuarial Risk Assessment Report *"the plainly incompetent or those who knowingly violate the law"* to Rhode Island *Sex Offender* Registration Board (RISORB), as 12/20/2018 certified postal letter utilizes Plaintiffs Massachusetts address (P.R. 242), proves Lisi acting as state employee *"at the time of the official's conduct, the law was sufficiently clear that every reasonable official would understand that what he or she is doing is unconstitutional",* as Plaintiff no longer a resident of Rhode Island. *"Official capacity"* would suggest Lisi contact her superior with jurisdictional issue, Rhode Island State Police *Sex Offender* Community Notification Unit (SOCN unit) Collins whom initiated, or Rhode Island Attorney General office, or her own supervisor "Celeste" whom advised 6 months prior on 4/3/2018 Plaintiff was not required to register. Rather, Lisi chose *"individual capacity"* by collecting incorrect 2004 police narratives describing 2 victims falsely concluded before Massachusetts grand jury testimony of Falmouth Police Sergeant Jeffery Smith February 27th 2006, additionally collecting without 3 Actuarial Risk Assessment Report protocols, thus incomplete still choosing *"individual capacity"* to forward referral packet to Rhode Island *Sex Offender* Registration Board (RISORB), whom had already confirmed from "Celeste" 6 months prior on 4/3/2018, Plaintiff was not required to register.

Construing the notion from 2013-2018 *"official capacities"* of Rhode Island Attorney General office had either been unaware of unconstitutional behaviors by defendants acting as governmental employees managing Plaintiff's *"interstate"*, *"federal law"* matter. It's evident the perilous system had been created, which only remedy by conspiring ***with*** *"official capacity"* Rhode Island Attorney General intervention would be to direct the Rhode Island Division of Sheriffs (RIDS) Sergeant Michael Wheeler to lure the Plaintiff back to Rhode Island jurisdiction to formally arrest him for ***"failure to register"*** to complete the loose ends 6 years after the fact (P.R.293-307), thus requiring Rhode Island judge to vacate after the fact. Otherwise, to remedy by conspiring ***without*** *"official capacity"* Rhode Island Attorney General intervention to maneuver Rhode Island *Sex Offender* Registration Board (RISORB) whom already advised 4/3/2018 Plaintiff was not subject, and *(56 days)* after Plaintiff no a longer domiciled resident of Rhode Island, a ***"Clearly Established"*** judgment call was made by Governor Gina Raimondo appointed Rhode Island *Sex Offender* Registration Board (RISORB) members and defendants *(Bonita Cade, J.D., PhD Detective Kyle Shibley, RISP Captain Alyssa DeAndrade, Providence PD Marlene Roberti, MPA Jason Lyon, LICSW JoAnne Waite, LMFT Jessica Nash, LCSW, DCYF)* elected and voted upon Plaintiff *Sex Offender* Level as II *(Risk Level II danger to community is a Sex Offender whose risk assessment indicates a moderate risk of re-offense)* which had been regulated by *(Sex Offender Registration and Notification Act SORNA, additionally required Under Title 1 of Adam Walsh Child Protection and Safety Act of 2006).*

The *"official capacities"* Rhode Island *Sex Offender* Registration Board (RISORB) members and defendants *(Bonita Cade, J.D., PhD Detective Kyle Shibley, RISP Captain Alyssa DeAndrade, Providence PD Marlene Roberti, MPA Jason Lyon, LICSW JoAnne Waite, LMFT*

*Jessica Nash, LCSW, DCYF),* conducted unfair due process ***"Clearly Established"*** which violated the Plaintiffs constitutional right by assigning (*Level II Sex Offender identification*).

Did *"official capacities"* Rhode Island *Sex Offender* Registration Board (RISORB) members and defendants *(Bonita Cade, J.D., PhD Detective Kyle Shibley, RISP Captain Alyssa DeAndrade, Providence PD Marlene Roberti, MPA Jason Lyon, LICSW JoAnne Waite, LMFT Jessica Nash, LCSW, DCYF),* Ever question why their "official capacity's" were being used to assign *"initial jurisdiction"* SORNA § 113 (b), 117 (a) *Sex Offender* level to a non-resident, and whom a terminology *"conviction"* that did not occur in Rhode Island jurisdiction? *"At the time of the official's conduct, the law was sufficiently clear that every reasonable official would understand that what he or she is doing is unconstitutional".* Which then not utilizing *"official capacities"* thus, deviating to conspire *"individual capacity"* elected judgment which 1983 qualified immunity does not shield *"the plainly incompetent or those who knowingly violate the law".*

## DEPRIVATION OF CIVIL LIBERTIES UNDER THIS COURT

Pursuant to ***42 U.S.C. §1983 Deprivation of Civil Liberties,*** Equal Protection Clause of Fourteenth Amendments to United States Constitution prohibits States from "Deny[ing] to any person within its jurisdiction equal protection of laws." Plaintiff, Pro Se, Mr. Michael Cogley has incorporated allegations as negligent actions of regulated compliance under *(Sex Offender Registration and Notification Act (SORNA)* by following defendants both while under jurisdiction of state of Rhode Island and additionally forthgoing negligence while under jurisdiction of "*"Initial Jurisdiction""* state of original judicial origin Commonwealth of Massachusetts.

It is understood to determine if 42 *U.S.C. §1983 Deprivation of Civil Liberties* clause is

actionable two distinct elements must be met in order to determine if a true cause of action can

be subject. First, where conduct disputed was committed by a person acting under color of state

and its laws. Secondly, if conduct deprived that person of rights, privileges, and or immunities

which would have been reserved under Constitution of United States Laws. Should United State

District Court determine conduct was caused by negligence, then it is assumed it would in fact be

actionable under *42 U.S.C. §1983 Deprivation of Civil Liberties*. Once United State District

Court can conclude negligent actions were performed, court can then clearly determine if

Fourteenth Amendment of United States Constitution was violated.

## QUI TAM COMPLAINT STATEMENT OF EVIDENCE

Plaintiff, Pro Se, Mr. Michael Cogley is a private citizen and will be identified as a *relator*

under *Qui Tam* action requesting United States District Court to initiate following *Qui Tam* civil

action suit on behalf of Federal Government under *31 U.S.C. § 3729 "False claims Act".*

The *relator*, has supplied following information and attached evidential materials pursuant to

Federal *Rules of Civil Procedure* as identified by United States Attorney. This material evidence

is subject to *34 U.S.C. §20927 "Failure of Jurisdiction to Comply with SORNA"* is evident

with overall subject matter to expose following defendants acting on behalf of State of Rhode

Island have fraudulently acted in acceptance of full federal compliance *34 U.S.C. §10151*

*"Edward Byrne Memorial Justice Assistance Grant Program"* grant funding rather than 10%

noncompliance grant reduction SORNA § 125.

The *relator*, requests this United States District Court to initiate following *Qui Tam* civil

lawsuit brought by a himself a private individual, *realtor*, "whistleblower," along with federal

government against State of Rhode Island and its following defendants who are alleged to have entirely engaged in its negligent performance of its contract, compliance, failed *full implementation of Title 1 34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act* and or otherwise subsequently defrauded government from *34 U.S.C. §10151 "Edward Byrne Memorial Justice Assistance Grant Program"* federal funding, pursuant to *34 U.S.C. §20927 Failure of Jurisdiction to Comply with SORNA.*

The *relator*, requests this United States District Court to address and receive all or part of financial recovery received under this negligent compliance by State of Rhode Island and its defendants and to be returned back to federal government or otherwise specified under *34 U.S.C. §20927 Failure of Jurisdiction to Comply with SORNA.*

## COUNT I (DENIAL OF EQUAL PROTECTION)

This count is brought pursuant to *42 U.S.C. §1983 Deprivation of Civil Liberties.* Equal Protection Clause of Fourteenth Amendments to United States Constitution prohibits States from "Deny[ing] to any person within its jurisdiction equal protection of laws." Plaintiff has incorporated negligent allegations as violation of regulated compliance under *(Sex Offender Registration and Notification Act Title 1 (SORNA)* contained in this United States Federal Complaint as if fully set forth herein before this court. In highest respect to Adam Walsh & Amie Zyla whom have been honorably gifted in naming of these federal *Public Law 109-248* Plaintiff deserved equal protection under following *(Sex Offender Registration and Notification Act Title 1 § 111-part (5) article C (SORNA)* laws. Invoking Statewide, National and Global enforcement is in misinterpretation causing peril in violation of Fourteenth Amendments to United States Constitution *42 U.S.C. §1983 Deprivation of Civil Liberties.*

## COUNT II (NEGLIGENT SORNA IMPLEMENTATION BY DEFENDANTS WHILE PLAINTIFF WAS A RHODE ISLAND RESIDENT)

This count is brought pursuant to *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, (5) 42 U.S.C §16911 Amie Zyla expansion of Sex Offense Definition; Title 1, § 111, Article C.* Plaintiff contends that under Federal definition, he was never subject to any *(Sex Offender Registration and Notification Act Title 1 § 111-part (5) article C (SORNA)* implementation. Plaintiff also contends that under Rhode Island General Law definition, he was never subject to registration or regulated compliance under *(Sex Offender Registration and Notification Guidelines)* as he held **_NO DUTY_** to any other State contained in this United States federal complaint as if fully set forth herein before this court.

## COUNT III (NEGLIGENT SORNA IMPLEMENTATION BY DEFENDANTS WHILE PLAINTIFF WAS OUT OF JURISDICTION)

This count is brought pursuant to *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C.* Plaintiff contends that under federal definition, he was never subject to any *(Sex Offender Registration and Notification Act Title 1 § 111-part (5) article C (SORNA)* implementation. Plaintiff additionally contends State of Rhode Island failed to jurisdictionally implement its statewide *(Sex Offender Registration and Notification Guidelines)* enforcement programs under Rhode Island General Law, as it created jurisdictional circumstantial conflict while he was now Massachusetts resident. Defendants perilously and negligently having **_NO_** domiciled jurisdictional control over matter continued to administratively administer such peril. Incorporated are contained in this United States federal complaint as if fully set forth herein before this court

## COUNT IV (NEGLIGENT SORNA IMPLEMENTATION BY STATE LEVELING BOARD WHILE PLAINTIFF WAS OUT OF JURISDICTION)

This count is brought pursuant to *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C*. Plaintiff contends that under federal definition, he was never subject to any *(Sex Offender Registration and Notification Act Title 1 § 111-part (5) article C (SORNA)* implementation. Plaintiff additionally contends State of Rhode Island failed to jurisdictionally implement its respective *Sex Offender Community Notification Unit (SOCN),* and *Sex Offender Leveling Board,* and *Parole Board Community Guidelines* under Rhode Island General Law, as it created jurisdictional circumstantial conflict while he was no longer under any Rhode Island domiciled jurisdictional control. Incorporated are contained in this United States federal complaint as if fully set forth herein before this court

## COUNT V (FAILURE OF JURISTICTION TO COMPLY WITH SORNA TITLE 1)

This count is brought pursuant to *34 U.S.C. §20927 Failure of Jurisdiction to Comply with SORNA.* For Purpose of 10% loss of *34 U.S.C. §10151 "Edward Byrne Memorial Justice Assistance Grant Program."* For obvious reasons is pursuant to noncompliance of *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C*. Plaintiff as *relator* under **Qui Tam** action contends that under federal definition, he was never subject to any *(Sex Offender Registration and Notification Act Title 1 § 111-part (5) article C (SORNA)* implementation.

## COUNT VI (FALSE ACCEPTANCE OF FEDERAL GRANT FUNDING)

This count is brought pursuant to *31 U.S.C. §3729 False Claims Act Pub. L. 99-562,* in conjunction with *34 U.S.C. §10151 "Edward Byrne Memorial Justice Assistance Grant*

*Program."* In relation to full request and acceptance of *"Edward Byrne Memorial Justice Assistance Grant Funding."* As defendants were subject to 10% grant reduction loss for obvious reasons pursuant to noncompliance under *34 U.S.C. §20911 (Pub. L. 109-248) SORNA Adam Walsh Child Protection & Safety Act, § 111, (5) Amie Zyla expansion of Sex Offense Definition, Article C. relator* under ***Qui Tam*** action contends that under federal definition, he was never subject to any *(Sex Offender Registration and Notification Act Title 1 § 111-part (5) article C (SORNA)* implementation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray this Court to:

A.  Plaintiff requests the monetary tabulation by the state of Rhode Island and the return of such punitive damages back to the Edward Byrne Memorial Justice Assistance Grant Fund (JAG) regarding years 2013-2020, as court deems, equitable, and appropriate.

B.  Plaintiff requests pecuniary donation matching 10% Edward Byrne Memorial Justice Assistance Grant Fund (JAG) loss of monetary tabulation be benefit either children or aid legislative Juvenile Justice Reform Programs

C.  Plaintiff seeks $250 Million in compensatory damages and/or as court deems just, equitable, and appropriate.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:       December 22, 2022

Signature of Plaintiff

Printed Name of Plaintiff    Michael Copley

6 Gunnison Rd

Boxford, MA 01921

978-505-8743