# ***ACTIVE MANUAL USE FROM 11/05/2003 - 7/21/2004***

## PREAMBLE

The Sex Offender Community Notification Unit and the Sex Offender Board of Review in establishing these guidelines pursuant to the provisions of Rhode Island General Law 11-37.1-19, is mindful that it has the authority to make a determination at variance with these guidelines, if a finding can be made that such determination is warranted by individualized factors, such as the character and criminal record, the nature and circumstances of the offense, the conduct of the offender while incarcerated or on probation, and the other criteria set forth in Rhode Island General Law 11-37.1-19.

Each offender continues to be eligible to be reviewed by the Sex Offender Board of Review at the time set by statute under RIGL 11-37.1-19. The following is a list of offenses enumerated in RIGL 11-37.1-19.

Respectfully Submitted,

Rhode Island Sex Offender Board of Review

Peg Langhammer

Ralph Ligouri

Peter Loss

James Moody

Joseph Richardson

Title 242 Parole Board
Chapter XXX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Subchapter XX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Part 2745 Rhode Island Parole Board Sex Offender Community Notification Unit Guidelines 2003
Type of Filing Adoption
Regulation Status Inactive
Effective 11/05/2003 to 07/21/2004
Regulation Authority:        https://rules.sos.ri.gov/Regulations/part/242-XXX-XX-2745?reg_id=2745
11-37.1et seq.
Purpose and Reason:

As required by statute.

The Sex Offender Community Notification Unit and the Sex Offender Board of Review pursuant to Rhode Island General Law 11-37.1-19 hereby unanimously adopt the following guidelines:

List Of Crimes Under Rhode Island General Law Requiring Examination by The Sex Offender Board of Review (R.I. Gen. Law 11-37.1-19)

- **11-23-1** Murder where the murder was committed in the commission of or attempted commission of rape or any degree of sexual assault or child molestation (Date of offense on or after 7-1-99)

- **11-37-2** 1st Degree Sexual Assault

- **11-37-4** 2nd Degree Sexual Assault

- **11-37-6** 3rd Degree Sexual Assault

- **11-37-8.1** 1st Degree Child Molestation

- **11-37-8.3** 2nd Degree Child Molestation

- **11-37-8** Assault With Intent To Commit 1st Degree Sexual Assault (Date of offense on or after 7-1-99)

- **11-5-1** Assault With Intent To Commit A Specified Felony, Where The Specified Felony Is A Sexual Assault (Date of offense on or after 7-1-99)

A person convicted of the above charges, as defined in RIGL 11-37.1-19, who has been sentenced to prison, sentenced to probation and referred by the Attorney General, or granted parole shall be reviewed by the Sex Offender Community Notification Unit in conjunction with the Sex Offender Board of Review.

**Rhode Island Sex Offender Board of Review Adopted
Policy Statement March 2003**

A.)  **The Sex Offender Board of Review will use the following major
criteria:**

1.) (a) The Sex Offender Board of Review upon referral from a sentencing court or an agency having custody of a convicted sex offender, shall make findings as to whether or not a person convicted of an enumerated offense has a mental abnormality that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person a menace to the health and safety of other persons. (b) The board shall within thirty (30) days of a referral of a person obtain any evidence and documentation sufficient to aid the court in its determination as to whether or not a person convicted of an enumerated offense is a sexually violent predator and shall forward the evidence and documentation to the sentencing court along with a report of its findings.

2.) Conditions of release including, but not limited to, whether the offender is under supervision of probation or parole; receiving sex offender specific counseling, therapy, or treatment; or residing in a home situation that provides guidance and supervision.

3.) Criminal history factors including, but not limited to, whether the offender's conduct is characterized by repetitive and compulsive behavior, committed the sex offense against a child, the nature of the relationship between the offender and the victim, whether the offense involved the use of a weapon, violence, or infliction of serious bodily injury, the number date and nature of prior offenses, whether or not psychological or psychiatric profiles indicate a risk of recidivism, the offender's response to treatment, recent behavior including behavior while confined or while under supervision in the community as well as behavior in the community following service of sentence, recent threats against persons or expressions of intent to commit additional crimes.

***ACTIVE MANUAL USE FROM 07/21/2004 - 06/07/2005***

# Sex Offender Board of Review
## Preamble
## Policy Statement
## Community Notification Guidelines
## 2004

### Board Members

Peg Langhammer
Peter Loss
Joseph Richardson
Charles Golembeske
James Moody
Ralph Liguori

Title 242 Parole Board
Chapter XXX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Subchapter XX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Part 2745 Sex Offender Community Notification Guidelines and Policy Statement 2004
Type of Filing Amendment
Regulation Status Inactive
Effective 07/21/2004 to 06/07/2005
Regulation Authority:   https://rules.sos.ri.gov/Regulations/part/242-XXX-XX-2745?reg_id=308

11-37.1et seq.
Purpose and Reason:

Required by RI Gen Law 11-37.1 and the RI Open Meetings Act.

# PREAMBLE

The Sex Offender Community Notification Unit and the Sex Offender Board of Review in establishing these guidelines pursuant to the provisions of Rhode Island General Law 11-37.1-19, is mindful that it has the authority to make a determination at variance with these guidelines, if a finding can be made that such determination is warranted by individualized factors, such as the character and criminal record, the nature and circumstances of the offense, the conduct of the offender while incarcerated or on probation, and the other criteria set forth in Rhode Island General Law 11-37.1-19.

Each offender continues to be eligible to be reviewed by the Sex Offender Board of Review at the time set by statute under RIGL 11-37.1-19. The following is a list of offenses enumerated in RIGL 11-37.1-19.

Respectfully Submitted,

Rhode Island Sex Offender Board of Review

Peg Langhammer

Ralph Ligouri

Peter Loss

James Moody

Joseph Richardson

The Sex Offender Community Notification Unit and the Sex Offender Board of Review pursuant to Rhode Island General Law 11-37.1-19 hereby unanimously adopt the following guidelines:

**List Of Crimes Under Rhode Island General Law Requiring Examination by The Sex Offender Board of Review (R.I. Gen. Law 11-37.1-19)**

- **11-23-1** Murder where the murder was committed in the commission of or attempted commission of rape or any degree of sexual assault or child molestation (Date of offense on or after 7-1-99)

- **11-37-2** 1st Degree Sexual Assault

- **11-37-4** 2nd Degree Sexual Assault

- **11-37-6** 3rd Degree Sexual Assault

- **11-37-8.1** 1st Degree Child Molestation

- **11-37-8.3** 2nd Degree Child Molestation

- **11-37-8** Assault With Intent To Commit 1st Degree Sexual Assault (Date of offense on or after 7-1-99)

- **11-5-1** Assault With Intent To Commit A Specified Felony, Where The Specified Felony Is A Sexual Assault (Date of offense on or after 7-1-99)

A person convicted of the above charges, as defined in RIGL 11-37.1-19, who has been sentenced to prison, sentenced to probation and referred by the Attorney General, or granted parole shall be reviewed by the Sex Offender Community Notification Unit in conjunction with the Sex Offender Board of Review.

**Rhode Island Sex Offender Board of Review
Policy Statement April 2004**

A.) **The Sex Offender Board of Review will use the following major criteria:**

1.) (a) The Sex Offender Board of Review upon referral from a sentencing court or an agency having custody of a convicted sex offender, shall make findings as to whether or not a person convicted of an enumerated offense poses a low, moderate, or high level of risk to re-offend. (b) In the matter of sexually violent predator status, the board shall within thirty (30) days of a referral of a person obtain any evidence and documentation sufficient to aid the court in its determination as to whether or not a person convicted of an enumerated offense is a sexually violent predator and shall forward the evidence, documentation, and sex offender specific psychiatric evaluation to the sentencing court along with a report of its findings.

2.) Conditions of release including, but not limited to, whether the offender is under supervision of probation or parole; receiving sex offender specific counseling, therapy, or treatment; or residing in a home situation that provides guidance and supervision.

3.) Criminal history factors including, but not limited to, whether the offender's conduct is characterized by repetitive and compulsive behavior, committed the sex offense against a child, the nature of the relationship between the offender and the victim, whether the offense involved the use of a weapon, violence, or infliction of serious bodily injury, the number date and nature of prior offenses, whether or not psychological or psychiatric profiles indicate a risk of recidivism, the offender's response to treatment, recent behavior including behavior while confined or while under supervision in the community as well as behavior in the community following service of sentence, recent threats against persons or expressions of intent to commit additional crimes.

# SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES

### R.I. GENERAL LAWS §11-37.1-1 ET SEQ.

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## RHODE ISLAND PAROLE BOARD
## SEX OFFENDER COMMUNITY NOTIFICATION UNIT

## SEX OFFENDER BOARD OF REVIEW 2004

### Board Members

Peg Langhammer
Jim Moody
Joseph Richardson

Peter Loss
Ralph Liguori
Chuck Golembske

# TABLE OF CONTENTS

INTRODUCTION.................................................................................3

SCOPE.............................................................................................3

POLICY ...........................................................................................3

STATUTORY AUTHORITY................................................................3

PART I     DEFINITIONS..................................................................4

§1.0     DEFINITIONS ....................................................................4-7

PART II     DUTIES OF BOARD OF REVIEW, PAROLE BOARD AND
          LAW ENFORCEMENT OFFENDERS IN CUSTODY ..........................8

§2.0     DUTIES OF THE BOARD OF REIVEW, PAROLE BOARD AND LAW
         ENFORCEMENT OFFICERS IN CUSTODY .................................8-9

§3.0     SEX OFFENDER BOARD OF REVIEW ......................................9-11

§4.0     DUTIES OF LAW ENFORCEMENT AGENCIES.........................11-13

PART III     COMMUNITY NOTIFICATION PLAN GUIDELINES FOR
           LEVELS I, II AND III.........................................................14

§5.0     RISK LEVEL I-LOW RISK SEXUAL OFFENDER ........................14

§6.0     RISK LEVEL II-MODERATE RISK SEXUAL OFFENDERS IN RESIDENTIAL....14-15

§7.0     RISK LEVEL II (1)-MODERATE RISK SEXUAL OFFENDERS NOT PLACED
         IN A TREATMENT FACILITY ..............................................15-20

§8.0     RISK LEVEL III- HIGH RISK SEXUAL OFFENDERS IN RESIDENTIAL
         FACILITIES ......................................................................20

§9.0     RISK LEVEL III (A)- HIGH RISK SEXUAL OFFENDERS NOT PLACED IN
         TREATMENT FACILITY ....................................................20-22

§10.0    EXCHANGE OF INFORMATION BETWEEN LAW ENFORCEMENT
         AGENCIES .......................................................................22

PART IV     RE-NOTIFICATION.......................................................23

§12.0    RE-NOTIFICATION............................................................23

PART V     DUTIES OF THE ATTORNEY GENERAL, OFFICE OF PAROBATION &
          PAROLE, SOBOR, PAROLE BOARD AND LAW ENFORCEMENT -
          NON-INCARCERATED OFFENDERS ......................................24

§13.0    DUTIES OF THE ATTORNEY GENERAL.................................24

§14.0    DUTIES OF THE OFFICE OF ADULT AND JUVENILE PROBATION & PAROLE ..................................................................24-25

§15.0    DUTIES OF THE SEX OFFENDER BOARD OF REVIEW .............................................25

§16.0    DUTIES OF THE PAROLE BOARD .........................................................................25

§17.0    DUTIES OF LAW ENFORCEMENT .........................................................................26

PART VI    COMMUNITY NOTIFICAITON PLAN-GUIDELINES FOR LEVELS I, II AND III    NON-INCARCERATED OFFENDERS.........................................27

§18.0    COMMUNITY NOTIFICATION PLAN-GUIDELINES ................................................27

§19.0    COMMUNITY NOTIFICATION PLAN- ALL OTHER REGISTER OFFENDERS ..27

§20.0    RELEASE OF INFORMATION ................................................................................28

PART VII    IMMUNITY .........................................................................................................29

§30.0    GOOD FAITH IMMUNITY ...................................................................................29

APPENDIX    ......................................................................................................................30

ADDENDUM I..........................................................................................................30-31

ADDENDUM 2 ..............................................................................................................32

ADDENDUM 3 ..............................................................................................................33

SAMPLE LETTER TO LAW ENFORCEMENT- LEVEL I.......................................34

SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL II....................................35

SAMPLE LETTER TO LAW ENFROCEMENT – LEVEL III...................................36

SAMPLE NOTIFCE TO LEVEL II AND LEVEL III OFFENDERS.........................37-38

SAMPLE FACT SHEET – LEVEL I.........................................................................39

SAMPLE FACT SHEET – LEVEL II........................................................................41

SAMPLE FACT SHEET – LEVEL III.......................................................................42

# OFFICE OF ATTORNEY GENERAL OF RHODE ISLAND

## SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES

| EFFECTIVE DATE: | DISTRIBUTION: |
|---|---|
| 7/10/03 | |

## INTRODUCTION

### SCOPE

This policy is intended to ensure that all law enforcement agencies comply with the requirements of Rhode Island General Laws §11-37.1-1 et seq., to provide for the registration of juvenile and adult sexual offenders living in Rhode Island or relocating here from another jurisdiction, and to provide community notification relative to the release of juvenile and adult sexual offenders living or relocating to Rhode Island.

The Community Notification Provisions of R.I. General Laws §11-37.1 et seq., shall apply to all those juvenile and adult offenders who committed a sexually violent offense on or after July 24, 1996, and who are determined to be at low risk, moderate risk or high risk of re-offense.

### POLICY

By enacting the Sexual Offender Registration and Community Notification Act, R.I. Gen. Laws §11-37.1-1 et seq., the State of Rhode Island supports the policy that if members of the public are provided adequate notification and information about a sex offender who has been or is about to be released from custody and who lives or will live in or near their neighborhood, the community can develop constructive plans to prepare themselves and their children for the offender's release.

In order to implement this policy, it is the policy of this agency to facilitate the registration of sexual and other predatory offenders. It is further the policy of this agency to provide community notification relative to the release of those offenders as designated by statute, while preserving the legal rights of those offenders.

It is the policy of this agency to provide the maximum information authorized by law, consistent with the requirements of public safety.

### STATUATORY AUTHORITY

R.I. General Laws §11-37.1-1 et seq.,                    Sexual Offender Registration and
                                                          Community Notification Act

## PART I    DEFINITIONS

*Section 1.0    Definitions*

Wherever used in these Guidelines, the following terms shall be construed as follows:

1.1    The terms "Board", "Board of Review" and "Sex Offender Board of Review", shall mean the "BOR" appointed by the governor pursuant to the RI General Laws §11-37.1-1 et seq.

1.2    The term "Sex Offender Community Notification Unit" shall mean the SOCN unit whose duty and authority is set forth in RI General Law 11-37.1-1 et seq.

1.3    Law Enforcement Agency:

1.3.1    For the purpose of community notification, a law enforcement agency is defined as the agency having primary jurisdiction over the location where the offender expects to reside upon release, and/or where the offer is likely to be encouraged.

1.3.2    For all other purposes under this policy, the definition of law enforcement agency includes all agencies which carry on a law enforcement or prosecutorial function including, but not limited to, local, state and federal agencies; and parole, probation and court services agencies.

1.4    The term "sexually violent offense" shall mean and include any violation of RI Gen Laws §11-37-2, §11-37-4, §11-37-6, §11-37-8, §11-37-8.1, §11-37-8.3, §11-5-1 and §11-23-1 or any offense in another jurisdiction which is substantially the equivalent of any offense listed in this subsection and for which the person is or would be required to register under 42 USC §14071 or 18 USC Section 4042 (c).

1.5    The term "sexually violent predator" shall mean a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

1.6    The term "mental abnormality" shall mean a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person menace to the health and safety of other person.

***ACTIVE MANUAL USE FROM 06/07/2005 - 06/07/2006***

# SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES
## R.I. GENERAL LAWS §11-37.1-1 ET SEQ.

### STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Title 242 Parole Board
Chapter XXX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Subchapter XX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Part 2745 Sex Offender Community Notification Unit Gudelines and Policy Statement 2005
Type of Filing Amendment
Regulation Status Inactive
Effective 06/07/2005 to 06/07/2006
Regulation Authority:

### RHODE ISLAND PAROLE BOARD
### SEX OFFENDER COMMUNITY NOTIFICATION UNIT

### SEX OFFENDER BOARD OF REVIEW 2005

#### Board Members

Peg Langhammer
Jim Moody
Joseph Richardson

Peter Loss
Ralph Liguori
Chuck Golembeske

https://rules.sos.ri.gov/Regulations/part/242-XXX-XX-2745?reg_id=4012

11-37.1
Purpose and Reason:

The Sex Offender Community Notification Unit is required to hold annually a public hearing and open meeting for the purpose of comment anfd review by the public of the policies and guidelines of the community notification process.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 3

SCOPE .............................................................................................................. 3

POLICY ............................................................................................................. 3

STATUTORY AUTHORITY .............................................................................. 3

PART I        DEFINITIONS ............................................................................ 4

    §1.0    DEFINITIONS ...................................................................................... 4-7

PART II       DUTIES OF BOARD OF REVIEW, PAROLE BOARD AND
              LAW ENFORCEMENT OFFENDERS IN CUSTODY ........................... 8

    §2.0    DUTIES OF THE BOARD OF REIVEW, PAROLE BOARD AND LAW
            ENFORCEMENT OFFICERS IN CUSTODY ........................................ 8-9

    §3.0    SEX OFFENDER BOARD OF REVIEW ................................................ 9-10

    §4.0    DUTIES OF LAW ENFORCEMENT AGENCIES .................................. 11-13

PART III      COMMUNITY NOTIFICATION PLAN GUIDELINES FOR
              LEVELS I,II AND III ...................................................................... 14

    §5.0    RISK LEVEL I-LOW RISK SEXUAL OFFENDER ................................ 14

    §6.0    RISK LEVEL II-MODERATE RISK SEXUAL OFFENDERS IN RESIDENTIAL .. 14-15

    §7.0    RISK LEVEL II(1)-MODERATE RISK SEXUAL OFFENDERS NOT PLACED
            IN A TREATMENT FACILITY ............................................................ 15-20

    §8.0    RISK LEVEL III- HIGH RISK SEXUAL OFFENDERS IN RESIDENTIAL
            FACILITIES ...................................................................................... 20

    §9.0    RISK LEVEL III(A)- HIGH RISK SEXUAL OFFENDERS NOT PLACED IN
            TREATMENT FACILITY .................................................................... 20-22

    §10.0   EXCHANGE OF INFORMATION BETWEEN LAW ENFORCEMENT
            AGENCIES ........................................................................................ 22

PART IV       RE-NOTIFICATION .................................................................... 23

PART V        RELEASE OF INFORMATION ..................................................... 24

PART VI       IMMUNITY ................................................................................ 25

1

APPENDIX   ..................................................................................................26

ADDENDUM I...........................................................................................26-27

ADDENDUM 2 ...............................................................................................28

ADDENDUM 3 ...............................................................................................29

SAMPLE LETTER TO LAW ENFORCEMENT- LEVEL I.........................................30

SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL II......................................31

SAMPLE LETTER TO LAW ENFROCEMENT – LEVEL III ...................................32

SAMPLE NOTIFCE TO LEVEL II AND LEVEL III OFFENDERS ...........................33-34

SAMPLE FACT SHEET – LEVEL I ........................................................................35

SAMPLE FACT SHEET – LEVEL II........................................................................36

SAMPLE FACT SHEET – LEVEL III.......................................................................37

P.R. 15 of 364

## OFFICE OF ATTORNEY GENERAL OF RHODE ISLAND

## SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES

| EFFECTIVE DATE: | DISTRIBUTION: |
|---|---|
| 7/10/03 | |

## INTRODUCTION

### SCOPE

This policy is intended to ensure that all law enforcement agencies comply with the requirements of Rhode Island General Laws §11-37.1-1 et seq., to provide for the registration of juvenile and adult sexual offenders living in Rhode Island or relocating here from another jurisdiction, and to provide community notification relative to the release of juvenile and adult sexual offenders living or relocating to Rhode Island.

The Community Notification Provisions of R.I. General Laws §11-37.1 et seq., shall apply to all those juvenile and adult offenders who committed a sexually violent offense on or after July 24, 1996, and who are determined to be at low risk, moderate risk or high risk of re-offense.

## POLICY

By enacting the Sexual Offender Registration and Community Notification Act, R.I. Gen. Laws §11-37.1-1 et seq., the State of Rhode Island supports the policy that if members of the public are provided adequate notification and information about a sex offender who has been or is about to be released from custody and who lives or will live in or near their neighborhood, the community can develop constructive plans to prepare themselves and their children for the offender's release.

In order to implement this policy, it is the policy of this agency to facilitate the registration of sexual and other predatory offenders. It is further the policy of this agency to provide community notification relative to the release of those offenders as designated by statute, while preserving the legal rights of those offenders.

It is the policy of this agency to provide the maximum information authorized by law, consistent with the requirements of public safety.

## STATUATORY AUTHORITY

R.I. General Laws §11-37.1-1 et seq.,          Sexual Offender Registration and
                                               Community Notification Act

3

## PART I    DEFINITIONS

*Section 1.0    Definitions*

Wherever used in these Guidelines, the following terms shall be construed as follows:

1.1    The terms "Board", "Board of Review" and "Sex Offender Board of Review", shall mean the "BOR" appointed by the governor pursuant to the RI General Laws §11-37.1-1 et seq.

1.2    The term "Sex Offender Community Notification Unit" shall mean the SOCN unit whose duty and authority is set forth in RI General Law 11-37.1-1 et seq.

1.3    Law Enforcement Agency:

1.3.1    For the purpose of community notification, a law enforcement agency is defined as the agency having primary jurisdiction over the location where the offender expects to reside upon release, and/or where the offer is likely to be encouraged.

1.3.2    For all other purposes under this policy, the definition of law enforcement agency includes all agencies which carry on a law enforcement or prosecutorial function including, but not limited to, local, state and federal agencies; and parole, probation and court services agencies.

1.4    The term "sexually violent offense" shall mean and include any violation of RI Gen Laws §11-37-2, §11-37-4, §11-37-6, §11-37-8, §11-37-8.1, §11-37-8.3, §11-5-1 and §11-23-1 or any offense in another jurisdiction which is substantially the equivalent of any offense listed in this subsection and for which the person is or would be required to register under 42 USC §14071 or 18 USC Section 4042 (c).

1.5    The term "sexually violent predator" shall mean a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

1.6    The term "mental abnormality" shall mean a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person menace to the health and safety of other person.

4

---

**42 USC 14071: Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program**

Text contains those laws in effect on January 23, 2000

From Title 42-THE PUBLIC HEALTH AND WELFARE
   CHAPTER 136-VIOLENT CRIME CONTROL AND LAW ENFORCEMENT
   SUBCHAPTER VI-CRIMES AGAINST CHILDREN

Jump To:
   **Source Credit**
   **Amendments**
   **Effective Date**
   **Regulations**
   **Severability**
   **Miscellaneous**

---

## §14071. Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program

**(a) In general**

**(1) State guidelines**

The Attorney General shall establish guidelines for State programs that require-
   (A) a person who is convicted of a criminal offense against a victim who is a minor or who is convicted of a sexually violent offense to register a current address for the time period specified in subparagraph (A) of subsection (b)(6) of this section; and
   (B) a person who is a sexually violent predator to register a current address unless such requirement is terminated under subparagraph (B) of subsection (b)(6) of this section.

**(2) Determination of sexually violent predator status; waiver; alternative measures**

**(A) In general**

A determination of whether a person is a sexually violent predator for purposes of this section shall be made by a court after considering the recommendation of a board composed of experts in the behavior and treatment of sex offenders, victims' rights advocates, and representatives of law enforcement agencies.

**(B) Waiver**

The Attorney General may waive the requirements of subparagraph (A) if the Attorney General determines that the State has established alternative procedures or legal standards for designating a person as a sexually violent predator.

**(C) Alternative measures**

The Attorney General may also approve alternative measures of comparable or greater effectiveness in protecting the public from unusually dangerous or recidivistic sexual offenders in lieu of the specific measures set forth in this section regarding sexually violent predators.

**(3) Definitions**

For purposes of this section:
   (A) The term "criminal offense against a victim who is a minor" means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses:
      (i) kidnapping of a minor, except by a parent;
      (ii) false imprisonment of a minor, except by a parent;
      (iii) criminal sexual conduct toward a minor;
      (iv) solicitation of a minor to engage in sexual conduct;
      (v) use of a minor in a sexual performance;
      (vi) solicitation of a minor to practice prostitution;
      (vii) any conduct that by its nature is a sexual offense against a minor; or
      (viii) an attempt to commit an offense described in any of clauses (i) through (vii), if the State-
         (I) makes such an attempt a criminal offense; and
         (II) chooses to include such an offense in those which are criminal offenses against a victim who is a minor for the purposes of this section.

For purposes of this subparagraph conduct which is criminal only because of the age of the victim shall not be considered a criminal offense if the perpetrator is 18 years of age or younger.

(B) The term "sexually violent offense" means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the range of offenses encompassed by aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of title 18 or as described in the State criminal code) or an offense that has as its elements engaging in physical contact with another person with intent to commit aggravated sexual abuse or sexual abuse (as described in such sections of title 18 or as described in the State criminal code).

(C) The term "sexually violent predator" means a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

(D) The term "mental abnormality" means a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.

(E) The term "predatory" means an act directed at a stranger, or a person with whom a relationship has been established or promoted for the primary purpose of victimization.

(F) The term "employed, carries on a vocation" includes employment that is full-time or part-time for a period of time exceeding 14 days or for an aggregate period of time exceeding 30 days during any calendar year, whether financially compensated, volunteered, or for the purpose of government or educational benefit.

(G) The term "student" means a person who is enrolled on a full-time or part-time basis, in any public or private educational institution, including any secondary school, trade, or professional institution, or institution of higher education.

## (b) Registration requirement upon release, parole, supervised release, or probation

An approved State registration program established under this section shall contain the following elements:

### (1) Duties of responsible officials

(A) If a person who is required to register under this section is released from prison, or placed on parole, supervised release, or probation, a State prison officer, the court, or another responsible officer or official, shall—

(i) inform the person of the duty to register and obtain the information required for such registration;

(ii) inform the person that if the person changes residence address, the person shall report the change of address as provided by State law;

(iii) inform the person that if the person changes residence to another State, the person shall report the change of address as provided by State law and comply with any registration requirement in the new State of residence, and inform the person that the person must also register in a State where the person is employed, carries on a vocation, or is a student;

(iv) obtain fingerprints and a photograph of the person if these have not already been obtained in connection with the offense that triggers registration; and

(v) require the person to read and sign a form stating that the duty of the person to register under this section has been explained.

(B) In addition to the requirements of subparagraph (A), for a person required to register under subparagraph (B) of subsection (a)(1) of this section, the State prison officer, the court, or another responsible officer or official, as the case may be, shall obtain the name of the person, identifying factors, anticipated future residence, offense history, and documentation of any treatment received for the mental abnormality or personality disorder of the person.

### (2) Transfer of information to State and FBI; participation in national sex offender registry

#### (A) State reporting

State procedures shall ensure that the registration information is promptly made available to a law enforcement agency having jurisdiction where the person expects to reside and entered into the appropriate State records or data system. State procedures shall also ensure that conviction data and fingerprints for persons required to register are promptly transmitted to the Federal Bureau of Investigation.

#### (B) National reporting

A State shall participate in the national database established under section 14072(b) of this title in accordance with guidelines issued by the Attorney General, including transmission of current address information and other information on registrants to the extent provided by the guidelines.

### (3) Verification

(A) For a person required to register under subparagraph (A) of subsection (a)(1) of this section, State procedures shall provide for verification of address at least annually.

(B) The provisions of subparagraph (A) shall be applied to a person required to register under subparagraph (B) of subsection (a)(1) of this section, except that such person must verify the registration every 90 days after the date of the initial release or commencement of parole.

### (4) Notification of local law enforcement agencies of changes in address

A change of address by a person required to register under this section shall be reported by the person in the manner provided by State law. State procedures shall ensure that the updated address information is promptly made

available to a law enforcement agency having jurisdiction where the person will reside and entered into the appropriate State records or data system.

**(5) Registration for change of address to another State**

A person who has been convicted of an offense which requires registration under this section and who moves to another State, shall report the change of address to the responsible agency in the State the person is leaving, and shall comply with any registration requirement in the new State of residence. The procedures of the State the person is leaving shall ensure that notice is provided promptly to an agency responsible for registration in the new State, if that State requires registration.

**(6) Length of registration**

A person required to register under subsection (a)(1) of this section shall continue to comply with this section, except during ensuing periods of incarceration, until-

    (A) 10 years have elapsed since the person was released from prison or placed on parole, supervised release, or probation; or

    (B) for the life of that person if that person-

        (i) has 1 or more prior convictions for an offense described in subsection (a)(1)(A) of this section; or

        (ii) has been convicted of an aggravated offense described in subsection (a)(1)(A) of this section; or

        (iii) has been determined to be a sexually violent predator pursuant to subsection (a)(2) of this section.

**(7) Registration of out-of-State offenders, Federal offenders, persons sentenced by courts martial, and offenders crossing State borders**

As provided in guidelines issued by the Attorney General, each State shall include in its registration program residents who were convicted in another State and shall ensure that procedures are in place to accept registration information from-

    (A) residents who were convicted in another State, convicted of a Federal offense, or sentenced by a court martial; and

    (B) nonresident offenders who have crossed into another State in order to work or attend school.

**(c) Registration of offender crossing State border**

Any person who is required under this section to register in the State in which such person resides shall also register in any State in which the person is employed, carries on a vocation, or is a student.

**(d) Penalty**

A person required to register under a State program established pursuant to this section who knowingly fails to so register and keep such registration current shall be subject to criminal penalties in any State in which the person has so failed.

**(e) Release of information**

(1) The information collected under a State registration program may be disclosed for any purpose permitted under the laws of the State.

(2) The State or any agency authorized by the State shall release relevant information that is necessary to protect the public concerning a specific person required to register under this section, except that the identity of a victim of an offense that requires registration under this section shall not be released.

**(f) Immunity for good faith conduct**

Law enforcement agencies, employees of law enforcement agencies and independent contractors acting at the direction of such agencies, and State officials shall be immune from liability for good faith conduct under this section.

**(g) Compliance**

**(1) Compliance date**

Each State shall have not more than 3 years from September 13, 1994, in which to implement this section, except that the Attorney General may grant an additional 2 years to a State that is making good faith efforts to implement this section.

**(2) Ineligibility for funds**

    (A) A State that fails to implement the program as described in this section shall not receive 10 percent of the funds that would otherwise be allocated to the State under section 3756 of this title.

    (B) REALLOCATION OF FUNDS.-Any funds that are not allocated for failure to comply with this section shall be reallocated to States that comply with this section.

**(h) Fingerprints**

Each requirement to register under this section shall be deemed to also require the submission of a set of fingerprints of the person required to register, obtained in accordance with regulations prescribed by the Attorney General under section 14072(h) of this title.

**(i) Grants to States for costs of compliance**

**(1) Program authorized**

P.R. 20 of 3[6]

**(A) In general**

The Director of the Bureau of Justice Assistance (in this subsection referred to as the "Director") shall carry out a program, which shall be known as the "Sex Offender Management Assistance Program" (in this subsection referred to as the "SOMA program"), under which the Director shall award a grant to each eligible State to offset costs directly associated with complying with this section.

**(B) Uses of funds**

Each grant awarded under this subsection shall be-
    (i) distributed directly to the State for distribution to State and local entities; and
    (ii) used for training, salaries, equipment, materials, and other costs directly associated with complying with this section.

**(2) Eligibility**

**(A) Application**

To be eligible to receive a grant under this subsection, the chief executive of a State shall, on an annual basis, submit to the Director an application (in such form and containing such information as the Director may reasonably require) assuring that-
    (i) the State complies with (or made a good faith effort to comply with) this section; and
    (ii) where applicable, the State has penalties comparable to or greater than Federal penalties for crimes listed in this section, except that the Director may waive the requirement of this clause if a State demonstrates an overriding need for assistance under this subsection.

**(B) Regulations**

**(i) In general**

Not later than 90 days after October 30, 1998, the Director shall promulgate regulations to implement this subsection (including the information that must be included and the requirements that the States must meet) in submitting the applications required under this subsection. In allocating funds under this subsection, the Director may consider the annual number of sex offenders registered in each eligible State's monitoring and notification programs.

**(ii) Certain training programs**

Prior to implementing this subsection, the Director shall study the feasibility of incorporating into the SOMA program the activities of any technical assistance or training program established as a result of section 13941 of this title. In a case in which incorporating such activities into the SOMA program will eliminate duplication of efforts or administrative costs, the Director shall take administrative actions, as allowable, and make recommendations to Congress to incorporate such activities into the SOMA program prior to implementing the SOMA program.

**(3) Authorization of appropriations**

There is authorized to be appropriated to carry out this subsection, $25,000,000 for each of fiscal years 1999 and 2000.

( Pub. L. 103–322, title XVII, §170101, Sept. 13, 1994, 108 Stat. 2038 ; Pub. L. 104–145, §2, May 17, 1996, 110 Stat. 1345 ; Pub. L. 104–236, §§3–7, Oct. 3, 1996, 110 Stat. 3096 , 3097; Pub. L. 105–119, title I, §115(a)(1)–(5), Nov. 26, 1997, 111 Stat. 2461–2463 ; Pub. L. 105–314, title VI, §607(a), Oct. 30, 1998, 112 Stat. 2985 .)

## AMENDMENTS

**1998**–Subsecs. (g), (h). Pub. L. 105–314, §607(a)(1), which directed the amendment of this section by redesignating the second subsection designated as subsection (g) as subsection (h), was executed by redesignating subsec. (g), relating to fingerprints, as (h) to reflect the probable intent of Congress.

Subsec. (i). Pub. L. 105–314, §607(a)(2), added subsec. (i).

**1997**–Subsec. (a)(1)(A), (B). Pub. L. 105–119, §115(a)(1)(A), struck out "with a designated State law enforcement agency" after "current address".

Subsec. (a)(2). Pub. L. 105–119, §115(a)(1)(B), added par. (2) and struck out heading and text of former par. (2). Text read as follows: "A determination that a person is a sexually violent predator and a determination that a person is no longer a sexually violent predator shall be made by the sentencing court after receiving a report by a State board composed of experts in the field of the behavior and treatment of sexual offenders, victim rights advocates, and representatives from law enforcement agencies."

Subsec. (a)(3)(A). Pub. L. 105–119, §115(a)(1)(C)(i), substituted "in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses:" for "that consists of-" in introductory provisions.

Subsec. (a)(3)(B). Pub. L. 105–119, §115(a)(1)(C)(ii), substituted "in a range of offenses specified by State law which is comparable to or which exceeds the range of offenses encompassed by" for "that consists of".

Subsec. (a)(3)(F), (G). Pub. L. 105–119, §115(a)(1)(D), added subpars. (F) and (G).

Subsec. (b)(1). Pub. L. 105–119, §115(a)(2)(A)(i), substituted "Duties of responsible officials" for "Duty of State prison official or court" in heading.

Subsec. (b)(1)(A). Pub. L. 105–119, §115(a)(2)(A)(ii)(I), substituted "the court, or another responsible officer or official" for "or in the case of probation, the court" in introductory provisions.

Subsec. (b)(1)(A)(ii). Pub. L. 105–119, §115(a)(2)(A)(ii)(II), substituted "report the change of address as provided by State law" for "give the new address to a designated State law enforcement agency in writing within 10 days".

Subsec. (b)(1)(A)(iii). Pub. L. 105–119, §115(a)(2)(A)(ii)(III), substituted "shall report the change of address as provided by State law and comply with any registration requirement in the new State of residence, and inform the person that the person must also register in a State where the person is employed, carries on a vocation, or is a student" for "shall register the new address with the law enforcement agency with whom the person last registered, and the person is also required to register with a designated law enforcement agency in the new State not later than 10 days after establishing residence in the new State, if the new State has a registration requirement".

Subsec. (b)(1)(B). Pub. L. 105–119, §115(a)(2)(A)(iii), substituted ", the court, or another responsible officer or official" for "or the court".

Subsec. (b)(2). Pub. L. 105–119, §115(a)(2)(B), added par. (2) and struck out heading and text of former par. (2). Text read as follows: "The officer, or in the case of a person placed on probation, the court, shall, within 3 days after receipt of information described in paragraph (1), forward it to a designated State law enforcement agency. The State law enforcement agency shall immediately enter the information into the appropriate State law enforcement record system and notify the appropriate law enforcement agency having jurisdiction where the person expects to reside. The State law enforcement agency shall also immediately transmit all information described in paragraph (1) to the Federal Bureau of Investigation for inclusion in the FBI database described in section 14072 of this title."

Subsec. (b)(3)(A). Pub. L. 105–119, §115(a)(2)(C)(i), in introductory provisions, substituted "State procedures shall provide for verification of address at least annually." for "on each anniversary of the person's initial registration date during the period in which the person is required to register under this section the following applies:".

Subsec. (b)(3)(A)(i) to (iv). Pub. L. 105–119, §115(a)(2)(C)(ii), which directed the amendment of par. (3)(A) by striking out cls. (i) through (v), was executed by striking out cls. (i) through (iv) to reflect the probable intent of Congress because no cl. (v) had been enacted. Prior to amendment, cls. (i) through (iv) read as follows:

"(i) The designated State law enforcement agency shall mail a nonforwardable verification form to the last reported address of the person.

"(ii) The person shall mail the verification form to the designated State law enforcement agency within 10 days after receipt of the form.

"(iii) The verification form shall be signed by the person, and state that the person still resides at the address last reported to the designated State law enforcement agency. The person shall include with the verification form, fingerprints and a photograph of that person.

"(iv) If the person fails to mail the verification form to the designated State law enforcement agency within 10 days after receipt of the form, the person shall be in violation of this section unless the person proves that the person has not changed the residence address."

Subsec. (b)(4). Pub. L. 105–119, §115(a)(2)(D), substituted "section shall be reported by the person in the manner provided by State law. State procedures shall ensure that the updated address information is promptly made available to a law enforcement agency having jurisdiction where the person will reside and entered into the appropriate State records or data system" for "section reported to the designated State law enforcement agency shall be immediately reported to the appropriate law enforcement agency having jurisdiction where the person is residing. The designated law enforcement agency shall, if the person changes residence to another State, notify the law enforcement agency with which the person must register in the new State, if the new State has a registration requirement".

Subsec. (b)(5). Pub. L. 105–119, §115(a)(2)(E), substituted "and who moves to another State, shall report the change of address to the responsible agency in the State the person is leaving, and shall comply with any registration requirement in the new State of residence. The procedures of the State the person is leaving shall ensure that notice is provided promptly to an agency responsible for registration in the new State, if that State requires registration" for "shall register the new address with a designated law enforcement agency in another State to which the person moves not later than 10 days after such person establishes residence in the new State, if the new State has a registration requirement".

Subsec. (b)(7). Pub. L. 105–119, §115(a)(2)(F), added par. (7).

Subsec. (c). Pub. L. 105–119, §115(a)(3), added subsec. (c). Former subsec. (c) redesignated (d).

Subsec. (d). Pub. L. 105–119, §115(a)(3), redesignated subsec. (c) as (d). Former subsec. (d) redesignated (e).

Subsec. (e). Pub. L. 105–119, §115(a)(3), (4), redesignated subsec. (d) as (e) and in par. (2) substituted "The State or any agency authorized by the State" for "The designated State law enforcement agency and any local law enforcement agency authorized by the State agency". Former subsec. (e) redesignated (f).

Subsec. (f). Pub. L. 105–119, §115(a)(3), (5), redesignated subsec. (e) as (f) and substituted "and independent contractors acting at the direction of such agencies, and State officials" for ", and State officials". Former subsec. (f) redesignated (g).

Subsec. (g). Pub. L. 105–119, §115(a)(3), redesignated subsec. (f), relating to compliance, as (g).

**1996**—Subsec. (a)(2). Pub. L. 104–236, §4, inserted before period at end ", victim rights advocates, and representatives from law enforcement agencies".

Subsec. (b)(2). Pub. L. 104–236, §7, amended heading and text of par. (2) generally. Prior to amendment, text read as follows: "The officer, or in the case of a person placed on probation, the court, shall, within 3 days after receipt of information described in paragraph (1), forward it to a designated State law enforcement agency. The State law enforcement agency shall immediately enter the information into the appropriate State law enforcement record system and notify the appropriate law enforcement agency having jurisdiction where the person expects to reside. The State law enforcement agency shall also immediately transmit the conviction data and fingerprints to the Federal Bureau of Investigation."

Subsec. (b)(3)(A)(iii). Pub. L. 104–236, §6, inserted at end "The person shall include with the verification form, fingerprints and a photograph of that person."

Subsec. (b)(6). Pub. L. 104–236, §3, amended heading and text of par. (6) generally. Prior to amendment, text read as follows:

"(A) A person required to register under subparagraph (A) of subsection (a)(1) of this section shall continue to comply with this section until 10 years have elapsed since the person was released from prison, placed on parole, supervised release, or probation.

"(B) The requirement of a person to register under subparagraph (B) of subsection (a)(1) of this section shall terminate upon a determination, made in accordance with paragraph (2) of subsection (a) of this section, that the person no longer suffers from a mental abnormality or personality disorder that would make the person likely to engage in a predatory sexually violent offense."

Subsec. (d). Pub. L. 104–145 amended heading and text of subsec. (d) generally. Prior to amendment, text read as follows: "The information collected under a State registration program shall be treated as private data expect that—

"(1) such information may be disclosed to law enforcement agencies for law enforcement purposes;

"(2) such information may be disclosed to government agencies conducting confidential background checks; and

"(3) the designated State law enforcement agency and any local law enforcement agency authorized by the State agency may release relevant information that is necessary to protect the public concerning a specific person required to register under this section, except that the identity of a victim of an offense that requires registration under this section shall not be released."

Subsec. (g). Pub. L. 104–236, §5, added subsec. (g).

## EFFECTIVE DATE OF 1997 AMENDMENT

Section 115(c) of Pub. L. 105–119 provided that: "This section [amending this section, section 14072 of this title, and sections 3521, 3563, 3583, 4042, and 4209 of Title 18, Crimes and Criminal Procedure, enacting provisions set out as notes under section 14039 of this title and section 951 of Title 10, Armed Forces, and amending provisions set out as a note under this section] shall take effect on the date of the enactment of this Act [Nov. 26, 1997], except that—

"(1) subparagraphs (A), (B), and (C) of subsection (a)(8) [amending sections 3563, 3583, 4042, and 4209 of Title 18, Crimes and Criminal Procedure, and enacting provisions set out as a note under section 951 of Title 10, Armed Forces] shall take effect 1 year after the date of the enactment of this Act; and

"(2) States shall have 3 years from such date of enactment to implement amendments made by this Act [probably should be "this section"] which impose new requirements under the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act [42 U.S.C. 14071 et seq.], and the Attorney General may grant an additional 2 years to a State that is making good faith efforts to implement these amendments."

## EFFECTIVE DATE OF 1996 AMENDMENT

Section 10 of Pub. L. 104–236, as amended by Pub. L. 105–119, title I, §115(a)(7), Nov. 26, 1997, 111 Stat. 2464 , provided that:

"(a) IN GENERAL.-This Act [enacting sections 14072 and 14073 of this title, amending this section, and enacting provisions set out as notes under this section and section 13701 of this title] and the amendments made by this Act shall become effective 1 year after the date of enactment of this Act [Oct. 3, 1996].

"(b) COMPLIANCE BY STATES.-Each State shall implement the amendments made by sections 3, 4, 5, 6, and 7 of this Act [amending this section] not later than 3 years after the date of enactment of this Act, except that the Attorney General may grant an additional 2 years to a State that is making good faith efforts to implement such amendments.

"(c) INELIGIBILITY FOR FUNDS.-

"(1) A State that fails to implement the program as described in sections 3, 4, 5, 6, and 7 of this Act [amending this section] shall not receive 10 percent of the funds that would otherwise be allocated to the State under section 506 of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3756).

"(2) Any funds that are not allocated for failure to comply with section 3, 4, 5, 6, or 7 of this Act shall be reallocated to States that comply with these sections.

"(d) EFFECTIVE DATE.-States shall be allowed the time specified in subsection (b) to establish minimally sufficient sexual offender registration programs for purposes of the amendments made by section 2 [enacting section 14072 of this title]. Subsections (c) and (k) of section 170102 of the Violent Crime Control and Law Enforcement Act of 1994 [42 U.S.C. 14072(c), (k)], and any requirement to issue related regulations, shall take effect at the conclusion of the time provided under this subsection for the establishment of minimally sufficient sexual offender registration programs."

### REGULATIONS

Section 9 of Pub. L. 104–236 provided that: "Not later than 1 year after the date of enactment of this Act [Oct. 3, 1996], the Attorney General shall issue regulations to carry out this Act [see Effective Date of 1996 Amendment note above] and the amendments made by this Act."

### SEVERABILITY

Section 11 of Pub. L. 104–236 provided that: "If any provision of this Act [see Effective Date of 1996 Amendment note above], an amendment made by this Act, or the application of such provision or amendment to any person or circumstance is held to be unconstitutional, the remainder of this Act, the amendments made by this Act, and the application of the provisions of such to any person or circumstance shall not be affected thereby."

### TRANSFER OF FUNCTIONS

Effective Aug. 1, 2000, all functions of Director of Bureau of Justice Assistance, other than those enumerated in section 3742(3) to (6) of this title, transferred to Assistant Attorney General for Office of Justice Programs, see section 1000(a)(1) [title I, §108(b)] of Pub. L. 106–113, set out as a note under section 3741 of this title.

### STUDY OF SEX OFFENDER MANAGEMENT ASSISTANCE PROGRAM

Pub. L. 105–314, title VI, §607(b), Oct. 30, 1998, 112 Stat. 2986 , provided that: "Not later than March 1, 2000, the Director shall conduct a study to assess the efficacy of the Sex Offender Management Assistance Program under section 170101(i) of the Violent Crime Control and Law Enforcement Act of 1994 (42 U.S.C. 14071(i)), as added by this section, and submit recommendations to Congress."

### STUDY OF HOTLINES

Pub. L. 105–314, title IX, §902, Oct. 30, 1998, 112 Stat. 2991 , provided that:

"(a) IN GENERAL.-Not later than 1 year after the date of the enactment of this Act [Oct. 30, 1998], the Attorney General shall conduct a study in accordance with subsection (b) and submit to Congress a report on the results of that study.

"(b) CONTENTS OF STUDY.-The study under this section shall include an examination of-

"(1) existing State programs for informing the public about the presence of sexual predators released from prison, as required in section 170101 of the Violent Crime Control and Law Enforcement Act of 1994 (42 U.S.C. 14071), including the use of CD-ROMs, Internet databases, and Sexual Offender Identification Hotlines, such as those used in the State of California; and

"(2) the feasibility of establishing a national hotline for parents to access a Federal Bureau of Investigation database that tracks the location of convicted sexual predators established under section 170102 of the Violent Crime Control and Law Enforcement Act of 1994 (42 U.S.C. 14072) and, in determining that feasibility, the Attorney General shall examine issues including the cost, necessary changes to Federal and State laws necessitated by the creation of such a hotline, consistency with

Federal and State case law pertaining to community notification, and the need for, and accuracy and reliability of, the information available through such a hotline."

## SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 14072 of this title; title 18 sections 3563, 3583.

> **18 USC 4042: Duties of Bureau of Prisons**
> Text contains those laws in effect on November 2, 2022
>
> From Title 18-CRIMES AND CRIMINAL PROCEDURE
>     PART III-PRISONS AND PRISONERS
>     CHAPTER 303-BUREAU OF PRISONS
> Jump To:
>     **Source Credit**
>     **Miscellaneous**
>     **References In Text**
>     **Amendments**
>     **Effective Date**
>     **Executive Documents**

## §4042. Duties of Bureau of Prisons

(a) IN GENERAL.-The Bureau of Prisons, under the direction of the Attorney General, shall-

(1) have charge of the management and regulation of all Federal penal and correctional institutions;

(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;

(4) provide technical assistance to State, tribal, and local governments in the improvement of their correctional systems;

(5) provide notice of release of prisoners in accordance with subsections (b) and (c);

(6) establish prerelease planning procedures that help prisoners-

(A) apply for Federal and State benefits upon release (including Social Security benefits, and veterans' benefits);

(B) obtain identification, including a social security card, driver's license or other official photo identification, and a birth certificate; and

(C) secure such identification and benefits prior to release from a sentence to a term of imprisonment in a Federal prison or if the individual was not sentenced to a term of imprisonment in a Federal prison, prior to release from a sentence to a term of community confinement, subject to any limitations in law; and

(7) establish reentry planning procedures that include providing Federal prisoners with information in the following areas:

(A) Health and nutrition.

(B) Employment.

(C) Literacy and education.

(D) Personal finance and consumer skills.

(E) Community resources.

(F) Personal growth and development.

(G) Release requirements and procedures.

(b) NOTICE OF RELEASE OF PRISONERS.-(1) At least 5 days prior to the date on which a prisoner described in paragraph (3) is to be released on supervised release, or, in the case of a prisoner on supervised release, at least 5 days prior to the date on which the prisoner changes residence to a new jurisdiction, written notice of the release or change of residence shall be provided to the chief law enforcement officers of each State, tribal, and local jurisdiction in which the prisoner will reside. Notice prior to release shall be provided by the Director of the Bureau of Prisons. Notice concerning a change of residence following release shall be provided by the probation officer responsible for the supervision of the released prisoner, or in a manner specified by the Director of the Administrative Office of the United States Courts. The notice requirements under this subsection do not apply in relation to a prisoner being protected under chapter 224.

(2) A notice under paragraph (1) shall disclose-

(A) the prisoner's name;

(B) the prisoner's criminal history, including a description of the offense of which the prisoner was convicted; and

(C) any restrictions on conduct or other conditions to the release of the prisoner that are imposed by law, the sentencing court, or the Bureau of Prisons or any other Federal agency.

(3) A prisoner is described in this paragraph if the prisoner was convicted of-

(A) a drug trafficking crime, as that term is defined in section 924(c)(2); or

P.R. 26 of 364

(B) a crime of violence (as defined in section 924(c)(3)).

(c) NOTICE OF SEX OFFENDER RELEASE.-(1) In the case of a person described in paragraph (3), or any other person in a category specified by the Attorney General, who is released from prison or sentenced to probation, notice shall be provided to-

(A) the chief law enforcement officer of each State, tribal, and local jurisdiction in which the person will reside; and

(B) a State, tribal, or local agency responsible for the receipt or maintenance of sex offender registration information in the State, tribal, or local jurisdiction in which the person will reside.

The notice requirements under this subsection do not apply in relation to a person being protected under chapter 224.

(2) Notice provided under paragraph (1) shall include the information described in subsection (b)(2), the place where the person will reside, and the information that the person shall register as required by the Sex Offender Registration and Notification Act. For a person who is released from the custody of the Bureau of Prisons whose expected place of residence following release is known to the Bureau of Prisons, notice shall be provided at least 5 days prior to release by the Director of the Bureau of Prisons. For a person who is sentenced to probation, notice shall be provided promptly by the probation officer responsible for the supervision of the person, or in a manner specified by the Director of the Administrative Office of the United States Courts. Notice concerning a subsequent change of residence by a person described in paragraph (3) during any period of probation, supervised release, or parole shall also be provided to the agencies and officers specified in paragraph (1) by the probation officer responsible for the supervision of the person, or in a manner specified by the Director of the Administrative Office of the United States Courts.

(3) The Director of the Bureau of Prisons shall inform a person who is released from prison and required to register under the Sex Offender Registration and Notification Act of the requirements of that Act as they apply to that person and the same information shall be provided to a person sentenced to probation by the probation officer responsible for supervision of that person.

[(4) Repealed. Pub. L. 109–248, title I, §141(h), July 27, 2006, 120 Stat. 604 .]

(5) The United States and its agencies, officers, and employees shall be immune from liability based on good faith conduct in carrying out this subsection and subsection (b).

(d) APPLICATION OF SECTION.-This section shall not apply to military or naval penal or correctional institutions or the persons confined therein.

(June 25, 1948, ch. 645, 62 Stat. 849 ; Pub. L. 90–371, July 1, 1968, 82 Stat. 280 ; Pub. L. 103–322, title II, §20417, Sept. 13, 1994, 108 Stat. 1834 ; Pub. L. 105–119, title I, §115(a)(8)(A), Nov. 26, 1997, 111 Stat. 2464 ; Pub. L. 109–248, title I, §141(f)–(h), July 27, 2006, 120 Stat. 603 , 604; Pub. L. 110–199, title II, §231(d)(1), Apr. 9, 2008, 122 Stat. 685 ; Pub. L. 111–211, title II, §261(a), July 29, 2010, 124 Stat. 2299 ; Pub. L. 115–391, title VI, §604(b), Dec. 21, 2018, 132 Stat. 5241 .)

## HISTORICAL AND REVISION NOTES

Based on title 18, U.S.C., 1940 ed., §§753a, 753b, (May 14, 1930, ch. 274, §§2, 3, 46 Stat. 325 ).

Because of similarity in the provisions, the first sentence of section 753b of title 18, U.S.C., 1940 ed., was consolidated with section 753a of title 18, U.S.C., 1940 ed., to form this section.

Minor changes were made in phraseology.

The remainder of said section 753b of title 18, U.S.C., 1940 ed., is incorporated in section 4002 of this title.

### EDITORIAL NOTES

### REFERENCES IN TEXT

The Sex Offender Registration and Notification Act, referred to in subsec. (c)(2), (3), is title I of Pub. L. 109–248, July 27, 2006, 120 Stat. 590 , which was classified principally to subchapter I (§16901 et seq.) of chapter 151 of Title 42, The Public Health and Welfare, prior to editorial reclassification as chapter 209 (§20901 et seq.) of Title 34, Crime Control and Law Enforcement. For complete classification of this Act to the Code, see Short Title of 2006 Act note set out under section 10101 of Title 34 and Tables.

### AMENDMENTS

**2018**-Subsec. (a)(D), (E). Pub. L. 115–391, §604(b)(1), redesignated pars. (D) and (E) as (6) and (7), respectively.

Subsec. (a)(6). Pub. L. 115–391, §604(b)(1), (2)(E), redesignated par. (D) as (6) and cls. (i) to (iii) as subpars. (A) to (C), respectively.

Subsec. (a)(6)(i). Pub. L. 115–391, §604(b)(2)(A), struck out "Social Security Cards," before "Social Security benefits" and "and" after "benefits);".

Subsec. (a)(6)(ii). Pub. L. 115–391, §604(b)(2)(C), added cl. (ii). Former cl. (ii) redesignated (iii).

Subsec. (a)(6)(iii). Pub. L. 115–391, §604(b)(2)(B), (D), redesignated cl. (ii) as (iii) and inserted "from a sentence to a term of imprisonment in a Federal prison or if the individual was not sentenced to a term of imprisonment in a Federal prison, prior to release from a sentence to a term of community confinement" after "prior to release".

Subsec. (a)(7). Pub. L. 115–391, §604(b)(1), (3), redesignated par. (E) as (7) and cls. (i) to (vii) as subpars. (A) to (G), respectively.

**2010**—Subsec. (a)(4). Pub. L. 111–211, §261(a)(1), inserted ", tribal," after "State".

Subsec. (b)(1). Pub. L. 111–211, §261(a)(2), substituted "officers of each State, tribal, and local jurisdiction" for "officer of the State and of the local jurisdiction".

Subsec. (c)(1)(A). Pub. L. 111–211, §261(a)(3)(A), substituted "officer of each State, tribal, and local jurisdiction" for "officer of the State and of the local jurisdiction".

Subsec. (c)(1)(B). Pub. L. 111–211, §261(a)(3)(B), inserted ", tribal," after "State" in two places.

**2008**—Subsec. (a)(D), (E). Pub. L. 110–199 added pars. (D) and (E).

**2006**—Subsec. (c)(1). Pub. L. 109–248, §141(g)(1), substituted "paragraph (3), or any other person in a category specified by the Attorney General," for "paragraph (4)" in introductory provisions.

Subsec. (c)(2). Pub. L. 109–248, §141(g)(2), substituted "shall register as required by the Sex Offender Registration and Notification Act" for "shall be subject to a registration requirement as a sex offender" in first sentence and "paragraph (3)" for "paragraph (4)" in fourth sentence.

Subsec. (c)(3). Pub. L. 109–248, §141(f), amended par. (3) generally. Prior to amendment, par. (3) read as follows: "The Director of the Bureau of Prisons shall inform a person described in paragraph (4) who is released from prison that the person shall be subject to a registration requirement as a sex offender in any State in which the person resides, is employed, carries on a vocation, or is a student (as such terms are defined for purposes of section 170101(a)(3) of the Violent Crime Control and Law Enforcement Act of 1994), and the same information shall be provided to a person described in paragraph (4) who is sentenced to probation by the probation officer responsible for supervision of the person or in a manner specified by the Director of the Administrative Office of the United States Courts."

Subsec. (c)(4). Pub. L. 109–248, §141(h), struck out par. (4) which read as follows: "A person is described in this paragraph if the person was convicted of any of the following offenses (including such an offense prosecuted pursuant to section 1152 or 1153):

"(A) An offense under section 1201 involving a minor victim.

"(B) An offense under chapter 109A.

"(C) An offense under chapter 110.

"(D) An offense under chapter 117.

"(E) Any other offense designated by the Attorney General as a sexual offense for purposes of this subsection."

**1997**—Subsec. (a)(5). Pub. L. 105–119, §115(a)(8)(A)(i), substituted "subsections (b) and (c)" for "subsection (b)".

Subsec. (b)(4). Pub. L. 105–119, §115(a)(8)(A)(ii), struck out par. (4) which read as follows: "The notice provided under this section shall be used solely for law enforcement purposes."

Subsecs. (c), (d). Pub. L. 105–119, §115(a)(8)(A)(iv), added subsec. (c) and redesignated former subsec. (c) as (d).

**1994**—Pub. L. 103–322 designated first par. of existing provisions as subsec. (a) and inserted heading, substituted "provide" for "Provide" and "; and" for period at end of par. (4), added par. (5) and subsec. (b), and designated second sentence of existing provisions as subsec. (c) and inserted heading.

**1968**—Pub. L. 90–371 added cl. (4).

### STATUTORY NOTES AND RELATED SUBSIDIARIES

## EFFECTIVE DATE OF 1997 AMENDMENT

Amendment by Pub. L. 105–119 effective 1 year after Nov. 26, 1997, see section 115(c)(1) of Pub. L. 105–119, set out as a note under section 3521 of this title.

## CONSTRUCTION OF 2008 AMENDMENT

For construction of amendments by Pub. L. 110–199 and requirements for grants made under such amendments, see section 60504 of Title 34, Crime Control and Law Enforcement.

## HEALTH AND SAFETY OF PREGNANT WOMEN AND MOTHERS

Pub. L. 117–103, div. W, title X, §1002, Mar. 15, 2022, 136 Stat. 914 , provided that:

"(a) SHORT TITLE.-This section may be cited as the 'Stop Infant Mortality and Recidivism Reduction Act' or the 'SIMARRA Act'.

"(b) ESTABLISHMENT.-Not later than 270 days after the date of enactment of this Act [Mar. 15, 2022], the Director of the Bureau of Prisons (in this section referred to as the 'Director') shall establish a pilot program (in this section referred to as the 'Program') in accordance with this section to permit women incarcerated in Federal prisons and the children born to such women during incarceration to reside together while the inmate serves a term of imprisonment.

"(c) PURPOSES.-The purposes of this section are to-

"(1) prevent infant mortality among infants born to incarcerated mothers and greatly reduce the trauma and stress experienced by pregnant inmates;

"(2) reduce the recidivism rates of federally incarcerated women and mothers, and enhance public safety by improving the effectiveness of the Federal prison system for women as a population with special needs;

"(3) utilize a female offender risk and needs assessment to encourage a more effective and efficient Federal prison system;

"(4) utilize a validated post-sentencing risk and needs assessment system that relies on dynamic factors to provide Federal prison officials with information regarding needs of Federal pregnant offenders and enhance public safety;

"(5) perform regular outcome evaluations of the effectiveness of programs and interventions for federally incarcerated pregnant women and mothers to assure that such programs and interventions are evidence-based and to suggest changes, deletions, and expansions based on the results of such evaluations; and

"(6) assist the Department of Justice to address the underlying cost structure of the Federal prison system and ensure that the Department can continue to run parenting programming safely and securely without compromising the scope or quality of the Department's critical health, safety and law enforcement missions.

"(d) DUTIES OF THE DIRECTOR OF BUREAU OF PRISONS.-

"(1) IN GENERAL.-The Director shall carry out this section in consultation with-

"(A) the Director of the Administrative Office of the United States Courts;

"(B) the Director of the Office of Probation and Pretrial Services; and

"(C) the Director of the National Institute of Justice.

"(2) DUTIES.-The Director shall, in accordance with paragraph (3), and in addition to the mandates under section 3631 of title 18, United States Code-

"(A) evaluate the female offender risk and needs assessment for its ability to address the particular health and sensitivities of federally incarcerated pregnant women and mothers in accordance with this subsection;

"(B) develop recommendations regarding recidivism reduction programs and productive activities in accordance with subsection (c);

"(C) conduct ongoing research and data analysis on-

"(i) the best practices relating to the use of offender risk and needs assessment tools for female offenders with a particular emphasis on how those tools address the health and sensitivities of federally incarcerated pregnant women and mothers;

"(ii) potential improvements to risk and needs assessment tools for female offenders to address the health and sensitivities of federally incarcerated pregnant women and mothers; and

"(iii) which recidivism reduction programs are the most effective-

"(I) for federally incarcerated pregnant women and mothers classified at different recidivism risk levels; and

"(II) for addressing the specific needs of federally incarcerated pregnant women and mothers;

"(D) on a biennial basis, review any findings related to evaluations conducted under subparagraph (A) and the recommendations developed under subparagraph (B), using the research conducted under subparagraph (C), to determine whether any revisions or updates should be made to female offender risk and needs assessment systems, and if so, make such revisions or updates;

"(E) hold periodic meetings with the individuals listed in paragraph (1) at intervals to be determined by the Director;

"(F) develop tools to communicate parenting program availability and eligibility criteria to each employee of the Bureau of Prisons and each pregnant inmate to ensure that each pregnant inmate in the custody of a Bureau of Prisons facility understands the resources available to such inmate; and

"(G) report to Congress in accordance with subsection (h).

"(3) METHODS.-In carrying out the duties under paragraph (2), the Director shall-

"(A) consult relevant stakeholders; and

"(B) make decisions using data that is based on available statistical and empirical evidence.

"(e) ELIGIBILITY.-An inmate may apply to participate in the Program if the inmate-

"(1) is pregnant at the beginning of or during the term of imprisonment; and

"(2) is in the custody or control of the Bureau of Prisons.

"(f) PROGRAM TERMS.-

"(1) TERM OF PARTICIPATION.-To correspond with the purposes and goals of the Program to promote bonding during the critical stages of child development, an eligible inmate selected for the Program may participate in the Program, subject to subsection (g), until the earliest of-

"(A) the date that the inmate's term of imprisonment terminates; or

"(B) the date the infant fails to meet any medical criteria established by the Director.

"(2) INMATE REQUIREMENTS.-For the duration of an inmate's participation in the Program, the inmate shall agree to-

"(A) take substantive steps towards acting in the role of a parent or guardian to any child of that inmate;

"(B) participate in any recommended educational or counseling opportunities, including topics such as child development, parenting skills, domestic violence, vocational training, or substance abuse, as appropriate;

"(C) abide by any court decision regarding the legal or physical custody of the child; and

"(D) specify a person who has agreed to take at least temporary custody of the child if the inmate's participation in the Program terminates before the inmate's release.

"(g) CONTINUITY OF CARE.-The Director shall take appropriate actions to prevent detachment or disruption of either an inmate's or infant's health and bonding-based well-being due to termination of the Program.

"(h) REPORTING.-

"(1) IN GENERAL.-Not later than 6 months after the date of enactment of this Act [Mar. 15, 2022], and once each year thereafter for 5 years, the Director shall submit a progress report to the Congress with regards to implementing the Program.

"(2) FINAL REPORT.-Not later than 6 months after the termination of the Program, the Director shall issue a final report to the Congress that contains a detailed statement of the Director's findings and conclusions, including recommendations for legislation, administrative actions, and regulations the Director considers appropriate."

[For definitions of terms used in section 1002 of div. W of Pub. L. 117–103, set out above, see section 12291 of Title 34, Crime Control and Law Enforcement, as made applicable by section 2(b) of div. W of Pub. L. 117–103, which is set out as a note under section 12291 of Title 34.]

## DE-ESCALATION TRAINING

Pub. L. 115–391, title VI, §606, Dec. 21, 2018, 132 Stat. 5244 , provided that: "Beginning not later than 1 year after the date of enactment of this Act [Dec. 21, 2018], the Director of the Bureau of Prisons (including incorporate into training programs provided to officers and employees of the Bureau of Prisons (including officers and employees of an organization with which the Bureau of Prisons has a contract to provide services relating to imprisonment) specialized and comprehensive training in procedures to-

"(1) de-escalate encounters between a law enforcement officer or an officer or employee of the Bureau of Prisons, and a civilian or a prisoner (as such term is defined in section 3635 of title 18, United States Code, as added by section 101(a) of this Act); and

"(2) identify and appropriately respond to incidents that involve the unique needs of individuals who have a mental illness or cognitive deficit."

## PILOT PROGRAMS

Pub. L. 115–391, title VI, §608, Dec. 21, 2018, 132 Stat. 5245 , provided that:

"(a) IN GENERAL.-The Bureau of Prisons shall establish each of the following pilot programs for 5 years, in at least 20 facilities:

"(1) MENTORSHIP FOR YOUTH.-A program to pair youth with volunteers from faith-based or community organizations, which may include formerly incarcerated offenders, that have relevant experience or expertise in mentoring, and a willingness to serve as a mentor in such a capacity.

"(2) SERVICE TO ABANDONED, RESCUED, OR OTHERWISE VULNERABLE ANIMALS.-A program to equip prisoners with the skills to provide training and therapy to animals seized by Federal law enforcement under asset forfeiture authority and to organizations that provide shelter and similar services to abandoned, rescued, or otherwise vulnerable animals.

"(b) REPORTING REQUIREMENT.-Not later than 1 year after the conclusion of the pilot programs, the Attorney General shall report to Congress on the results of the pilot programs under this section. Such report shall include cost savings, numbers of participants, and information about recidivism rates among participants.

"(c) DEFINITION.-In this title, the term 'youth' means a prisoner (as such term is defined in section 3635 of title 18, United States Code, as added by section 101(a) of this Act) who was 21 years of age or younger at

the time of the commission or alleged commission of the criminal offense for which the individual is being prosecuted or serving a term of imprisonment, as the case may be."

## HEALTHCARE PRODUCTS

Pub. L. 115–391, title VI, §611, Dec. 21, 2018, 132 Stat. 5247 , provided that:

"(a) AVAILABILITY.-The Director of the Bureau of Prisons shall make the healthcare products described in subsection (c) available to prisoners for free, in a quantity that is appropriate to the healthcare needs of each prisoner.

"(b) QUALITY PRODUCTS.-The Director shall ensure that the healthcare products provided under this section conform with applicable industry standards.

"(c) PRODUCTS.-The healthcare products described in this subsection are tampons and sanitary napkins."

## AMENITIES OR PERSONAL COMFORTS

Pub. L. 107–77, title VI, §611, Nov. 28, 2001, 115 Stat. 800 , provided that: "Hereafter, none of the funds appropriated or otherwise made available to the Bureau of Prisons shall be used to provide the following amenities or personal comforts in the Federal prison system-

"(1) in-cell television viewing except for prisoners who are segregated from the general prison population for their own safety;

"(2) the viewing of R, X, and NC–17 rated movies, through whatever medium presented;

"(3) any instruction (live or through broadcasts) or training equipment for boxing, wrestling, judo, karate, or other martial art, or any bodybuilding or weightlifting equipment of any sort;

"(4) possession of in-cell coffee pots, hot plates or heating elements; or

"(5) the use or possession of any electric or electronic musical instrument."

Similar provisions were contained in the following appropriation acts:

Pub. L. 106–553, §1(a)(2) [title VI, §611], Dec. 21, 2000, 114 Stat. 2762 , 2762A-105.

Pub. L. 106–113, div. B, §1000(a)(1) [title VI, §612], Nov. 29, 1999, 113 Stat. 1535 , 1501A-54.

Pub. L. 105–277, div. A, §101(b) [title VI, §611], Oct. 21, 1998, 112 Stat. 2681–50 , 2681-113.

Pub. L. 105–119, title VI, §611, Nov. 26, 1997, 111 Stat. 2517 .

Pub. L. 104–208, div. A, title I, §101(a) [title VI, §611], Sept. 30, 1996, 110 Stat. 3009 , 3009-66.

Pub. L. 104–134, title I, §101[(a)] [title VI, §611], Apr. 26, 1996, 110 Stat. 1321 , 1321-64; renumbered title I, Pub. L. 104–140, §1(a), May 2, 1996, 110 Stat. 1327 .

## SEXUALLY EXPLICIT COMMERCIALLY PUBLISHED MATERIAL

Pub. L. 107–77, title VI, §614, Nov. 28, 2001, 115 Stat. 801 , provided that: "Hereafter, none of the funds appropriated or otherwise made available to the Federal Bureau of Prisons may be used to distribute or make available any commercially published information or material to a prisoner when it is made known to the Federal official having authority to obligate or expend such funds that such information or material is sexually explicit or features nudity."

Similar provisions were contained in the following appropriation acts:

Pub. L. 106–553, §1(a)(2) [title VI, §614], Dec. 21, 2000, 114 Stat. 2762 , 2762A-106.

Pub. L. 106–113, div. B, §1000(a)(1) [title VI, §615], Nov. 29, 1999, 113 Stat. 1535 , 1501A-54.

Pub. L. 105–277, div. A, §101(b) [title VI, §614], Oct. 21, 1998, 112 Stat. 2681–50 , 2681-113.

Pub. L. 105–119, title VI, §614, Nov. 26, 1997, 111 Stat. 2518 .

Pub. L. 104–208, div. A, title I, §101(a) [title VI, §614], Sept. 30, 1996, 110 Stat. 3009 , 3009-66.

## REIMBURSEMENT FOR CERTAIN EXPENSES OUTSIDE OF FEDERAL INSTITUTIONS

Pub. L. 106–553, §1(a)(2) [title I], Dec. 21, 2000, 114 Stat. 2762 , 2762A-55, provided in part: "That hereafter amounts appropriated for Federal Prisoner Detention shall be available to reimburse the Federal Bureau of Prisons for salaries and expenses of transporting, guarding and providing medical care outside of Federal penal and correctional institutions to prisoners awaiting trial or sentencing."

## GUIDELINES FOR STATES REGARDING INFECTIOUS DISEASES IN CORRECTIONAL INSTITUTIONS

Pub. L. 105–370, §2(c), Nov. 12, 1998, 112 Stat. 3375 , which required the Attorney General to provide to States proposed guidelines related to infectious diseases in correctional institutions, was editorially reclassified as a note under section 60101 of Title 34, Crime Control and Law Enforcement.

## PRISONER ACCESS

Pub. L. 105–314, title VIII, §801, Oct. 30, 1998, 112 Stat. 2990 , provided that: "Notwithstanding any other provision of law, no agency, officer, or employee of the United States shall implement, or provide any financial assistance to, any Federal program or Federal activity in which a Federal prisoner is allowed access to any electronic communication service or remote computing service without the supervision of an official of the Federal Government."

### APPLICATION TO PRISONERS TO WHICH PRIOR LAW APPLIES

Pub. L. 103–322, title II, §20404, Sept. 13, 1994, 108 Stat. 1825 , provided that: "In the case of a prisoner convicted of an offense committed prior to November 1, 1987, the reference to supervised release in section 4042(b) of title 18, United States Code, shall be deemed to be a reference to probation or parole."

### COST SAVINGS MEASURES

Pub. L. 101–647, title XXIX, §2907, Nov. 29, 1990, 104 Stat. 4915 , provided that: "The Director of the Federal Bureau of Prisons (referred to as the 'Director') shall, to the extent practicable, take such measures as are appropriate to cut costs of construction. Such measures may include reducing expenditures for amenities including, for example, color television or pool tables."

### ADMINISTRATION OF CONFINEMENT FACILITIES LOCATED ON MILITARY INSTALLATIONS BY BUREAU OF PRISONS

Pub. L. 100–690, title VII, §7302, Nov. 18, 1988, 102 Stat. 4463 , provided that: "In conjunction with the Department of Defense and the Commission on Alternative Utilization of Military Facilities as established in the National Defense Authorization Act of Fiscal Year 1989 [see section 2819 of Pub. L. 100–456, 104 Stat. 1820 , formerly set out as a note under section 2391 of Title 10, Armed Forces], the Bureau of Prisons shall be responsible for-

"(1) administering Bureau of Prisons confinement facilities for civilian nonviolent prisoners located on military installations in cooperation with the Secretary of Defense, with an emphasis on placing women inmates in such facilities, or in similar minimum security confinement facilities not located on military installations, so that the percentage of eligible women equals the percentage of eligible men housed in such or similar minimum security confinement facilities (i.e., prison camps);

"(2) establishing and regulating drug treatment programs for inmates held in such facilities in coordination and cooperation with the National Institute on Drug Abuse; and

"(3) establishing and managing work programs in accordance with guidelines under the Bureau of Prisons for persons held in such facilities and in cooperation with the installation commander."

#### EXECUTIVE DOCUMENTS

### LIMITING THE USE OF RESTRICTIVE HOUSING BY THE FEDERAL GOVERNMENT

Memorandum of President of the United States, Mar. 1, 2016, 81 F.R. 11997, provided:

Memorandum for the Heads of Executive Departments and Agencies

A growing body of evidence suggests that the overuse of solitary confinement and other forms of restrictive housing in U.S. correctional systems undermines public safety and is contrary to our Nation's values.

In July 2015, as part of my Administration's ongoing efforts to pursue reforms that make the criminal justice system more fair and effective, I directed the Attorney General to undertake a comprehensive review of the overuse of solitary confinement across American prisons. Since that time, senior officials at the Department of Justice (DOJ) have met regularly to study the issue and develop strategies for reducing the use of this practice nationwide.

Those efforts gave rise to a final report transmitted to me on January 25, 2016 (DOJ Report and Recommendations Concerning the Use of Restrictive Housing) (the "DOJ Report"), that sets forth specific policy recommendations for DOJ with respect to the Federal Bureau of Prisons and other DOJ entities as well as more general guiding principles for all correctional systems.

As the DOJ Report makes clear, although occasions exist when correctional officials have no choice but to segregate inmates from the general population, this action has the potential to cause serious, long-lasting harm. The DOJ Report accordingly emphasizes the responsibility of Government to ensure that this practice is limited, applied with constraints, and used only as a measure of last resort.

Given the urgency and importance of this issue, it is critical that DOJ accelerate efforts to reduce the number of Federal inmates and detainees held in restrictive housing and that Federal correctional and detention systems are models for facilities across the United States. Therefore, by the authority vested in me as President by the Constitution and the laws of the United States of America, and to address the

overuse of solitary confinement in correctional and detention systems throughout the United States, I hereby direct as follows:

SECTION 1. *Implementation of the DOJ Report.* (a) DOJ shall promptly undertake to revise its regulations and policies, consistent with the direction of the Attorney General, to implement the policy recommendations in the DOJ Report concerning the use of restrictive housing. DOJ shall provide me with an update on the status of these efforts not later than 180 days after the date of this memorandum.

(b) Other executive departments and agencies (agencies) that impose restrictive housing shall review the DOJ Report to determine whether corresponding changes at their facilities should be made in light of the policy recommendations and guiding principles in the DOJ Report.

These other agencies shall report back to me not later than 180 days after the date of this memorandum on how they plan to address their use of restrictive housing.

SEC. 2. *General Provisions.* (a) This memorandum shall be implemented consistent with applicable law and subject to the availability of appropriations.

(b) Nothing in this memorandum shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department, agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(c) This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

SEC. 3. *Publication.* The Attorney General is authorized and directed to publish this memorandum in the Federal Register.

BARACK OBAMA.

42 USC 14071 to 14073: Repealed. Pub. L. 109-248, title I, §129(a), July 27, 2006, 120 Stat. 600

Text contains those laws in effect on November 2, 2022

From Title 42-THE PUBLIC HEALTH AND WELFARE
    CHAPTER 136-VIOLENT CRIME CONTROL AND LAW ENFORCEMENT
    SUBCHAPTER VI-CRIMES AGAINST CHILDREN

Jump To:
    **Miscellaneous**
    **Short Title**

## §§14071 to 14073. Repealed. Pub. L. 109–248, title I, §129(a), July 27, 2006, 120 Stat. 600

Section 14071, Pub. L. 103–322, title XVII, §170101, Sept. 13, 1994, 108 Stat. 2038 ; Pub. L. 104–145, §2, May 17, 1996, 110 Stat. 1345 ; Pub. L. 104–236, §§3–7, Oct. 3, 1996, 110 Stat. 3096 , 3097; Pub. L. 105–119, title I, §115(a)(1)–(5), Nov. 26, 1997, 111 Stat. 2461–2463 ; Pub. L. 105–314, title VI, §607(a), Oct. 30, 1998, 112 Stat. 2985 ; Pub. L. 106–386, div. B, title VI, §1601(b)(1), Oct. 28, 2000, 114 Stat. 1537 ; Pub. L. 108–21, title VI, §§604(a), 605(a), 606, Apr. 30, 2003, 117 Stat. 688 ; Pub. L. 109–162, title XI, §1153(b), Jan. 5, 2006, 119 Stat. 3113 , required the Attorney General to establish guidelines for State programs that required registration by persons convicted of a criminal offense against a minor or a sexually violent offense and by sexually violent predators.

Section 14072, Pub. L. 103–322, title XVII, §170102, as added Pub. L. 104–236, §2(a), Oct. 3, 1996, 110 Stat. 3093 ; amended Pub. L. 105–119, title I, §115(a)(6), Nov. 26, 1997, 111 Stat. 2463 ; Pub. L. 105–277, div. A, §101(b) [title I, §123], Oct. 21, 1998, 112 Stat. 2681–50 , 2681-72, required the Attorney General to establish a national database at the FBI to track sexual offenders.

Section 14073, Pub. L. 104–236, §8, Oct. 3, 1996, 110 Stat. 3097 , immunized certain agencies and officials from liability for good faith conduct.

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF REPEAL

Pub. L. 109–248, title I, §129(b), July 27, 2006, 120 Stat. 601 , provided that: "Notwithstanding any other provision of this Act [see Tables for classification], this section [repealing sections 14071 to 14073 of this title] shall take effect on the date of the deadline determined in accordance with section 124(a) [34 U.S.C. 20926(a)] [3 years after July 27, 2006]."

### SHORT TITLE

Subtitle A of title XVII of Pub. L. 103–322, which was classified generally to this subchapter prior to repeal, was popularly known as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act.

# *WHEN THE LAW CHANGED*
# U.S.C. PUBLIC LAW 109-248 ADAM WALSH ACT OF 2006 TITLE I

**34 USC 20926: Period for implementation by jurisdictions**
Text contains those laws in effect on November 2, 2022

From Title 34-CRIME CONTROL AND LAW ENFORCEMENT
    Subtitle II-Protection of Children and Other Persons
    CHAPTER 209-CHILD PROTECTION AND SAFETY
    SUBCHAPTER I-SEX OFFENDER REGISTRATION AND NOTIFICATION
    Part A-Sex Offender Registration and Notification
Jump To:
    **Source Credit**
    **Miscellaneous**
    **References In Text**
    **Codification**

## §20926. Period for implementation by jurisdictions

**(a) Deadline**

Each jurisdiction shall implement this subchapter before the later of-
    (1) 3 years after July 27, 2006; and
    (2) 1 year after the date on which the software described in section 20925 of this title is available.

**(b) Extensions**

The Attorney General may authorize up to two 1-year extensions of the deadline.

( Pub. L. 109–248, title I, §124, July 27, 2006, 120 Stat. 598 .)

### EDITORIAL NOTES

### REFERENCES IN TEXT

This subchapter, referred to in subsec. (a), was in the original "this title", meaning title I of Pub. L. 109–248, July 27, 2006, 120 Stat. 590 , known as the Sex Offender Registration and Notification Act. For complete classification of title I to the Code, see Short Title of 2006 Act note set out under section 10101 of this title and Tables.

The software described in section 20925 of this title, referred to in subsec. (a)(2), became available on July 25, 2008. See Office of Justice Progs., U.S. Dep't of Justice, Annual Report to Congress 26 (Fiscal Year 2008).

### CODIFICATION

Section was formerly classified to section 16924 of Title 42, The Public Health and Welfare, prior to editorial reclassification and renumbering as this section.

# CONGRESS.GOV

## H.R.4472 - Adam Walsh Child Protection and Safety Act of 2006

109th Congress (2005-2006)

**Sponsor:** Rep. Sensenbrenner, F. James, Jr. [R-WI-5] (Introduced 12/08/2005)
**Committees:** House - Judiciary; Ways and Means
**Latest Action:** 07/27/2006 Became Public Law No: 109-248. (All Actions)
**Tracker:** ❶

| Introduced | Passed House | Passed Senate | Resolving Differences | To President | Became Law |

---

**Summary(4)**   Text(6)   Actions(26)   Titles(22)   Amendments(2)   Cosponsors(37)   Committees(2)   Related Bills(4)

There are 4 summaries for H.R.4472.   | Public Law (07/27/2006) ▼ |

Bill summaries are authored by CRS.

**Shown Here:**
**Public Law No: 109-248 (07/27/2006)**

**(This measure has not been amended since it was passed by the Senate on July 20, 2006. The summary of that version is repeated here.)**

Adam Walsh Child Protection and Safety Act of 2006 - Recognizes the commitment of John and Reve Walsh to the protection of children from child predators on the 25th anniversary of the abduction and murder of their son, Adam.

**Title I: Sex Offender Registration and Notification Act -** Sex Offender Registration and Notification Act - (Sec. 102) Declares as the purpose of this Act the establishment of a comprehensive national system for the registration of sex offenders and offenders against children.

(Sec. 103) Establishes the Jacob Wetterling, Megan Nicole Kanka, and Pam Lychner Sex Offender Registration and Notification Program.

**Subtitle A: Sex Offender Registration and Notification -** (Sec. 111) Establishes a three-tier classification system for sex offenders based upon specified criteria, including the seriousness of the underlying offense and the age of any child involved.

Defines "sex offense" (to be known as the Amie Zyla Expansion of Sex Offense Definition) to mean: (1) a criminal offense that has an element involving a sexual act or contact or that is a specified offense against a minor; (2) a federal offense involving sex trafficking, sexual abuse, sexual exploitation or abuse of children, or domestic assault; (3) a specified military offense; or (4) an attempt or conspiracy to commit such an offense. Excludes from such definition foreign convictions lacking due process safeguards and certain offenses involving consensual sexual conduct.

Defines "specified offense against a minor" to include offenses involving kidnapping, false imprisonment, sexual solicitation, video voyeurism, and possession, production, or distribution of child pornography.

Defines "jurisdiction" to include a state, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, the U.S. Virgin Islands, and federally recognized Indian tribes.

(Sec. 112) Requires each jurisdiction to maintain a jurisdiction-wide sex offender registry.

(Sec. 113) Requires a sex offender to: (1) register in each jurisdiction where such offender resides, is an employee, and is a student; (2) keep such registration current; and (3) for initial registrations, register in the jurisdiction where convicted if different than jurisdiction of residence. Requires jurisdictions (other than federally recognized Indian tribes) to impose a maximum criminal penalty greater than one year for sex offenders who fail to comply with registration requirements.

(Sec. 114) Sets forth the information required in a sex offender's registration, including all addresses and places of employment and license plate numbers of all owned vehicles.

Requires jurisdictions to include in a sex offender registry: (1) a physical description, current photograph, criminal history, fingerprints, palm prints, and a DNA sample of the sex offender; (2) the offender's criminal offense; and (3) a photocopy of the offender's driver's license or government-issued identification card.

(Sec. 115) Specifies the duration of registration periods for sex offenders based on tier classifications.

(Sec. 116) Requires sex offenders to appear in person periodically to verify information in a sex offender registry.

(Sec. 117) Requires the appropriate official of a jurisdiction to notify sex offenders of their duty to register prior to release from custody or immediately after sentencing for a sex offense.

(Sec. 118) Requires jurisdictions to provide public access to sex offender information through the Internet. Exempts from such disclosure the identity of any victim of a sex offense, the social security number of the sex offender, and any reference to arrests of the sex offender not resulting in conviction.

(Sec. 119) Establishes the National Sex Offender Registry. Directs the Attorney General to maintain such registry at the Federal Bureau of Investigation (FBI) and to ensure that updated information about sex offenders is immediately transmitted to all relevant jurisdictions. Requires such updated information about sex offenders is immediately transmitted to the Attorney General. Requires such

(Sec. 120) Establishes the Dru Sjodin National Sex Offender Public Website to be maintained by the Attorney General. Requires such Website to include relevant information about sex offenders in each jurisdiction.

(Sec. 121) Establishes the Megan Nicole Kanka and Alexandra Nicole Zapp Community Notification Program to provide for notification to the Attorney General, relevant jurisdictions, law enforcement agencies, social service entities, volunteer organizations, and other entities immediately after a sex offender registers or updates a registration.

(Sec. 122) Requires appropriate officials of a jurisdiction to notify the Attorney General and appropriate law enforcement agencies of a failure of a sex offender to register and to note such failure in the jurisdiction's registry.

(Sec. 123) Directs the Attorney General to develop and support software to enable jurisdictions to establish and operate uniform sex offender registries and Internet sites. Imposes a two-year deadline for developing such software.

(Sec. 124) Requires jurisdictions to implement the requirements of this title before the later of three years after enactment of this Act and one year after the software developed by the Attorney General for sex offender registries becomes available. Authorizes the Attorney General to extend such deadlines.

(Sec. 125) Reduces by 10% funding under the Omnibus Crime Control and Safe Street Act of 1968 (OCCSSA) for jurisdictions which fail to implement the requirements of this title.

(Sec. 126) Directs the Attorney General to establish and implement a Sex Offender Management Assistance (SOMA) program to award grants to jurisdictions to offset the costs of implementing this title. Authorizes bonus payments to jurisdictions that implement the requirements of this Act within two years of enactment. Authorizes appropriations for SOMA for FY2007-FY2009.

(Sec. 127) Permits a federally recognized Indian tribe to elect to carry out the provisions of this subtitle or to delegate its functions to another jurisdiction.

(Sec. 128) Directs the Attorney General to establish and maintain a system for notifying jurisdictions of sex offenders entering the United States who are required to register.

(Sec. 129) Repeals certain provisions of the Violent Crime Control and Law Enforcement Act of 1994 and the Pam Lychner Sexual Offender Tracking and Identification Act of 1990 relating to sex offender programs.

(Sec. 130) Amends the Victims of Child Abuse Act of 1990 to grant civil and criminal immunity to personnel of the National Center for Missing and Exploited Children arising out of the performance of CyberTipline responsibilities and functions, except for certain intentional, reckless, or malicious conduct.

(Sec. 131) Grants immunity to the federal government and jurisdictions for good faith conduct in implementing the requirements of this title.

**Subtitle B: Improving Federal Criminal Law Enforcement to Ensure Sex Offender Compliance with Registration and Notification Requirements and Protection of Children From Violent Predators -** (Sec. 141) Amends the federal criminal code to impose a fine and/or prison term of up to 10 years upon convicted sex offenders for failure to register or update a registration as required by the Sex Offender Registration and Notification Act. Allows affirmative defenses to a prosecution for such offense, including an allegation that uncontrollable circumstances prevented registration. Increases criminal penalties for sex offenders who do not register and commit a crime of violence.

Directs the U.S. Sentencing Commission to consider certain criteria in promulgating sentencing guidelines for the crime of failure to register.

Imposes increased criminal penalties for making false statements in a sex offense registration or in connection with certain sex crimes against children.

Modifies probation and supervised release provisions for sex offenders required to register under the Sex Offender Registration and Notification Act.

Requires the Director of the Bureau of Prisons to inform persons released from prison of the duty to register as a sex offender.

(Sec. 142) Requires the Attorney General to use federal law enforcement resources, including the U.S. Marshals Service, to assist jurisdictions in locating and apprehending sex offenders who fail to register. Authorizes appropriations.

(Sec. 143) Directs the Attorney General to create and maintain a Project Safe Childhood program. Designates funding under such program for: (1) integrated federal, state, and local efforts to investigate and prosecute child exploitation cases; (2) major case coordination by the Department of Justice; (3) increased federal involvement in child pornography and enticement cases; (4) law enforcement training; (5) community awareness and educational programs; (6) the addition of not less than eight Assistant U.S. Attorneys for the prosecution of cases under the program; (7) the addition of not less than 10 new Internet Crimes Against Children task forces within the Internet Crimes

Against Children (ICAC) Task Force Program; and (8) the development and enhancement by the Federal Bureau of Investigation (FBI) of the Innocent Images task forces. Authorizes appropriations.

(Sec. 144) Directs the Attorney General to provide assistance to jurisdictions in identifying and locating a sex offender relocated due to a major disaster.

(Sec. 145) Directs the Attorney General to: (1) expand training and technology efforts to respond to the threat posed by sex offenders who use the Internet and technology to solicit or exploit children; and (2) report to Congress by July 1, 2007, on such efforts. Authorizes appropriations.

(Sec. 146) Establishes in the Department of Justice an Office of Sex Offender Sentencing, Monitoring, Apprehending, and Tracking to be headed by a presidentially-appointed Director. Authorizes the Office to: (1) administer the standards for the sex offender registration and notification program; (2) administer grant programs relating to sex offender registration and notification; and (3) cooperate with and provide technical assistance to jurisdictions and other public and private entities involved in sex offender registration or notification activities.

**Subtitle C: Access to Information and Resources Needed to Ensure that Children are not Attacked or Abused - (Sec. 151)** Requires the Attorney General to ensure access to the national crime information databases by: (1) the National Center for Missing and Exploited Children; and (2) governmental social service agencies with child protection responsibilities.

(Sec. 152) Amends title IV (Grants to States for Aid and Services to Needy Families with Children and for Child-Welfare Services) of the Social Security Act to require fingerprint-based checks of the national crime information databases and checks of any state child abuse and neglect registry for prospective foster or adoptive parent placements. Eliminates as of October 1, 2008, the ability of states to opt-out of such requirements.

(Sec. 153) Schools Safely Acquiring Faculty Excellence Act of 2006 - Requires the Attorney General, upon the request of a state, to conduct fingerprint-based checks of the national crime information databases to assist: (1) child welfare agencies in checking backgrounds of individuals under consideration as prospective foster or adoptive parents or in investigating child abuse or neglect incidents; or (2) private or public schools or educational agencies in checking backgrounds of prospective employees. Restricts the disclosure of such fingerprint information and imposes criminal penalties for unauthorized release of such information.

(Sec. 154) Amends the Crime Control Act of 1990 to prohibit a state law enforcement agency from removing a missing person from its law enforcement data system or the National Crime Information Center computer database based solely on the age of such person.

(Sec. 155) Amends the DNA Analysis Backlog Elimination Act of 2000 to authorize the Attorney General to collect DNA samples from individuals who are facing charges or are convicted, in addition to individuals who are arrested (current law).

**Title II: Federal Criminal Law Enhancements Needed to Protect Children from Sexual Attacks and Other Violent Crimes - (Sec. 201)** Amends the Controlled Substances Act to prohibit the distribution of date rape drugs using the Internet. Authorizes the Attorney General to designate such drugs.

(Sec. 202) Imposes mandatory minimum terms of imprisonment for violent crimes against children, including murder, kidnapping, and violence resulting in serious bodily injury using a dangerous weapon.

(Sec. 203) Increases mandatory minimum terms of imprisonment for: (1) coercion and enticement of children to engage in prostitution; (2) sexual abuse; (3) aggravated sexual abuse of children; (4) sex trafficking of children.

Increases criminal penalties for: (1) sex crimes against children resulting in death; (2) distribution of materials involving the sexual exploitation of children or child pornography; (3) using misleading Internet domain names to direct children to harmful material; (4) sexual abuse of wards; and (5) failure to report child abuse.

(Sec. 210) Requires sex offenders to submit to a search of their person or property as a condition of probation or supervised release.

(Sec. 211) Eliminates any statute of limitation for the prosecution of felony sex offenses involving a minor.

(Sec. 212) Extends certain rights to crime victims in federal habeas corpus proceedings, including the right not be excluded from public court proceedings, the right to be reasonably heard, the right to proceedings free from unreasonable delay, and the right to be treated with fairness and respect.

(Sec. 213) Modifies the definition of kidnapping to eliminate the requirement that the victim was alive when the victim's transportation began.

(Sec. 214) Directs the U.S. Judicial Conference to study the necessity and desirability of amending the Federal Rules of Evidence to provide that the marital communication and adverse spouse privilege be made inapplicable in any federal criminal proceeding against a spouse who is charged with a crime against a child of, or under the custody or control of, either spouse.

(Sec. 215) Includes the crime of felony child abuse or neglect as a crime punishable within Indian country.

(Sec. 216) Amends the federal criminal code to impose certain restrictions on the granting of bail to individuals charged with certain crimes against minors.

**Title III: Civil Commitment of Dangerous Sex Offenders - (Sec. 301)** Directs the Attorney General to make grants to jurisdictions for effective civil commitment programs for sexually dangerous persons. Prohibits use of grant money for transitional housing for sexually dangerous persons in locations where minors or other vulnerable individuals are likely to come into contact with such persons.

Requires the Attorney General to report to the Judiciary Committees of Congress by January 31 of each year, beginning in 2008, on the progress of jurisdictions in implementing civil commitment programs for sexually dangerous persons and on the rate of sexually violent offenses for each jurisdiction.

(Sec. 302) Sets forth procedures for the civil commitment of sexually dangerous persons.

**Title IV: Immigration Law Reforms to Prevent Sex Offenders from Abusing Children** - Amends the Immigration and Nationality Act to: (1) make failure to register as a sex offender a deportable offense; (2) prohibit convicted child sex offenders from obtaining approval of certain family-based visas.

**Title V: Child Pornography Prevention** - (Sec. 502) Revises recordkeeping requirements for producers of actual sexually explicit conduct to cover digital images or computer-manipulated images of actual human beings. Makes it unlawful for any producer of sexually explicit materials to refuse inspection of its records.

(Sec. 503) Imposes new recordkeeping requirements (and penalties for noncompliance) on individuals who produce simulated sexually explicit materials and distribute such materials in interstate commerce. Requires the Attorney General to report to Congress annually on the enforcement of recordkeeping requirements for producers of actual and simulated sexually explicit materials.

(Sec. 504) Prohibits the reproduction of child pornography materials by a defendant in a criminal proceeding. Places such materials in the care, custody, and control of the government or the court. Requires that such materials be reasonably available to a defendant and the defendant's attorney or expert witness for inspection, viewing, and examination.

(Sec. 505) Revises and expands provisions authorizing civil and criminal asset forfeiture in child sexual exploitation and obscenity cases.

(Sec. 506) Amends the federal criminal code to prohibit the production of obscene materials for sale or distribution in interstate commerce (current law prohibits the transportation, distribution, and sale of such materials).

(Sec. 507) Authorizes reasonable compensation and payment of expenses for a guardian ad litem to represent children who are victims of, or witnesses to, sexual abuse or exploitation.

**Title VI: Grants, Studies, and Programs for Children and Community Safety - Subtitle A: Mentoring Matches for Youth Act -** Mentoring Matches for Youth Act of 2006 - (Sec. 603) Authorizes the Administrator of the Office of Juvenile Justice and Delinquency to make grants in FY2007-FY2012 to Big Brothers Big Sisters of America to expand mentoring programs for at-risk youth. Requires Big Brothers Big Sisters to make biannual reports to the Administrator on such mentoring programs. Authorizes appropriations.

**Subtitle B: National Police Athletic League Youth Enrichment Act** - National Police Athletic League Youth Enrichment Reauthorization Act of 2006 - (Sec. 614) - Reauthorizes grant authority and appropriations through FY2010 for the National Police Athletic League Youth Enrichment program. Requires funds authorized for police athletic league programs to be used for character development and leadership training.

**Subtitle C: Grants, Studies, and Other Provisions** - (Sec. 621) Authorizes the Attorney General to award grants (referred to as Jessica Lunsford and Sarah Lunde Grants) for three years to states, local governments, and Indian tribal governments to outfit sex offenders with electric monitoring units. Requires the Attorney General to: (1) fund different approaches to monitoring to allow an assessment of the effectiveness of the program; and (2) report to Congress on the program by September 1, 2010.

(Sec. 622) Amends the federal criminal code to direct the Bureau of Prisons to provide sex offenders with sex offender management and residential sex offender treatment programs. Authorizes appropriations.

(Sec. 623) Amends the OCCSSA to authorize the Attorney General to make grants to assist governments and private entities in enforcing sex offender registration requirements and in the treatment of juvenile sex offenders.

(Sec. 624) Directs the Attorney General to make grants to help prosecute cases cleared through use of DNA backlog clearance funds.

(Sec. 625) Authorizes the Bureau of Justice Assistance to make grants to law enforcement agencies to combat sexual abuse of children. Directs the Attorney General to give priority to law enforcement agencies making a showing of need.

(Sec. 626) Amends the OCCSSA to authorize the Attorney General to make grants to private nonprofit entities to promote crime prevention through public outreach and media campaigns.

(Sec. 627) Directs the Attorney General to establish and implement a grant program for the voluntary fingerprinting of children. Limits the release of child fingerprint information to a parent or guardian of the child. Authorizes appropriations.

(Sec. 628) Directs the Administrator of the Office of Juvenile Justice and Delinquency Prevention to issue rules, coordinate programs, and provide adequate staffing to implement the annual grant program for the Rape, Abuse & Incest National Network (RAINN).

(Sec. 629) Authorizes the Attorney General, in consultation with the National Center for Missing and Exploited Children, to carry out a public awareness compaign to protect children when such children are on the Internet.

(Sec. 630) Directs the Attorney General to make grants for online child safety programs.

(Sec. 631) Establishes the Jessica Lunsford Address Verification Grant Program to authorize the Attorney General to award grants for the verification of the residence of all or some registered sex offenders. Requires the Attorney General to report to Congress on the verification program by April 1, 2009.

(Sec. 632) Directs the U.S. Marshals Service to establish, direct, and coordinate a Fugitive Safe Surrender Program for the safe, secure, and peaceful apprehension of federal, state, and local fugitives.

(Sec. 633) Directs the Secretary of Health and Human Services to: (1) create a national registry of substantiated cases of child abuse or neglect; (2) establish standards for the dissemination of information in the registry; and (3) conduct a study on the feasibility of establishing data collection standards for the registry.

Directs the Secretary of Homeland Security to report to specified committees of Congress on the study on data collection standards for a national registry of substantiated cases of child abuse or neglect.

(Sec. 634) Directs the National Institute of Justice to conduct a comprehensive study of the control, prosecution, treatment, and monitoring of sex offenders and to report its finding to Congress, through the Internet to the public, to each governor, to the Mayor of the District of Columbia, to territory heads, and to top officials of Indian tribes.

(Sec. 635) Directs the Attorney General to make annual reports to Congress (by July 1) on the enforcement of sex offender registration requirements.

(Sec. 636) Requires the Government Accountability Office (GAO) to: (1) conduct a study to assess the capabilities of states to use driver's license registration processes as additional registration requirements for sex offenders; and (2) evaluate the effectiveness of certain Nevada statutes relating to sex offender registration.

(Sec. 637) Directs the Attorney General to study and report to Congress on risk-based sex offender classification systems.

(Sec. 638) Directs the Attorney General to study and report to the House and Senate Judiciary Committees on the effectiveness of monitoring and restricting the activities of sex offenders to reduce the occurrence of repeat offenses.

(Sec. 639) Justice for Crime Victims Family Act - Requires the Attorney General to report to the Judiciary Committees on measures needed to improve the performance of homicide investigators and for solving homicides involving missing persons and unidentified human remains. Authorizes appropriations.

**Title VII: Internet Safety Act -** (Sec. 701) Amends the federal criminal code to: (1) impose criminal penalties for participation in a child exploitation enterprise; (2) increase penalties for registered sex offenders who commit a felony sex offense against a minor; and (3) prohibit the embedding of deceptive words or images in a website to deceive an individual, including a minor, into viewing obscene material.

(Sec. 704) Directs the Attorney General to increase by not less than 200 the number of U.S. attorneys and assign such attorneys to prosecute offenses relating to the sexual exploitation of children.

(Sec. 705) Directs the Attorney General to increase by not less than 30 the number of computer forensic examiners within the Regional Computer Forensic Laboratories, and requires the Secretary of Homeland Security to increase by not less than 15 the number of such examiners within the Cyber Crimes Center, who shall be dedicated to investigating crimes involving the sexual exploitation of children.

(Sec. 706) Directs the Administrator of the Office of Juvenile Justice and Delinquency Prevention to increase by not less than 10 the number of Internet Crimes Against Children (ICAC) Task Forces authorized and funded under the Juvenile Justice and Delinquency Prevention Act of 1974.

(Sec. 707) Masha's Law - Revises provisions allowing victims of certain sex-related crimes to seek civil remedies to: (1) allow adults as well as minors to sue for injuries; and (2) increase from $50,000 to $150,000 the minimum level of damages.

Authorizes appropriations.

H. R. 4472

# One Hundred Ninth Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Tuesday,*
*the third day of January, two thousand and six*

## An Act

To protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Adam Walsh Child Protection and Safety Act of 2006".

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. In recognition of John and Revé Walsh on the occasion of the 25th anniversary of Adam Walsh's abduction and murder.

TITLE I—SEX OFFENDER REGISTRATION AND NOTIFICATION ACT

Sec. 101. Short title.
Sec. 102. Declaration of purpose.
Sec. 103. Establishment of program.

Subtitle A—Sex Offender Registration and Notification

Sec. 111. Relevant definitions, including Amie Zyla expansion of sex offender definition and expanded inclusion of child predators.
Sec. 112. Registry requirements for jurisdictions.
Sec. 113. Registry requirements for sex offenders.
Sec. 114. Information required in registration.
Sec. 115. Duration of registration requirement.
Sec. 116. Periodic in person verification.
Sec. 117. Duty to notify sex offenders of registration requirements and to register.
Sec. 118. Public access to sex offender information through the Internet.
Sec. 119. National Sex Offender Registry.
Sec. 120. Dru Sjodin National Sex Offender Public Website.
Sec. 121. Megan Nicole Kanka and Alexandra Nicole Zapp Community Notification Program.
Sec. 122. Actions to be taken when sex offender fails to comply.
Sec. 123. Development and availability of registry management and website software.
Sec. 124. Period for implementation by jurisdictions.
Sec. 125. Failure of jurisdiction to comply.
Sec. 126. Sex Offender Management Assistance (SOMA) Program.
Sec. 127. Election by Indian tribes.
Sec. 128. Registration of sex offenders entering the United States.
Sec. 129. Repeal of predecessor sex offender program.
Sec. 130. Limitation on liability for the National Center for Missing and Exploited Children.
Sec. 131. Immunity for good faith conduct.

Subtitle B—Improving Federal Criminal Law Enforcement To Ensure Sex Offender Compliance With Registration and Notification Requirements and Protection of Children From Violent Predators

Sec. 141. Amendments to title 18, United States Code, relating to sex offender registration.

H. R. 4472—2

Sec. 142. Federal assistance with respect to violations of registration requirements.
Sec. 143. Project Safe Childhood.
Sec. 144. Federal assistance in identification and location of sex offenders relocated as a result of a major disaster.
Sec. 145. Expansion of training and technology efforts.
Sec. 146. Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking.

Subtitle C—Access to Information and Resources Needed To Ensure That Children Are Not Attacked or Abused

Sec. 151. Access to national crime information databases.
Sec. 152. Requirement to complete background checks before approval of any foster or adoptive placement and to check national crime information databases and State child abuse registries; suspension and subsequent elimination of Opt-Out.
Sec. 153. Schools Safe Act.
Sec. 154. Missing child reporting requirements.
Sec. 155. DNA fingerprinting.

TITLE II—FEDERAL CRIMINAL LAW ENHANCEMENTS NEEDED TO PROTECT CHILDREN FROM SEXUAL ATTACKS AND OTHER VIOLENT CRIMES

Sec. 201. Prohibition on Internet sales of date rape drugs.
Sec. 202. Jetseta Gage assured punishment for violent crimes against children.
Sec. 203. Penalties for coercion and enticement by sex offenders.
Sec. 204. Penalties for conduct relating to child prostitution.
Sec. 205. Penalties for sexual abuse.
Sec. 206. Increased penalties for sexual offenses against children.
Sec. 207. Sexual abuse of wards.
Sec. 208. Mandatory penalties for sex-trafficking of children.
Sec. 209. Child abuse reporting.
Sec. 210. Sex offender submission to search as condition of release.
Sec. 211. No limitation for prosecution of felony sex offenses.
Sec. 212. Victims' rights associated with habeas corpus proceedings.
Sec. 213. Kidnapping jurisdiction.
Sec. 214. Marital communication and adverse spousal privilege.
Sec. 215. Abuse and neglect of Indian children.
Sec. 216. Improvements to the Bail Reform Act to address sex crimes and other matters.

TITLE III—CIVIL COMMITMENT OF DANGEROUS SEX OFFENDERS

Sec. 301. Jimmy Ryce State civil commitment programs for sexually dangerous persons.
Sec. 302. Jimmy Ryce civil commitment program.

TITLE IV—IMMIGRATION LAW REFORMS TO PREVENT SEX OFFENDERS FROM ABUSING CHILDREN

Sec. 401. Failure to register a deportable offense.
Sec. 402. Barring convicted sex offenders from having family-based petitions approved.

TITLE V—CHILD PORNOGRAPHY PREVENTION

Sec. 501. Findings.
Sec. 502. Other record keeping requirements.
Sec. 503. Record keeping requirements for simulated sexual conduct.
Sec. 504. Prevention of distribution of child pornography used as evidence in prosecutions.
Sec. 505. Authorizing civil and criminal asset forfeiture in child exploitation and obscenity cases.
Sec. 506. Prohibiting the production of obscenity as well as transportation, distribution, and sale.
Sec. 507. Guardians ad litem.

TITLE VI—GRANTS, STUDIES, AND PROGRAMS FOR CHILDREN AND COMMUNITY SAFETY

Subtitle A—Mentoring Matches for Youth Act

Sec. 601. Short title.
Sec. 602. Findings.
Sec. 603. Grant program for expanding Big Brothers Big Sisters mentoring program.

H. R. 4472—3

Sec. 604. Biannual report.
Sec. 605. Authorization of appropriations.

Subtitle B—National Police Athletic League Youth Enrichment Act

Sec. 611. Short title.
Sec. 612. Findings.
Sec. 613. Purpose.
Sec. 614. Grants authorized.
Sec. 615. Use of funds.
Sec. 616. Authorization of appropriations.
Sec. 617. Name of League.

Subtitle C—Grants, Studies, and Other Provisions

Sec. 621. Pilot program for monitoring sexual offenders.
Sec. 622. Treatment and management of sex offenders in the Bureau of Prisons.
Sec. 623. Sex offender apprehension grants; juvenile sex offender treatment grants.
Sec. 624. Assistance for prosecution of cases cleared through use of DNA backlog clearance funds.
Sec. 625. Grants to combat sexual abuse of children.
Sec. 626. Crime prevention campaign grant.
Sec. 627. Grants for fingerprinting programs for children.
Sec. 628. Grants for Rape, Abuse & Incest National Network.
Sec. 629. Children's safety online awareness campaigns.
Sec. 630. Grants for online child safety programs.
Sec. 631. Jessica Lunsford Address Verification Grant Program.
Sec. 632. Fugitive safe surrender.
Sec. 633. National registry of substantiated cases of child abuse.
Sec. 634. Comprehensive examination of sex offender issues.
Sec. 635. Annual report on enforcement of registration requirements.
Sec. 636. Government Accountability Office studies on feasibility of using driver's license registration processes as additional registration requirements for sex offenders.
Sec. 637. Sex offender risk classification study.
Sec. 638. Study of the effectiveness of restricting the activities of sex offenders to reduce the occurrence of repeat offenses.
Sec. 639. The Justice for Crime Victims Family Act.

TITLE VII—INTERNET SAFETY ACT

Sec. 701. Child exploitation enterprises.
Sec. 702. Increased penalties for registered sex offenders.
Sec. 703. Deception by embedded words or images.
Sec. 704. Additional prosecutors for offenses relating to the sexual exploitation of children.
Sec. 705. Additional computer-related resources.
Sec. 706. Additional ICAC Task Forces.
Sec. 707. Masha's Law.

**SEC. 2. IN RECOGNITION OF JOHN AND REVÉ WALSH ON THE OCCA-SION OF THE 25TH ANNIVERSARY OF ADAM WALSH'S ABDUCTION AND MURDER.**

(a) ADAM WALSH'S ABDUCTION AND MURDER.—On July 27, 1981, in Hollywood, Florida, 6-year-old Adam Walsh was abducted at a mall. Two weeks later, some of Adam's remains were discovered in a canal more than 100 miles from his home.

(b) JOHN AND REVÉ WALSH'S COMMITMENT TO THE SAFETY OF CHILDREN.—Since the abduction and murder of their son Adam, both John and Revé Walsh have dedicated themselves to protecting children from child predators, preventing attacks on our children, and bringing child predators to justice. Their commitment has saved the lives of numerous children. Congress, and the American people, honor John and Revé Walsh for their dedication to the well-being and safety of America's children.

H. R. 4472—4

# TITLE I—SEX OFFENDER REGISTRATION AND NOTIFICATION ACT

**SEC. 101. SHORT TITLE.**

This title may be cited as the "Sex Offender Registration and Notification Act".

**SEC. 102. DECLARATION OF PURPOSE.**

In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, Congress in this Act establishes a comprehensive national system for the registration of those offenders:

(1) Jacob Wetterling, who was 11 years old, was abducted in 1989 in Minnesota, and remains missing.

(2) Megan Nicole Kanka, who was 7 years old, was abducted, sexually assaulted, and murdered in 1994, in New Jersey.

(3) Pam Lychner, who was 31 years old, was attacked by a career offender in Houston, Texas.

(4) Jetseta Gage, who was 10 years old, was kidnapped, sexually assaulted, and murdered in 2005, in Cedar Rapids, Iowa.

(5) Dru Sjodin, who was 22 years old, was sexually assaulted and murdered in 2003, in North Dakota.

(6) Jessica Lunsford, who was 9 years old, was abducted, sexually assaulted, buried alive, and murdered in 2005, in Homosassa, Florida.

(7) Sarah Lunde, who was 13 years old, was strangled and murdered in 2005, in Ruskin, Florida.

(8) Amie Zyla, who was 8 years old, was sexually assaulted in 1996 by a juvenile offender in Waukesha, Wisconsin, and has become an advocate for child victims and protection of children from juvenile sex offenders.

(9) Christy Ann Fornoff, who was 13 years old, was abducted, sexually assaulted, and murdered in 1984, in Tempe, Arizona.

(10) Alexandra Nicole Zapp, who was 30 years old, was brutally attacked and murdered in a public restroom by a repeat sex offender in 2002, in Bridgewater, Massachusetts.

(11) Polly Klaas, who was 12 years old, was abducted, sexually assaulted, and murdered in 1993 by a career offender in California.

(12) Jimmy Ryce, who was 9 years old, was kidnapped and murdered in Florida on September 11, 1995.

(13) Carlie Brucia, who was 11 years old, was abducted and murdered in Florida in February, 2004.

(14) Amanda Brown, who was 7 years old, was abducted and murdered in Florida in 1998.

(15) Elizabeth Smart, who was 14 years old, was abducted in Salt Lake City, Utah in June 2002.

(16) Molly Bish, who was 16 years old, was abducted in 2000 while working as a lifeguard in Warren, Massachusetts, where her remains were found 3 years later.

H. R. 4472—5

(17) Samantha Runnion, who was 5 years old, was abducted, sexually assaulted, and murdered in California on July 15, 2002.

**SEC. 103. ESTABLISHMENT OF PROGRAM.**

This Act establishes the Jacob Wetterling, Megan Nicole Kanka, and Pam Lychner Sex Offender Registration and Notification Program.

## Subtitle A—Sex Offender Registration and Notification

**SEC. 111. RELEVANT DEFINITIONS, INCLUDING AMIE ZYLA EXPANSION OF SEX OFFENDER DEFINITION AND EXPANDED INCLUSION OF CHILD PREDATORS.**

In this title the following definitions apply:

(1) SEX OFFENDER.—The term "sex offender" means an individual who was convicted of a sex offense.

(2) TIER I SEX OFFENDER.—The term "tier I sex offender" means a sex offender other than a tier II or tier III sex offender.

(3) TIER II SEX OFFENDER.—The term "tier II sex offender" means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:

(i) sex trafficking (as described in section 1591 of title 18, United States Code);

(ii) coercion and enticement (as described in section 2422(b) of title 18, United States Code);

(iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) of title 18, United States Code;

(iv) abusive sexual contact (as described in section 2244 of title 18, United States Code);

(B) involves—

(i) use of a minor in a sexual performance;

(ii) solicitation of a minor to practice prostitution; or

(iii) production or distribution of child pornography; or

(C) occurs after the offender becomes a tier I sex offender.

(4) TIER III SEX OFFENDER.—The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:

(i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of title 18, United States Code); or

(ii) abusive sexual contact (as described in section 2244 of title 18, United States Code) against a minor who has not attained the age of 13 years;

P.R. 45 of

H. R. 4472—6

(B) involves kidnapping of a minor (unless committed by a parent or guardian); or

(C) occurs after the offender becomes a tier II sex offender.

(5) AMIE ZYLA EXPANSION OF SEX OFFENSE DEFINITION.—

(A) GENERALLY.—Except as limited by subparagraph (B) or (C), the term "sex offense" means—

(i) a criminal offense that has an element involving a sexual act or sexual contact with another;

(ii) a criminal offense that is a specified offense against a minor;

(iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of title 18, United States Code) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of title 18, United States Code;

(iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105–119 (10 U.S.C. 951 note); or

(v) an attempt or conspiracy to commit an offense described in clauses (i) through (iv).

(B) FOREIGN CONVICTIONS.—A foreign conviction is not a sex offense for the purposes of this title if it was not obtained with sufficient safeguards for fundamental fairness and due process for the accused under guidelines or regulations established under section 112.

(C) OFFENSES INVOLVING CONSENSUAL SEXUAL CONDUCT.—An offense involving consensual sexual conduct is not a sex offense for the purposes of this title if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim.

(6) CRIMINAL OFFENSE.—The term "criminal offense" means a State, local, tribal, foreign, or military offense (to the extent specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105–119 (10 U.S.C. 951 note)) or other criminal offense.

(7) EXPANSION OF DEFINITION OF "SPECIFIED OFFENSE AGAINST A MINOR" TO INCLUDE ALL OFFENSES BY CHILD PREDATORS.—The term "specified offense against a minor" means an offense against a minor that involves any of the following:

(A) An offense (unless committed by a parent or guardian) involving kidnapping.

(B) An offense (unless committed by a parent or guardian) involving false imprisonment.

(C) Solicitation to engage in sexual conduct.

(D) Use in a sexual performance.

(E) Solicitation to practice prostitution.

(F) Video voyeurism as described in section 1801 of title 18, United States Code.

(G) Possession, production, or distribution of child pornography.

(H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.

(I) Any conduct that by its nature is a sex offense against a minor.

H. R. 4472—7

(8) CONVICTED AS INCLUDING CERTAIN JUVENILE ADJUDICA-TIONS.—The term "convicted" or a variant thereof, used with respect to a sex offense, includes adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse (as described in section 2241 of title 18, United States Code), or was an attempt or conspiracy to commit such an offense.

(9) SEX OFFENDER REGISTRY.—The term "sex offender registry" means a registry of sex offenders, and a notification program, maintained by a jurisdiction.

(10) JURISDICTION.—The term "jurisdiction" means any of the following:

(A) A State.
(B) The District of Columbia.
(C) The Commonwealth of Puerto Rico.
(D) Guam.
(E) American Samoa.
(F) The Northern Mariana Islands.
(G) The United States Virgin Islands.
(H) To the extent provided and subject to the requirements of section 127, a federally recognized Indian tribe.

(11) STUDENT.—The term "student" means an individual who enrolls in or attends an educational institution, including (whether public or private) a secondary school, trade or professional school, and institution of higher education.

(12) EMPLOYEE.—The term "employee" includes an individual who is self-employed or works for any other entity, whether compensated or not.

(13) RESIDES.—The term "resides" means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives.

(14) MINOR.—The term "minor" means an individual who has not attained the age of 18 years.

## SEC. 112. REGISTRY REQUIREMENTS FOR JURISDICTIONS.

(a) JURISDICTION TO MAINTAIN A REGISTRY.—Each jurisdiction shall maintain a jurisdiction-wide sex offender registry conforming to the requirements of this title.

(b) GUIDELINES AND REGULATIONS.—The Attorney General shall issue guidelines and regulations to interpret and implement this title.

## SEC. 113. REGISTRY REQUIREMENTS FOR SEX OFFENDERS.

(a) IN GENERAL.—A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) INITIAL REGISTRATION.—The sex offender shall initially register—

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

H. R. 4472—8

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) KEEPING THE REGISTRATION CURRENT.—A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) INITIAL REGISTRATION OF SEX OFFENDERS UNABLE TO COMPLY WITH SUBSECTION (b).—The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

(e) STATE PENALTY FOR FAILURE TO COMPLY.—Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this title.

## SEC. 114. INFORMATION REQUIRED IN REGISTRATION.

(a) PROVIDED BY THE OFFENDER.—The sex offender shall provide the following information to the appropriate official for inclusion in the sex offender registry:

(1) The name of the sex offender (including any alias used by the individual).

(2) The Social Security number of the sex offender.

(3) The address of each residence at which the sex offender resides or will reside.

(4) The name and address of any place where the sex offender is an employee or will be an employee.

(5) The name and address of any place where the sex offender is a student or will be a student.

(6) The license plate number and a description of any vehicle owned or operated by the sex offender.

(7) Any other information required by the Attorney General.

(b) PROVIDED BY THE JURISDICTION.—The jurisdiction in which the sex offender registers shall ensure that the following information is included in the registry for that sex offender:

(1) A physical description of the sex offender.

(2) The text of the provision of law defining the criminal offense for which the sex offender is registered.

(3) The criminal history of the sex offender, including the date of all arrests and convictions; the status of parole, probation, or supervised release; registration status; and the existence of any outstanding arrest warrants for the sex offender.

(4) A current photograph of the sex offender.

(5) A set of fingerprints and palm prints of the sex offender.

(6) A DNA sample of the sex offender.

(7) A photocopy of a valid driver's license or identification card issued to the sex offender by a jurisdiction.

(8) Any other information required by the Attorney General.

H. R. 4472—9

### SEC. 115. DURATION OF REGISTRATION REQUIREMENT.

(a) FULL REGISTRATION PERIOD.—A sex offender shall keep the registration current for the full registration period (excluding any time the sex offender is in custody or civilly committed) unless the offender is allowed a reduction under subsection (b). The full registration period is—

(1) 15 years, if the offender is a tier I sex offender;

(2) 25 years, if the offender is a tier II sex offender; and

(3) the life of the offender, if the offender is a tier III sex offender.

(b) REDUCED PERIOD FOR CLEAN RECORD.—

(1) CLEAN RECORD.—The full registration period shall be reduced as described in paragraph (3) for a sex offender who maintains a clean record for the period described in paragraph (2) by—

(A) not being convicted of any offense for which imprisonment for more than 1 year may be imposed;

(B) not being convicted of any sex offense;

(C) successfully completing any periods of supervised release, probation, and parole; and

(D) successfully completing of an appropriate sex offender treatment program certified by a jurisdiction or by the Attorney General.

(2) PERIOD.—In the case of—

(A) a tier I sex offender, the period during which the clean record shall be maintained is 10 years; and

(B) a tier III sex offender adjudicated delinquent for the offense which required registration in a sex registry under this title, the period during which the clean record shall be maintained is 25 years.

(3) REDUCTION.—In the case of—

(A) a tier I sex offender, the reduction is 5 years;

(B) a tier III sex offender adjudicated delinquent, the reduction is from life to that period for which the clean record under paragraph (2) is maintained.

### SEC. 116. PERIODIC IN PERSON VERIFICATION.

A sex offender shall appear in person, allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered not less frequently than—

(1) each year, if the offender is a tier I sex offender;

(2) every 6 months, if the offender is a tier II sex offender; and

(3) every 3 months, if the offender is a tier III sex offender.

### SEC. 117. DUTY TO NOTIFY SEX OFFENDERS OF REGISTRATION REQUIREMENTS AND TO REGISTER.

(a) IN GENERAL.—An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register—

(1) inform the sex offender of the duties of a sex offender under this title and explain those duties;

(2) require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and

H. R. 4472—10

(3) ensure that the sex offender is registered.

(b) NOTIFICATION OF SEX OFFENDERS WHO CANNOT COMPLY WITH SUBSECTION (a).—The Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a).

## SEC. 118. PUBLIC ACCESS TO SEX OFFENDER INFORMATION THROUGH THE INTERNET.

(a) IN GENERAL.—Except as provided in this section, each jurisdiction shall make available on the Internet, in a manner that is readily accessible to all jurisdictions and to the public, all information about each sex offender in the registry. The jurisdiction shall maintain the Internet site in a manner that will permit the public to obtain relevant information for each sex offender by a single query for any given zip code or geographic radius set by the user. The jurisdiction shall also include in the design of its Internet site all field search capabilities needed for full participation in the Dru Sjodin National Sex Offender Public Website and shall participate in that website as provided by the Attorney General.

(b) MANDATORY EXEMPTIONS.—A jurisdiction shall exempt from disclosure—

(1) the identity of any victim of a sex offense;

(2) the Social Security number of the sex offender;

(3) any reference to arrests of the sex offender that did not result in conviction; and

(4) any other information exempted from disclosure by the Attorney General.

(c) OPTIONAL EXEMPTIONS.—A jurisdiction may exempt from disclosure—

(1) any information about a tier I sex offender convicted of an offense other than a specified offense against a minor;

(2) the name of an employer of the sex offender;

(3) the name of an educational institution where the sex offender is a student; and

(4) any other information exempted from disclosure by the Attorney General.

(d) LINKS.—The site shall include, to the extent practicable, links to sex offender safety and education resources.

(e) CORRECTION OF ERRORS.—The site shall include instructions on how to seek correction of information that an individual contends is erroneous.

(f) WARNING.—The site shall include a warning that information on the site should not be used to unlawfully injure, harass, or commit a crime against any individual named in the registry or residing or working at any reported address. The warning shall note that any such action could result in civil or criminal penalties.

## SEC. 119. NATIONAL SEX OFFENDER REGISTRY.

(a) INTERNET.—The Attorney General shall maintain a national database at the Federal Bureau of Investigation for each sex offender and any other person required to register in a jurisdiction's sex offender registry. The database shall be known as the National Sex Offender Registry.

(b) ELECTRONIC FORWARDING.—The Attorney General shall ensure (through the National Sex Offender Registry or otherwise) that updated information about a sex offender is immediately transmitted by electronic forwarding to all relevant jurisdictions.

H. R. 4472—11

**SEC. 120. DRU SJODIN NATIONAL SEX OFFENDER PUBLIC WEBSITE.**

(a) ESTABLISHMENT.—There is established the Dru Sjodin National Sex Offender Public Website (hereinafter in this section referred to as the "Website"), which the Attorney General shall maintain.

(b) INFORMATION TO BE PROVIDED.—The Website shall include relevant information for each sex offender and other person listed on a jurisdiction's Internet site. The Website shall allow the public to obtain relevant information for each sex offender by a single query for any given zip code or geographical radius set by the user in a form and with such limitations as may be established by the Attorney General and shall have such other field search capabilities as the Attorney General may provide.

**SEC. 121. MEGAN NICOLE KANKA AND ALEXANDRA NICOLE ZAPP COMMUNITY NOTIFICATION PROGRAM.**

(a) ESTABLISHMENT OF PROGRAM.—There is established the Megan Nicole Kanka and Alexandra Nicole Zapp Community Notification Program (hereinafter in this section referred to as the "Program").

(b) PROGRAM NOTIFICATION.—Except as provided in subsection (c), immediately after a sex offender registers or updates a registration, an appropriate official in the jurisdiction shall provide the information in the registry (other than information exempted from disclosure by the Attorney General) about that offender to the following:

(1) The Attorney General, who shall include that information in the National Sex Offender Registry or other appropriate databases.

(2) Appropriate law enforcement agencies (including probation agencies, if appropriate), and each school and public housing agency, in each area in which the individual resides, is an employee or is a student.

(3) Each jurisdiction where the sex offender resides, is an employee, or is a student, and each jurisdiction from or to which a change of residence, employment, or student status occurs.

(4) Any agency responsible for conducting employment-related background checks under section 3 of the National Child Protection Act of 1993 (42 U.S.C. 5119a).

(5) Social service entities responsible for protecting minors in the child welfare system.

(6) Volunteer organizations in which contact with minors or other vulnerable individuals might occur.

(7) Any organization, company, or individual who requests such notification pursuant to procedures established by the jurisdiction.

(c) FREQUENCY.—Notwithstanding subsection (b), an organization or individual described in subsection (b)(6) or (b)(7) may opt to receive the notification described in that subsection no less frequently than once every five business days.

**SEC. 122. ACTIONS TO BE TAKEN WHEN SEX OFFENDER FAILS TO COMPLY.**

An appropriate official shall notify the Attorney General and appropriate law enforcement agencies of any failure by a sex offender to comply with the requirements of a registry and revise

H. R. 4472—12

the jurisdiction's registry to reflect the nature of that failure. The appropriate official, the Attorney General, and each such law enforcement agency shall take any appropriate action to ensure compliance.

### SEC. 123. DEVELOPMENT AND AVAILABILITY OF REGISTRY MANAGEMENT AND WEBSITE SOFTWARE.

(a) DUTY TO DEVELOP AND SUPPORT.—The Attorney General shall, in consultation with the jurisdictions, develop and support software to enable jurisdictions to establish and operate uniform sex offender registries and Internet sites.

(b) CRITERIA.—The software should facilitate—

(1) immediate exchange of information among jurisdictions;

(2) public access over the Internet to appropriate information, including the number of registered sex offenders in each jurisdiction on a current basis;

(3) full compliance with the requirements of this title; and

(4) communication of information to community notification program participants as required under section 121.

(c) DEADLINE.—The Attorney General shall make the first complete edition of this software available to jurisdictions within 2 years of the date of the enactment of this Act.

### SEC. 124. PERIOD FOR IMPLEMENTATION BY JURISDICTIONS.

(a) DEADLINE.—Each jurisdiction shall implement this title before the later of—

(1) 3 years after the date of the enactment of this Act; and

(2) 1 year after the date on which the software described in section 123 is available.

(b) EXTENSIONS.—The Attorney General may authorize up to two 1-year extensions of the deadline.

### SEC. 125. FAILURE OF JURISDICTION TO COMPLY.

(a) IN GENERAL.—For any fiscal year after the end of the period for implementation, a jurisdiction that fails, as determined by the Attorney General, to substantially implement this title shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction under subpart 1 of part E of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3750 et seq.).

(b) STATE CONSTITUTIONALITY.—

(1) IN GENERAL.—When evaluating whether a jurisdiction has substantially implemented this title, the Attorney General shall consider whether the jurisdiction is unable to substantially implement this title because of a demonstrated inability to implement certain provisions that would place the jurisdiction in violation of its constitution, as determined by a ruling of the jurisdiction's highest court.

(2) EFFORTS.—If the circumstances arise under paragraph (1), then the Attorney General and the jurisdiction shall make good faith efforts to accomplish substantial implementation of this title and to reconcile any conflicts between this title and the jurisdiction's constitution. In considering whether compliance with the requirements of this title would likely violate the jurisdiction's constitution or an interpretation thereof by the jurisdiction's highest court, the Attorney General

H. R. 4472—13

shall consult with the chief executive and chief legal officer of the jurisdiction concerning the jurisdiction's interpretation of the jurisdiction's constitution and rulings thereon by the jurisdiction's highest court.

(3) ALTERNATIVE PROCEDURES.—If the jurisdiction is unable to substantially implement this title because of a limitation imposed by the jurisdiction's constitution, the Attorney General may determine that the jurisdiction is in compliance with this Act if the jurisdiction has made, or is in the process of implementing reasonable alternative procedures or accommodations, which are consistent with the purposes of this Act.

(4) FUNDING REDUCTION.—If a jurisdiction does not comply with paragraph (3), then the jurisdiction shall be subject to a funding reduction as specified in subsection (a).

(c) REALLOCATION.—Amounts not allocated under a program referred to in this section to a jurisdiction for failure to substantially implement this title shall be reallocated under that program to jurisdictions that have not failed to substantially implement this title or may be reallocated to a jurisdiction from which they were withheld to be used solely for the purpose of implementing this title.

(d) RULE OF CONSTRUCTION.—The provisions of this title that are cast as directions to jurisdictions or their officials constitute, in relation to States, only conditions required to avoid the reduction of Federal funding under this section.

## SEC. 126. SEX OFFENDER MANAGEMENT ASSISTANCE (SOMA) PROGRAM.

(a) IN GENERAL.—The Attorney General shall establish and implement a Sex Offender Management Assistance program (in this title referred to as the "SOMA program"), under which the Attorney General may award a grant to a jurisdiction to offset the costs of implementing this title.

(b) APPLICATION.—The chief executive of a jurisdiction desiring a grant under this section shall, on an annual basis, submit to the Attorney General an application in such form and containing such information as the Attorney General may require.

(c) BONUS PAYMENTS FOR PROMPT COMPLIANCE.—A jurisdiction that, as determined by the Attorney General, has substantially implemented this title not later than 2 years after the date of the enactment of this Act is eligible for a bonus payment. The Attorney General may make such a payment under the SOMA program for the first fiscal year beginning after that determination. The amount of the payment shall be—

(1) 10 percent of the total received by the jurisdiction under the SOMA program for the preceding fiscal year, if that implementation is not later than 1 year after the date of enactment of this Act; and

(2) 5 percent of such total, if not later than 2 years after that date.

(d) AUTHORIZATION OF APPROPRIATIONS.—In addition to any amounts otherwise authorized to be appropriated, there are authorized to be appropriated such sums as may be necessary to the Attorney General, to be available only for the SOMA program, for fiscal years 2007 through 2009.

## SEC. 127. ELECTION BY INDIAN TRIBES.

(a) ELECTION.—

H. R. 4472—14

(1) IN GENERAL.—A federally recognized Indian tribe may, by resolution or other enactment of the tribal council or comparable governmental body—

(A) elect to carry out this subtitle as a jurisdiction subject to its provisions; or

(B) elect to delegate its functions under this subtitle to another jurisdiction or jurisdictions within which the territory of the tribe is located and to provide access to its territory and such other cooperation and assistance as may be needed to enable such other jurisdiction or jurisdictions to carry out and enforce the requirements of this subtitle.

(2) IMPUTED ELECTION IN CERTAIN CASES.—A tribe shall be treated as if it had made the election described in paragraph (1)(B) if—

(A) it is a tribe subject to the law enforcement jurisdiction of a State under section 1162 of title 18, United States Code;

(B) the tribe does not make an election under paragraph (1) within 1 year of the enactment of this Act or rescinds an election under paragraph (1)(A); or

(C) the Attorney General determines that the tribe has not substantially implemented the requirements of this subtitle and is not likely to become capable of doing so within a reasonable amount of time.

(b) COOPERATION BETWEEN TRIBAL AUTHORITIES AND OTHER JURISDICTIONS.—

(1) NONDUPLICATION.—A tribe subject to this subtitle is not required to duplicate functions under this subtitle which are fully carried out by another jurisdiction or jurisdictions within which the territory of the tribe is located.

(2) COOPERATIVE AGREEMENTS.—A tribe may, through cooperative agreements with such a jurisdiction or jurisdictions—

(A) arrange for the tribe to carry out any function of such a jurisdiction under this subtitle with respect to sex offenders subject to the tribe's jurisdiction; and

(B) arrange for such a jurisdiction to carry out any function of the tribe under this subtitle with respect to sex offenders subject to the tribe's jurisdiction.

**SEC. 128. REGISTRATION OF SEX OFFENDERS ENTERING THE UNITED STATES.**

The Attorney General, in consultation with the Secretary of State and the Secretary of Homeland Security, shall establish and maintain a system for informing the relevant jurisdictions about persons entering the United States who are required to register under this title. The Secretary of State and the Secretary of Homeland Security shall provide such information and carry out such functions as the Attorney General may direct in the operation of the system.

**SEC. 129. REPEAL OF PREDECESSOR SEX OFFENDER PROGRAM.**

(a) REPEAL.—Sections 170101 (42 U.S.C. 14071) and 170102 (42 U.S.C. 14072) of the Violent Crime Control and Law Enforcement Act of 1994, and section 8 of the Pam Lychner Sexual Offender Tracking and Identification Act of 1996 (42 U.S.C. 14073), are repealed.

H. R. 4472—15

(b) EFFECTIVE DATE.—Notwithstanding any other provision of this Act, this section shall take effect on the date of the deadline determined in accordance with section 124(a).

SEC. 130. LIMITATION ON LIABILITY FOR THE NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN.

Section 227 of the Victims of Child Abuse Act of 1990 (42 U.S.C. 13032) is amended by adding at the end the following:

"(g) LIMITATION ON LIABILITY.—

"(1) IN GENERAL.—Except as provided in paragraphs (2) and (3), the National Center for Missing and Exploited Children, including any of its directors, officers, employees, or agents, is not liable in any civil or criminal action arising from the performance of its CyberTipline responsibilities and functions, as defined by this section, or from its efforts to identify child victims.

"(2) INTENTIONAL, RECKLESS, OR OTHER MISCONDUCT.— Paragraph (1) does not apply in an action in which a party proves that the National Center for Missing and Exploited Children, or its officer, employee, or agent as the case may be, engaged in intentional misconduct or acted, or failed to act, with actual malice, with reckless disregard to a substantial risk of causing injury without legal justification, or for a purpose unrelated to the performance of responsibilities or functions under this section.

"(3) ORDINARY BUSINESS ACTIVITIES.—Paragraph (1) does not apply to an act or omission related to an ordinary business activity, such as an activity involving general administration or operations, the use of motor vehicles, or personnel management.".

SEC. 131. IMMUNITY FOR GOOD FAITH CONDUCT.

The Federal Government, jurisdictions, political subdivisions of jurisdictions, and their agencies, officers, employees, and agents shall be immune from liability for good faith conduct under this title.

# Subtitle B—Improving Federal Criminal Law Enforcement To Ensure Sex Offender Compliance With Registration and Notification Requirements and Protection of Children From Violent Predators

SEC. 141. AMENDMENTS TO TITLE 18, UNITED STATES CODE, RELATING TO SEX OFFENDER REGISTRATION.

(a) CRIMINAL PENALTIES FOR NONREGISTRATION.—

(1) IN GENERAL.—Part I of title 18, United States Code, is amended by inserting after chapter 109A the following:

***ACTIVE MANUAL USE FROM 06/07/2006 - 07/10/2007***

# SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES
## R.I. GENERAL LAWS §11-37.1-1 ET SEQ.

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

42 Parole Board
Chapter XXX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Subchapter XX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Part 2745 Sex Offender Community Notification Unit Gudelines and Policy Statement 2006
Type of Filing Amendment
Regulation Status Inactive
Effective 06/07/2006 to 07/10/2007
Regulation Authority:

## RHODE ISLAND PAROLE BOARD
## SEX OFFENDER COMMUNITY NOTIFICATION UNIT

### SEX OFFENDER BOARD OF REVIEW 2006

#### Board Members

Peg Langhammer
Jim Moody
Joseph Richardson

Peter Loss
Lieutenant Pam Icart
Chuck Golembeske

https://rules.sos.ri.gov/Regulations/part/242-XXX-XX-2745?reg_id=4013

11-37.1
Purpose and Reason:

The Sex Offender Community Notification Unit is required to hold annually a public hearing and an open meeting for the purpose of comment and review by the public on the policies and guidelines of the community notification process.

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................3

SCOPE .............................................................................................................3

POLICY............................................................................................................3

STATUTORY AUTHORITY .................................................................................3

PART I      DEFINITIONS...................................................................................4

§1.0    DEFINITIONS ..................................................................................... 4-7

PART II     DUTIES OF BOARD OF REVIEW, PAROLE BOARD AND
            LAW ENFORCEMENT OFFENDERS IN CUSTODY ............................8

§2.0    DUTIES OF THE BOARD OF REIVEW, PAROLE BOARD AND LAW
        ENFORCEMENT OFFICERS IN CUSTODY.......................................... 8-9

§3.0    SEX OFFENDER BOARD OF REVIEW ............................................... 9-10

§4.0    DUTIES OF LAW ENFORCEMENT AGENCIES ................................. 11-13

PART III    COMMUNITY NOTIFICATION PLAN GUIDELINES FOR
            LEVELS I,II AND III ..................................................................14

§5.0    RISK LEVEL I-LOW RISK SEXUAL OFFENDER ................................ 14

§6.0    RISK LEVEL II-MODERATE RISK SEXUAL OFFENDERS IN RESIDENTIAL .. 14-15

§7.0    RISK LEVEL II(1)-MODERATE RISK SEXUAL OFFENDERS NOT PLACED
        IN A TREATMENT FACILITY .......................................................... 15-20

§8.0    RISK LEVEL III- HIGH RISK SEXUAL OFFENDERS IN RESIDENTIAL
        FACILITIES ................................................................................. 20

§9.0    RISK LEVEL III(A)- HIGH RISK SEXUAL OFFENDERS NOT PLACED IN
        TREATMENT FACILITY ................................................................. 20-22

§10.0   EXCHANGE OF INFORMATION BETWEEN LAW ENFORCEMENT
        AGENCIES................................................................................... 22

PART IV     RE-NOTIFICATION .......................................................................23

PART V      RELEASE OF INFORMATION .........................................................24

PART VI     IMMUNITY ..................................................................................25

1

APPENDIX    ..................................................................................................26

    ADDENDUM I.....................................................................................26-27

    ADDENDUM 2 ..........................................................................................28

    ADDENDUM 3 ..........................................................................................29

    SAMPLE LETTER TO LAW ENFORCEMENT- LEVEL I.........................................30

    SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL II.....................................31

    SAMPLE LETTER TO LAW ENFROCEMENT – LEVEL III .................................32

    SAMPLE NOTIFCE TO LEVEL II AND LEVEL III OFFENDERS ..........................33-34

    SAMPLE FACT SHEET – LEVEL I .............................................................35

    SAMPLE FACT SHEET – LEVEL II.............................................................36

    SAMPLE FACT SHEET – LEVEL III............................................................37

P.R. 58 of 364

**OFFICE OF ATTORNEY GENERAL OF RHODE ISLAND**

**SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES**

| EFFECTIVE DATE: | DISTRIBUTION: |
|---|---|
| 7/10/03 | |

INTRODUCTION

SCOPE

This policy is intended to ensure that all law enforcement agencies comply with the requirements of Rhode Island General Laws §11-37.1-1 et seq., to provide for the registration of juvenile and adult sexual offenders living in Rhode Island or relocating here from another jurisdiction, and to provide community notification relative to the release of juvenile and adult sexual offenders living or relocating to Rhode Island.

The Community Notification Provisions of R.I. General Laws §11-37.1 et seq., shall apply to all those juvenile and adult offenders who committed a sexually violent offense on or after July 24, 1996, and who are determined to be at low risk, moderate risk or high risk of re-offense.

**POLICY**

By enacting the Sexual Offender Registration and Community Notification Act, R.I. Gen. Laws §11-37.1-1 et seq., the State of Rhode Island supports the policy that if members of the public are provided adequate notification and information about a sex offender who has been or is about to be released from custody and who lives or will live in or near their neighborhood, the community can develop constructive plans to prepare themselves and their children for the offender's release.

In order to implement this policy, it is the policy of this agency to facilitate the registration of sexual and other predatory offenders. It is further the policy of this agency to provide community notification relative to the release of those offenders as designated by statute, while preserving the legal rights of those offenders.

It is the policy of this agency to provide the maximum information authorized by law, consistent with the requirements of public safety.

**STATUATORY AUTHORITY**

R.I. General Laws §11-37.1-1 et seq.,          Sexual Offender Registration and
                                               Community Notification Act

3

## PART I    DEFINITIONS

*Section 1.0    Definitions*

Wherever used in these Guidelines, the following terms shall be construed as follows:

1.1    The terms "Board", "Board of Review" and "Sex Offender Board of Review", shall mean the "BOR" appointed by the governor pursuant to the RI General Laws §11-37.1-1 et seq.

1.2    The term "Sex Offender Community Notification Unit" shall mean the SOCN unit whose duty and authority is set forth in RI General Law 11-37.1-1 et seq.

1.3    Law Enforcement Agency:

1.3.1    For the purpose of community notification, a law enforcement agency is defined as the agency having primary jurisdiction over the location where the offender expects to reside upon release, and/or where the offer is likely to be encouraged.

1.3.2    For all other purposes under this policy, the definition of law enforcement agency includes all agencies which carry on a law enforcement or prosecutorial function including, but not limited to, local, state and federal agencies; and parole, probation and court services agencies.

1.4    The term "sexually violent offense" shall mean and include any violation of RI Gen Laws §11-37-2, §11-37-4, §11-37-6, §11-37-8, §11-37-8.1, §11-37-8.3, §11-5-1 and §11-23-1 or any offense in another jurisdiction which is substantially the equivalent of any offense listed in this subsection and for which the person is or would be required to register under 42 USC §14071 or 18 USC Section 4042 (c).

1.5    The term "sexually violent predator" shall mean a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

1.6    The term "mental abnormality" shall mean a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person menace to the health and safety of other person.

REPEALED JULY 27, 2006, REPLACED BY PUBLIC LAW 109-248 ADAM WALSH CHILD PROTECTION ACT OF 2006 (§) 34 U.S.C. 20911

4

***ACTIVE MANUAL USE FROM 07/10/2007 - 11/23/2011***

# SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES
## R.I. GENERAL LAWS §11-37.1-1 ET SEQ.

### STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

### RHODE ISLAND PAROLE BOARD
### SEX OFFENDER COMMUNITY NOTIFICATION UNIT

### SEX OFFENDER BOARD OF REVIEW 2007

Title 242 Parole Board
Chapter XXX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Subchapter XX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Part 2745 Sex Offender Community Notification Unit Gudelines and Policy Statement
Type of Filing Amendment
Regulation Status Inactive
Effective 07/10/2007 to 11/23/2011          https://rules.sos.ri.gov/Regulations/part/242-XXX-XX-2745?reg_id=4680
Regulation Authority:

### Board Members

Dr. Charles Golembeske                    Kendra Marasco, MSW
Attorney Robert Humphrey                  Lieutenant Robert Voas
Lieutenant Pam Icart                      Joanne Waite
Bernard M. Manchester

11-37.1
Purpose and Reason:

The Sex Offender Community Notification Unit has promulgated their annual gudelines and policy statement. There wer
no substantive changes in the guidelines from 2006 to 2007.

# TABLE OF CONTENTS

INTRODUCTION..........................................................................................4

SCOPE ....................................................................................................4

POLICY....................................................................................................4

STATUTORY AUTHORITY........................................................................4

PART I       DEFINITIONS...............................................................5

    §1.0     DEFINITIONS........................................................................5-8

PART II      DUTIES OF BOARD OF REVIEW, PAROLE BOARD AND LAW ENFORCEMENT OFFENDERS IN CUSTODY ...........................9-10

    §2.0     DUTIES OF THE BOARD OF REVIEW, PAROLE BOARD AND LAW ENFORCEMENT OFFICERS - OFFENDERS IN CUSTODY.................10-12

    §3.0     SEX OFFENDER BOARD OF REVIEW....................................10-12

    §4.0     DUTIES OF LAW ENFORCEMENT AGENCIES ......................13-14

PART III      COMMUNITY NOTIFICATION PLAN GUIDELINES FOR LEVELS I, II AND III ............................................................15

    §5.0     RISK LEVEL I – LOW RISK SEXUAL OFFENDERS..................15

    §6.0     RISK LEVEL II – MODERATE RISK SEXUAL OFFENDERS IN RESIDENTIAL FACILITIES.......................................................15-16

    §7.0     RISK LEVEL II (1) – MODERATE RISK SEXUAL OFFENDERS NOT PLACED IN A TREATMENT FACILITY.......................................16-21

    §8.0     RISK LEVEL III – HIGH RISK SEXUAL OFFENDERS IN RESIDENTIAL FACILITIES ..............................................................................21

    §9.0     RISK LEVEL III (A) – HIGH RISK SEXUAL OFFENDERS NOT PLACED IN A TREATMENT FACILITY .......................................22-23

    §10.0    EXCHANGE OF INFORMATION BETWEEN LAW ENFORCEMENT AGENCIES.......................................................................... 23

PART IV      RE-NOTIFICATION ..........................................................24

PART V      RELEASE OF INFORMATION ..........................................25

PART VI    IMMUNITY ......................................................................26

APPENDIX    ......................................................................................27

   ADDENDUM I......................................................................................27-28

   ADDENDUM 2 .....................................................................................29

   ADDENDUM 3 .....................................................................................30

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL I...............................31

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL II.....................................32

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL III ........................................33

   SAMPLE NOTICE TO LEVEL II AND LEVEL III OFFENDERS ...............................34-35

   SAMPLE FACT SHEET – LEVEL I ............................................................36

   SAMPLE FACT SHEET – LEVEL II............................................................37

   SAMPLE FACT SHEET – LEVEL III...........................................................38

   SAMPLE VICTIM NOTIFICATION LEVEL ...................................................39

## OFFICE OF ATTORNEY GENERAL OF RHODE ISLAND

## SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES

| EFFECTIVE DATE: | DISTRIBUTION: |
|---|---|
| 7/10/03 | |

INTRODUCTION

SCOPE

This policy is intended to ensure that all law enforcement agencies comply with the requirements of Rhode Island General Laws §11-37.1-1 et seq., to provide for the registration of juvenile and adult sexual offenders living in Rhode Island or relocating here from another jurisdiction, and to provide community notification relative to the release of juvenile and adult sexual offenders living in or relocating to Rhode Island.

The Community Notification Provisions of R.I. General Laws §11-37.1 et seq., shall apply to all those juvenile and adult offenders who committed a sexually violent offense on or after July 24, 1996, and who are determined to be at low risk, moderate risk or high risk of re-offense.

**POLICY**

By enacting the Sexual Offender Registration and Community Notification Act, R.I. Gen. Laws §11-37.1-1 et seq., the State of Rhode Island supports the policy that if members of the public are provided adequate notification and information about a sex offender who has been or is about to be released from custody and who lives or will live in or near their neighborhood, the community can develop constructive plans to prepare themselves and their children for the offender's release.

In order to implement this policy, it is the policy of this agency to facilitate the registration of sexual and other predatory offenders. It is further the policy of this agency to provide community notification relative to the release of those offenders as designated by statute, while preserving the legal rights of those offenders.

It is the policy of this agency to provide the maximum information authorized by law, consistent with the requirements of public safety.

4

## STATUTORY AUTHORITY

R.I. General Laws §11-37.1-1 et seq.,                    Sexual Offender Registration and
                                                        Community Notification Act

## PART I DEFINITIONS

*Section 1.0 Definitions*

Wherever used in these Guidelines, the following terms shall be construed as follows:

1.1    The terms "Board", "Board of Review" and "Sex Offender Board of Review", shall mean the "BOR" appointed by the governor pursuant to the RI General Laws §11-37.1-1 et seq.

1.2    The term "Sex Offender Community Notification Unit" shall mean the SOCN unit whose duty and authority is set forth in RI General Law 11-37.1-1 et seq.

1.3    Law Enforcement Agency:

1.3.1    For the purpose of community notification, a law enforcement agency is defined as the agency having primary jurisdiction over the location where the offender expects to reside upon release, and/or where the offender is likely to be encountered.

1.3.2    For all other purposes under this policy, the definition of law enforcement agency includes all agencies which carry on a law enforcement or prosecutorial function including, but not limited to, local, state and federal agencies; and parole, probation and court services agencies.

1.4    The term "sexually violent offense" shall mean and include any violation of RI Gen Laws §11-37-2, §11-37-4, §11-37-6, §11-37-8, §11-37-8.1, §11-37-8.3, §11-5-1 and §11-23-1 or any offense in another jurisdiction which is substantially the equivalent of any offense listed in this subsection and for which the person is or would be required to register under 42 USC §14071 or 18 USC Section 4042 (c).

1.5    The term "sexually violent predator" shall mean a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

1.6    The term "mental abnormality" shall mean a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person a menace to the health and safety of another person.

REPEALED JULY 27, 2006, REPLACED BY PUBLIC LAW 109-248 ADAM WALSH CHILD PROTECTION ACT OF 2006 (§) 34 U.S.C. 20911

5

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT PROBATION CONTRACT

NAME: MICHAEL COGLEY                                      DATE: JULY 13, 2007

| DOCKET | SENTENCE IMPOSED |
|---|---|
| | PROBATION 5YRS EACH COUNT CONCURRENT |

### CONDITIONS OF PROBATION

You have been placed on probation for the period 7/13/07, TO 7/13/12, unless otherwise excused, you are required to return to court on 7/13/12, when a report on your probation progress will be made. If you fail to comply with any of the following conditions of probation now placed on you by this court, you may be ordered to appear again in court after due notice, and the court may change the conditions, extend the probation or impose a sentence. If you should fail to appear you may be defaulted and a warrant for your arrest may be issued.

1) YOU MUST OBEY LOCAL, STATE AND FEDERAL LAWS AND COURT ORDERS.
2) YOU MUST REPORT TO YOUR ASSIGNED PROBATION OFFICER AT SUCH TIME AND PLACE AS HE/SHE REQUIRES.
3) YOU MUST NOTIFY THE PROBATION OFFICER IMMEDIATELY OF A CHANGE OF ADDRESS OR EMPLOYMENT.
4) YOU MUST NOT LEAVE THE COMMONWEALTH WITHOUT THE EXPRESS PERMISSION OF THE PROBATION OFFICE. YOU SHALL EXECUTE AN AGREEMENT TO WAIVE EXTRADITION FORTHWITH.
5) YOU SHALL EITHER PAY THE PROBATION FEE AS DETERMINED BY THE PROBATION DEPARTMENT OR PURSUE COMMUNITY SERVICE AS ORDERED BY THE COURT.
6) YOU SHALL INFORM THE PROBATION DEPARTMENT OF ANY NEW ARREST OR NOTICE OF CRIMINAL CHARGE(S) WITHIN 24 HOURS OF ARRAIGNMENT THEREON.
7) YOU MAY BE VISITED BY A PROBATION OFFICER AT HOME, SCHOOL OR YOUR PLACE OF EMPLOYMENT WITH OR WITHOUT NOTICE.
8) YOU SHALL NOT RECEIVE, POSSESS, CONTROL OR TRANSPORT ANY NON PRESCRIPTION DRUGS, WEAPONS, EXPLOSIVE, FIREARM, OR AMMUNITION.
9) YOU SHALL PAY A VICTIM/WITNESS FEE OF $90.00 UNLESS WAIVED BY THE COURT.

### SPECIAL CONDITIONS OF PROBATION IMPOSED BY THE COURT

10) NO GPS ORDERED PER JUDGE NICKERSON
11) DOES NOT HAVE TO REGISTER AS A SEX OFFENDER PER JUDGE NICKERSON

I have read and understand the above conditions of probation and agree to observe them. I acknowledge receipt of a copy of these conditions. All court ordered payments are to be made payable by money order (NO CASH OR PERSONAL CHECK ACCEPTED), made payable to the Chief Probation Officer. Mail payments to: Barnstable Superior Court, P.O. Box 1240, Barnstable, Ma. 02630.

The Court hereby **ORDERS** the probationer to adhere to the conditions set forth.

_____
Justice of the Superior Court

Probationer

Address & Telephone number

Witness



COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.                              SUPERIOR COURT
                                            No. 06-012-01    *CT I*

                    COMMONWEALTH

*July 18, 2007 - Allowed,*              V.
*by the Court, Nickerson, J.*

                              MICHAEL J. COGLEY
*Asst. Clerk*

## MOTION FOR RELIEF FROM
## SEX OFFENDER REGISTRATION

The defendant in the above case hereby moves pursuant to G.L. c. 6, sec. 178E (f) that he be relieved of the requirement to register under G.L. c. 6, sec. 178C. As reason therefore, the defendant says that he has not been sentenced to confinement on the above offense, and the circumstances of this case and his criminal history demonstrate that he does not pose a risk of a danger to the public.

                              MICHAEL J. COGLEY
                              By his attorney,

                              William W. Robinson
                              Committee for Public Counsel Services
                              Public Defender Division
                              P.O. Box 258
                              Barnstable, MA 02630
                              (508) 362-8101
                              B.B.O. #423460

A true copy, Attest:
                    Clerk

# *SKIM THIS SECTION OR PASS*

**Part I**          ADMINISTRATION OF THE GOVERNMENT

**Title II**         EXECUTIVE AND ADMINISTRATIVE OFFICERS OF THE COMMONWEALTH

**Chapter 6**     THE GOVERNOR, LIEUTENANT GOVERNOR AND COUNCIL, CERTAIN OFFICERS UNDER THE GOVERNOR AND COUNCIL, AND STATE LIBRARY

**Section 178E**  TRANSMISSION OF REGISTRATION DATA TO CRIMINAL HISTORY SYSTEMS BOARD, POLICE DEPARTMENTS, AND FBI

Section 178E. (a) Within 5 days of receiving upon sentence any sex offender required to register under sections 178C to 178Q, inclusive, the agency which has custody of the sex offender, including the department of correction, the department of youth services and each of the houses of correction, shall transmit to the board said sex offender's registration data, which shall include identifying factors, anticipated future residence, any anticipated secondary addresses, offense history, documentation of any treatment received for a mental abnormality, the official version of any sex offenses, the mittimus, any prior incarceration history, and the projected maximum release date and the earliest possible release date for the sex offender. All custodial agencies shall inform the board immediately of any transfers of sex offenders so that there may be contact with the offender throughout the classification process. The bureau shall classify such a sex offender at least 10 days before the offender's earliest

possible release date. The board shall promptly transmit the registration data to the police departments in the municipalities where the sex offender intends to live, maintain any secondary address and work and where the offense was committed and to the Federal Bureau of Investigation. The sex offender shall be informed by, and shall acknowledge in writing to, the agency which has custody of the sex offender of the duty to register in the commonwealth and in any state where he resides, is employed, carries on a vocation or is a student, to verify registration information, to give notice of change of address or intended change of address within the commonwealth or in another state and the penalties for failure to do so and for giving false registration information, and of his right to submit to the board, according to section 178L, documentary evidence relative to his risk of reoffense, the degree of dangerousness posed to the public and of his duty to register under this section. If such sex offender is a juvenile at the time of such notification, notification shall also be mailed to such sex offender's legal guardian or agency having custody of the juvenile in the absence of a legal guardian and his most recent attorney of record. The agency shall transmit such acknowledgment to the board within ten days of receipt of such acknowledgment. Not later than two days before his release from custody, a sex offender shall register by mailing to the board on a form approved by the board and signed under the pains and penalties of perjury, the sex offender's name, date of birth, home address or intended home address, any secondary addresses or intended secondary addresses, work address or intended work address and, if the sex offender is or intends to become a part-time or full-time employee of an institution of higher learning, the name and address of the institution, and, if the sex offender is or intends to become a part-time or full-time student of an

institution of higher learning, the name and address of the institution. No sex offender shall be released from custody unless such registration has been filled out, signed and mailed to the board.

(b) An agency that has supervision of a sex offender required to register pursuant to sections 178C to 178P, inclusive, on probation or parole shall, within five days of assuming supervision of such sex offender, transmit to the board such sex offender's registration data which, for purposes of this paragraph, shall include identifying factors, residential address or anticipated future residence, secondary addresses or anticipated secondary addresses, work address, offense history, documentation of any sex offender treatment and documentation of any treatment received for a mental abnormality. The agency shall also report any changes of address of any sex offender required to register pursuant to said sections 178E to 178P, inclusive, within its jurisdiction to the board. The board shall promptly transmit the registration data to the police departments in the municipalities where such sex offender intends to live and work and where the offense was committed and to the Federal Bureau of Investigation. The sex offender shall be informed by, and shall acknowledge in writing to, the agency which has custody of the sex offender of the duty to register in the commonwealth and in any state where he resides, has any secondary addresses, is employed, carries on a vocation or is a student, to verify registration information and to give notice of change of address, or any secondary addresses or intended change of address within the commonwealth or in another state and the penalties for failure to do so and for giving false registration information, and of his right to submit to the board, according to section 178L, documentary evidence relative to his risk of reoffense, the degree of dangerousness posed to the public and his duty to register under this

section. If such sex offender is a juvenile at the time of such notification, notification shall also be mailed to such sex offender's legal guardian or agency having custody of the juvenile in the absence of a legal guardian, and his most recent attorney of record. A sex offender shall, within two days of receiving such notice, register by mailing to the board on a form approved by the board and signed under the pains and penalties of perjury, the sex offender's name, date of birth, home address or intended home address, any secondary addresses or intended secondary addresses, work address or intended work address and, if the sex offender is or intends to become a part-time or full-time employee of an institution of higher learning, the name and address of the institution, and, if the sex offender is or intends to become a part-time or full-time student of an institution of higher learning, the name and address of the institution.

(c) Any court which enters a conviction for a sex offense or adjudication as a youthful offender or as a delinquent juvenile by reason of a sex offense, but does not impose a sentence of confinement of 90 days or more to be served immediately shall inform the sex offender and require the sex offender to acknowledge, in writing, his duty to register in the commonwealth and in any state where he resides, is employed, carries on a vocation or is a student, to verify registration information and to give notice of change of address or intended change of address within the commonwealth or in another state and the penalties for failure to do so and for giving false registration information, and of his right to submit to the board, according to section 178L, documentary evidence relative to his risk of reoffense, the degree of dangerousness posed to the public and of his duty to register under this section. If such sex offender is a juvenile at the time of such adjudication, the legal guardian or agency having custody of the juvenile and his most recent attorney of record shall also

be required to acknowledge, in writing, such information. The court shall cause such sex offender's registration data which, for purposes of this paragraph, shall include identifying factors, anticipated future residence, any anticipated secondary addresses, offense history and documentation of any treatment received for a mental abnormality to be transmitted to the board within five days of sentencing. The board shall promptly transmit the registration data to the police departments in the municipalities where such sex offender intends to live and work and where the offense was committed and to the Federal Bureau of Investigation. A sex offender shall, within two days of receiving such notice or of release from confinement, whichever is later, register by mailing to the board on a form approved by the board and signed under the pains and penalties of perjury, the sex offender's name, date of birth, home address or intended home address, any secondary addresses or intended secondary addresses, work address or intended work address and, if the sex offender is or intends to become a part-time or full-time employee of an institution of higher learning, the name and address of the institution, and, if the sex offender is or intends to become a part-time or full-time student of an institution of higher learning, the name and address of the institution.

(d) Any court which accepts a plea for a sex offense shall inform the sex offender prior to acceptance and require the sex offender to acknowledge, in writing, that such plea may result in such sex offender being subject to the provisions of sections 178C to 178P, inclusive. Failure to so inform the sex offender shall not be grounds to vacate or invalidate the plea.

(e) Upon written motion of the commonwealth, a court which enters a conviction or adjudication of delinquent or as a youthful offender may, at the time of sentencing, having determined that the circumstances of the

offense in conjunction with the offender's criminal history does not indicate a risk of reoffense or a danger to the public, find that a sex offender shall not be required to register under sections 178C to 178P, inclusive. Such motion by the commonwealth shall state the reasons for such motion with specificity. The court may not make such a finding if the sex offender has been determined to be a sexually violent predator; has been convicted of two or more sex offenses defined as sex offenses pursuant to the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. section 14071, committed on different occasions; has been convicted of a sex offense involving a child or a sexually violent offense; or if the sex offender is otherwise subject to minimum or lifetime registration requirements as determined by the board pursuant to section 178D.

(f) In the case of a sex offender who has been convicted of a sex offense or adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense, on or after December 12, 1999, and who has not been sentenced to immediate confinement, the court shall, within 14 days of sentencing, determine whether the circumstances of the offense in conjunction with the offender's criminal history indicate that the sex offender does not pose a risk of reoffense or a danger to the public. If the court so determines, the court shall relieve such sex offender of the obligation to register under sections 178C to 178P, inclusive. The court may not make such a determination or finding if the sex offender has been determined to be a sexually violent predator; has been convicted of two or more sex offenses defined as sex offenses pursuant to the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. section 14071, committed on different occasions; has been convicted of a sex offense involving a child or a

sexually violent offense; or if the sex offender is otherwise subject to minimum or lifetime registration requirements as determined by the board pursuant to section 178D.

(g) A sex offender who moves into the commonwealth from another jurisdiction shall, within two days of moving into the commonwealth, register by mailing to the board on a form approved by the board and signed under the pains and penalties of perjury, the sex offender's name, date of birth, home address or intended home address, any secondary addresses or intended secondary addresses, work address or intended work address and, if the sex offender is or intends to become a part-time or full-time employee of an institution of higher learning, the name and address of the institution, and, if the sex offender is or intends to become a part-time or full-time student of an institution of higher learning, the name and address of the institution. The board shall transmit the registration data to the police department in the municipality where such sex offender intends to live and work and, if the sex offender intends to work at or become a student at an institution of higher learning, to the police departments in the municipalities where the sex offender will work or attend such institution and shall transmit the same to the Federal Bureau of Investigation.

(h) A sex offender required to register pursuant to sections 178C to 178P, inclusive, who intends to move to a different city or town within the commonwealth shall, not later than ten days prior to establishing such new residence, register by mailing to the board on a form approved by the board and signed under the pains and penalties of perjury, the sex offender's name, date of birth, home address or intended home address, any secondary addresses or intended secondary addresses, work address or intended work address and, if the sex offender is or intends to become

a part-time or full-time employee of an institution of higher learning, the name and address of the institution, and, if the sex offender is or intends to become a part-time or full-time student of an institution of higher learning, the name and address of the institution. The board shall transmit notice of such change of address to all the police departments in the municipalities where the offense was committed, where the sex offender last registered and where the sex offender intends to live or attend an institution of higher learning and shall transmit the same to the Federal Bureau of Investigation. A sex offender required to register pursuant to said sections 178C to 178P, inclusive, who intends to change his address within a city or town shall notify the board in writing not later than ten days prior to establishing such new residence. The board shall transmit notice of the change of address to the police departments within such city or town, in the municipality where the offense was committed and to the Federal Bureau of Investigation.

(i) A sex offender required to register pursuant to sections 178C to 178P, inclusive, who intends to move out of the commonwealth shall notify the board not later than ten days before leaving the commonwealth. The board shall transmit notice of the change of address to the police departments in the municipalities where such sex offender last registered, where the offense was committed and to the Federal Bureau of Investigation. The board shall notify such sex offender of the duty to register in the new jurisdiction and shall forward a copy of his registration data to the appropriate law enforcement agency in such new jurisdiction.

(j) A sex offender required to register pursuant to sections 178C to 178P, inclusive, who intends to change his work address shall notify the board in writing not later than ten days prior to establishing the new work

address. The board shall transmit notice of the change of address and, if the sex offender is or intends to become employed part-time or full-time at an institution of higher learning, the name and address of the institution to the police department in the municipalities where such sex offender previously worked, where such sex offender intends to work, where such sex offender resides or intends to reside and where the offense was committed. The board shall transmit notice of the change of address to the Federal Bureau of Investigation.

(k) The registrar of motor vehicles shall inform a person applying for or renewing a license to operate a motor vehicle that he has a duty to register with the board if such person is a sex offender, pursuant to regulations established by the board.

(l) Except as hereinbefore provided, a sex offender residing or working in the commonwealth or working at or attending an institution of higher learning in the commonwealth shall, within ten days of the effective date of this section, register by mailing to the board on a form approved by the board and signed under the pains and penalties of perjury, the sex offender's name, date of birth, home address or intended home address, any secondary addresses or intended secondary addresses, work address or intended work address and, if the sex offender is or intends to become a part-time or full-time employee of an institution of higher learning, the name and address of the institution, and, if the sex offender is or intends to become a part-time or full-time student of an institution of higher learning, the name and address of the institution. The board shall promptly transmit the registration data to the police departments where the sex offender intends to live and work, where the offense was committed and, if the sex offender intends to work at or become a student at an institution of higher learning, to the police departments in the

municipalities where the sex offender will work or attend such institution and to the Federal Bureau of Investigation. The board shall send written notification of the requirements of sections 178C to 178P, inclusive, to the last known address of all sex offenders residing in the commonwealth who, prior to the effective date of this section, have been released from all custody and supervision. If any such sex offender is a juvenile at the time of such notification, notification shall also be mailed to such sex offender's legal guardian or the agency having custody of the juvenile in the absence of a legal guardian and his most recent attorney of record.

(m) Upon registering, verifying registration information or giving notice of change of address or intended change of address under this section, a sex offender shall provide independent written verification of the address at which he is registered or, if changing address, will be registered.

(n) Registration data received by the board and disseminated to law enforcement pursuant to this section shall not be disseminated to the public except in accordance with sections 178D, 178I, 178J and 178K.

(o) A sex offender who plans to work at or attend an institution of higher learning part-time or full-time in the commonwealth shall, within 10 days prior to commencing employment or enrollment in classes at an institution of higher learning, register by mailing to the board on a form approved by the board and signed under the pains and penalties of perjury, the sex offender's name, date of birth, home address or intended home address, any secondary addresses or intended secondary addresses, work address or intended work address, and the name and address of the institution of higher learning. The board shall transmit notice of such change of address to all police departments in the municipalities where

the sex offender plans to work at or attend an institution of higher learning and shall transmit the same to the Federal Bureau of Investigation.

(p) A sex offender required to register pursuant to section 178C to 178F, inclusive, who intends to transfer from the institution of higher learning he is attending or stop attending shall notify the board in writing not later than 10 days before leaving the present institution of higher learning and shall provide the board with the name and address of the new institution of higher learning, if applicable. The board shall transmit notice of any such change of address to all police departments in the municipalities where the sex offender previously attended an institution of higher learning and, if applicable, to the police department in the municipality where the sex offender plans to attend an institution of higher learning. The board shall transmit notice of any change of address for the institution of higher learning to the Federal Bureau of Investigation.

(q) Any nonresident person enrolled on a full-time or part-time basis, in any public or private education institution in the commonwealth, including any secondary school, trade or professional institution, shall register with the board if such person is required to register as a sex offender in the state in which he resides. Such student shall, within 10 days of attending such institution, register by mailing to the board on a form approved by the board and signed under the pains and penalties of perjury, the student's name, date of birth, home address, any secondary addresses and the name and address of the educational institution he is attending.

| **Part I** | ADMINISTRATION OF THE GOVERNMENT |
|---|---|
| **Title II** | EXECUTIVE AND ADMINISTRATIVE OFFICERS OF THE COMMONWEALTH |
| **Chapter 6** | THE GOVERNOR, LIEUTENANT GOVERNOR AND COUNCIL, CERTAIN OFFICERS UNDER THE GOVERNOR AND COUNCIL, AND STATE LIBRARY |
| **Section 178P** | FAILURE TO COMPLY WITH REGISTRATION REQUIREMENTS; RIGHT TO ARREST; RISK OF REOFFENSE INFORMATION DISCLOSURE |

Section 178P. Whenever a police officer has probable cause to believe that a sex offender has failed to comply with the registration requirements of sections 178C to 178P, inclusive, such officer shall have the right to arrest such sex offender without a warrant and to keep such sex offender in custody.

Whenever a police officer, district attorney or agent, employee or representative of the executive office of health and human services has information indicating that a sex offender is at risk to reoffend, the police department, district attorney or, to the extent permitted by federal law, the executive office of health and human services agent, employee or representative shall forward that information to the board; but a police department or district attorney shall not forward information to the board that the police department or district attorney believes will compromise

an ongoing investigation. The board, after consulting the executive office of health and human services, shall adopt regulations to provide specific guidance concerning the type and location of information that might indicate that a sex offender is at risk to reoffend and the circumstances that require disclosure.

*DATE OF BIRTH OF CONSENSUAL VICTIM*



VICTIM 05-19-1989

COGLEY 08/06/1985

3 YEARS, 9 MONTHS, 13 DAYS

H. R. 4472

# One Hundred Ninth Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Tuesday,*
*the third day of January, two thousand and six*

## An Act

To protect children from sexual exploitation and violent crime, to prevent child
abuse and child pornography, to promote Internet safety, and to honor the memory
of Adam Walsh and other child crime victims.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Adam Walsh
Child Protection and Safety Act of 2006".

(b) TABLE OF CONTENTS.—The table of contents for this Act
is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. In recognition of John and Revé Walsh on the occasion of the 25th anniversary of Adam Walsh's abduction and murder.

TITLE I—SEX OFFENDER REGISTRATION AND NOTIFICATION ACT

Sec. 101. Short title.
Sec. 102. Declaration of purpose.
Sec. 103. Establishment of program.

Subtitle A—Sex Offender Registration and Notification

Sec. 111. Relevant definitions, including Amie Zyla expansion of sex offender definition and expanded inclusion of child predators.
Sec. 112. Registry requirements for jurisdictions.
Sec. 113. Registry requirements for sex offenders.
Sec. 114. Information required in registration.
Sec. 115. Duration of registration requirement.
Sec. 116. Periodic in person verification.
Sec. 117. Duty to notify sex offenders of registration requirements and to register.
Sec. 118. Public access to sex offender information through the Internet.
Sec. 119. National Sex Offender Registry.
Sec. 120. Dru Sjodin National Sex Offender Public Website.
Sec. 121. Megan Nicole Kanka and Alexandra Nicole Zapp Community Notification Program.
Sec. 122. Actions to be taken when sex offender fails to comply.
Sec. 123. Development and availability of registry management and website software.
Sec. 124. Period for implementation by jurisdictions.
Sec. 125. Failure of jurisdiction to comply.
Sec. 126. Sex Offender Management Assistance (SOMA) Program.
Sec. 127. Election by Indian tribes.
Sec. 128. Registration of sex offenders entering the United States.
Sec. 129. Repeal of predecessor sex offender program.
Sec. 130. Limitation on liability for the National Center for Missing and Exploited Children.
Sec. 131. Immunity for good faith conduct.

Subtitle B—Improving Federal Criminal Law Enforcement To Ensure Sex Offender Compliance With Registration and Notification Requirements and Protection of Children From Violent Predators

Sec. 141. Amendments to title 18, United States Code, relating to sex offender registration.

P.R. 82 of 364

H. R. 4472—5

(17) Samantha Runnion, who was 5 years old, was abducted, sexually assaulted, and murdered in California on July 15, 2002.

**SEC. 103. ESTABLISHMENT OF PROGRAM.**

This Act establishes the Jacob Wetterling, Megan Nicole Kanka, and Pam Lychner Sex Offender Registration and Notification Program.

# Subtitle A—Sex Offender Registration and Notification

**SEC. 111. RELEVANT DEFINITIONS, INCLUDING AMIE ZYLA EXPANSION OF SEX OFFENDER DEFINITION AND EXPANDED INCLUSION OF CHILD PREDATORS.**

In this title the following definitions apply:

(1) SEX OFFENDER.—The term "sex offender" means an individual who was convicted of a sex offense.

(2) TIER I SEX OFFENDER.—The term "tier I sex offender" means a sex offender other than a tier II or tier III sex offender.

(3) TIER II SEX OFFENDER.—The term "tier II sex offender" means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:

(i) sex trafficking (as described in section 1591 of title 18, United States Code);

(ii) coercion and enticement (as described in section 2422(b) of title 18, United States Code);

(iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) of title 18, United States Code;

(iv) abusive sexual contact (as described in section 2244 of title 18, United States Code);

(B) involves—

(i) use of a minor in a sexual performance;

(ii) solicitation of a minor to practice prostitution; or

(iii) production or distribution of child pornography; or

(C) occurs after the offender becomes a tier I sex offender.

(4) TIER III SEX OFFENDER.—The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:

(i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of title 18, United States Code); or

(ii) abusive sexual contact (as described in section 2244 of title 18, United States Code) against a minor who has not attained the age of 13 years;

H. R. 4472—6

(B) involves kidnapping of a minor (unless committed by a parent or guardian); or

(C) occurs after the offender becomes a tier II sex offender.

(5) AMIE ZYLA EXPANSION OF SEX OFFENSE DEFINITION.—

(A) GENERALLY.—Except as limited by subparagraph (B) or (C), the term "sex offense" means—

(i) a criminal offense that has an element involving a sexual act or sexual contact with another;

(ii) a criminal offense that is a specified offense against a minor;

(iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of title 18, United States Code) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of title 18, United States Code;

(iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105–119 (10 U.S.C. 951 note); or

(v) an attempt or conspiracy to commit an offense described in clauses (i) through (iv).

(B) FOREIGN CONVICTIONS.—A foreign conviction is not a sex offense for the purposes of this title if it was not obtained with sufficient safeguards for fundamental fairness and due process for the accused under guidelines or regulations established under section 112.

(C) OFFENSES INVOLVING CONSENSUAL SEXUAL CONDUCT.—An offense involving consensual sexual conduct is not a sex offense for the purposes of this title if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim.

(6) CRIMINAL OFFENSE.—The term "criminal offense" means a State, local, tribal, foreign, or military offense (to the extent specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105–119 (10 U.S.C. 951 note)) or other criminal offense.

(7) EXPANSION OF DEFINITION OF "SPECIFIED OFFENSE AGAINST A MINOR" TO INCLUDE ALL OFFENSES BY CHILD PREDATORS.—The term "specified offense against a minor" means an offense against a minor that involves any of the following:

(A) An offense (unless committed by a parent or guardian) involving kidnapping.

(B) An offense (unless committed by a parent or guardian) involving false imprisonment.

(C) Solicitation to engage in sexual conduct.

(D) Use in a sexual performance.

(E) Solicitation to practice prostitution.

(F) Video voyeurism as described in section 1801 of title 18, United States Code.

(G) Possession, production, or distribution of child pornography.

(H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.

(I) Any conduct that by its nature is a sex offense against a minor.

---

**34 USC 20911: Relevant definitions, including Amie Zyla expansion of sex offender definition and expanded inclusion of child predators**
Text contains those laws in effect on February 3, 2022

**From Title 34-CRIME CONTROL AND LAW ENFORCEMENT**
    Subtitle II-Protection of Children and Other Persons
    CHAPTER 209-CHILD PROTECTION AND SAFETY
    SUBCHAPTER I-SEX OFFENDER REGISTRATION AND NOTIFICATION
    Part A-Sex Offender Registration and Notification
**Jump To:**
    <u>Source Credit</u>
    <u>Miscellaneous</u>
    <u>References In Text</u>
    <u>Codification</u>

---

## §20911. Relevant definitions, including Amie Zyla expansion of sex offender definition and expanded inclusion of child predators

In this subchapter the following definitions apply:

**(1) Sex offender**

The term "sex offender" means an individual who was convicted of a sex offense.

**(2) Tier I sex offender**

The term "tier I sex offender" means a sex offender other than a tier II or tier III sex offender.

**(3) Tier II sex offender**

The term "tier II sex offender" means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and-

    (A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:

        (i) sex trafficking (as described in section 1591 of title 18);
        (ii) coercion and enticement (as described in section 2422(b) of title 18);
        (iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) [1] of title 18;
        (iv) abusive sexual contact (as described in section 2244 of title 18);

    (B) involves-
        (i) use of a minor in a sexual performance;
        (ii) solicitation of a minor to practice prostitution; or
        (iii) production or distribution of child pornography; or

    (C) occurs after the offender becomes a tier I sex offender.

**(4) Tier III sex offender**

The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and-

    (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:

        (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of title 18); or
        (ii) abusive sexual contact (as described in section 2244 of title 18) against a minor who has not attained the age of 13 years;

    (B) involves kidnapping of a minor (unless committed by a parent or guardian); or
    (C) occurs after the offender becomes a tier II sex offender.

**(5) Amie Zyla expansion of sex offense definition**

    **(A) Generally**

    Except as limited by subparagraph (B) or (C), the term "sex offense" means-
        (i) a criminal offense that has an element involving a sexual act or sexual contact with another;
        (ii) a criminal offense that is a specified offense against a minor;

(iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of title 18;
(iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105–119 (10 U.S.C. 951 note); or
(v) an attempt or conspiracy to commit an offense described in clauses (i) through (iv).

**(B) Foreign convictions**
A foreign conviction is not a sex offense for the purposes of this subchapter if it was not obtained with sufficient safeguards for fundamental fairness and due process for the accused under guidelines or regulations established under section 20912 of this title.

**(C) Offenses involving consensual sexual conduct**
An offense involving consensual sexual conduct is not a sex offense for the purposes of this subchapter if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim.

**(6) Criminal offense**
The term "criminal offense" means a State, local, tribal, foreign, or military offense (to the extent specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105–119 (10 U.S.C. 951 note)) or other criminal offense.

**(7) Expansion of definition of "specified offense against a minor" to include all offenses by child predators**
The term "specified offense against a minor" means an offense against a minor that involves any of the following:
(A) An offense (unless committed by a parent or guardian) involving kidnapping.
(B) An offense (unless committed by a parent or guardian) involving false imprisonment.
(C) Solicitation to engage in sexual conduct.
(D) Use in a sexual performance.
(E) Solicitation to practice prostitution.
(F) Video voyeurism as described in section 1801 of title 18.
(G) Possession, production, or distribution of child pornography.
(H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.
(I) Any conduct that by its nature is a sex offense against a minor.

**(8) Convicted as including certain juvenile adjudications**
The term "convicted" or a variant thereof, used with respect to a sex offense, includes adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse (as described in section 2241 of title 18), or was an attempt or conspiracy to commit such an offense.

**(9) Sex offender registry**
The term "sex offender registry" means a registry of sex offenders, and a notification program, maintained by a jurisdiction.

**(10) Jurisdiction**
The term "jurisdiction" means any of the following:
(A) A State.
(B) The District of Columbia.
(C) The Commonwealth of Puerto Rico.
(D) Guam.
(E) American Samoa.
(F) The Northern Mariana Islands.
(G) The United States Virgin Islands.
(H) To the extent provided and subject to the requirements of section 20929 of this title, a federally recognized Indian tribe.

**(11) Student**
The term "student" means an individual who enrolls in or attends an educational institution, including (whether public or private) a secondary school, trade or professional school, and institution of higher education.

**(12) Employee**
The term "employee" includes an individual who is self-employed or works for any other entity, whether compensated or not.

**(13) Resides**
The term "resides" means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives.

**(14) Minor**
The term "minor" means an individual who has not attained the age of 18 years.

P.R. 86 of 364

( Pub. L. 109–248, title I, §111, July 27, 2006, 120 Stat. 591 .)

#### Editorial Notes

### References in Text

This subchapter, referred to in text, was in the original "this title", meaning title I of Pub. L. 109–248, July 27, 2006, 120 Stat. 590 , known as the Sex Offender Registration and Notification Act. For complete classification of title I to the Code, see Short Title of 2006 Act note set out under section 10101 of this title and Tables.

### Codification

Section was formerly classified to section 16911 of Title 42, The Public Health and Welfare, prior to editorial reclassification and renumbering as this section.

<sup>1</sup> *So in original. The second closing parenthesis probably should follow "18".*

> **34 USC 20927: Failure of jurisdiction to comply**
>
> **From Title 34-CRIME CONTROL AND LAW ENFORCEMENT**
>      Subtitle II-Protection of Children and Other Persons
>      CHAPTER 209-CHILD PROTECTION AND SAFETY
>      SUBCHAPTER I-SEX OFFENDER REGISTRATION AND NOTIFICATION
>      Part A-Sex Offender Registration and Notification
> **Jump To:**
>      **Source Credit**
>      **Miscellaneous**
>      **References In Text**
>      **Codification**

## §20927. Failure of jurisdiction to comply

**(a) In general**

For any fiscal year after the end of the period for implementation, a jurisdiction that fails, as determined by the Attorney General, to substantially implement this subchapter shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction under subpart 1 of part E of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3750 et seq.).[1]

**(b) State constitutionality**

**(1) In general**

When evaluating whether a jurisdiction has substantially implemented this subchapter, the Attorney General shall consider whether the jurisdiction is unable to substantially implement this subchapter because of a demonstrated inability to implement certain provisions that would place the jurisdiction in violation of its constitution, as determined by a ruling of the jurisdiction's highest court.

**(2) Efforts**

If the circumstances arise under paragraph (1), then the Attorney General and the jurisdiction shall make good faith efforts to accomplish substantial implementation of this subchapter and to reconcile any conflicts between this subchapter and the jurisdiction's constitution. In considering whether compliance with the requirements of this subchapter would likely violate the jurisdiction's constitution or an interpretation thereof by the jurisdiction's highest court, the Attorney General shall consult with the chief executive and chief legal officer of the jurisdiction concerning the jurisdiction's interpretation of the jurisdiction's constitution and rulings thereon by the jurisdiction's highest court.

**(3) Alternative procedures**

If the jurisdiction is unable to substantially implement this subchapter because of a limitation imposed by the jurisdiction's constitution, the Attorney General may determine that the jurisdiction is in compliance with this chapter if the jurisdiction has made, or is in the process of implementing [2] reasonable alternative procedures or accommodations, which are consistent with the purposes of this chapter.

**(4) Funding reduction**

If a jurisdiction does not comply with paragraph (3), then the jurisdiction shall be subject to a funding reduction as specified in subsection (a).

**(c) Reallocation**

Amounts not allocated under a program referred to in this section to a jurisdiction for failure to substantially implement this subchapter shall be reallocated under that program to jurisdictions that have not failed to substantially implement this subchapter or may be reallocated to a jurisdiction from which they were withheld to be used solely for the purpose of implementing this subchapter.

**(d) Rule of construction**

The provisions of this subchapter that are cast as directions to jurisdictions or their officials constitute, in relation to States, only conditions required to avoid the reduction of Federal funding under this section.

( Pub. L. 109–248, title I, §125, July 27, 2006, 120 Stat. 598 .)

### EDITORIAL NOTES

### REFERENCES IN TEXT

This subchapter, referred to in text, was in the original "this title", meaning title I of Pub. L. 109–248, July 27, 2006, 120 Stat. 590 , known as the Sex Offender Registration and Notification Act. For complete classification of title I to the Code, see Short Title of 2006 Act note set out under section 10101 of this title and Tables.

The Omnibus Crime Control and Safe Streets Act of 1968, referred to in subsec. (a), is Pub. L. 90–351, June 19, 1968, 82 Stat. 197 . Subpart 1 of part E of title I of the Act was classified generally to part A (§3750 et seq.) of subchapter V of chapter 46 of Title 42, The Public Health and Welfare, prior to editorial reclassification as part A (§10151 et seq.) of subchapter V of chapter 101 of this title. For complete classification of this Act to the Code, see Short Title of 1968 Act note set out under section 10101 of this title and Tables.

This chapter, referred to in subsec. (b)(3), was in the original "this Act", meaning Pub. L. 109–248, July 27, 2006, 120 Stat. 587 , known as the Adam Walsh Child Protection and Safety Act of 2006. For complete classification of this Act to the Code, see Short Title of 2006 Act note set out under section 10101 of this title and Tables.

## CODIFICATION

Section was formerly classified to section 16925 of Title 42, The Public Health and Welfare, prior to editorial reclassification and renumbering as this section.

[1] See References in Text note below.

[2] So in original. Probably should be followed by a comma.

 OFFICE OF JUSTICE PROGRAMS

WWW.OJP.USDOJ.GOV

## SMART

**Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking**

search        go

HOME | FAQS | CONTACT US

## Byrne JAG Grant Reductions Under SORNA

34 U.S.C. § 20927(a) sets forth a penalty for jurisdictions that fail to substantially implement Title I of the Adam Walsh Child Protection and Safety Act of 2006, the Sex Offender Registration and Notification Act (SORNA).

> *For any fiscal year after the end of the period for implementation, a jurisdiction that fails, as determined by the Attorney General, to substantially implement this title shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction under subpart 1 of part E of title 1 of the Omnibus Crime Control and Safe Streets Act of 1968.*

Thus, registration jurisdictions that fail to substantially implement SORNA are subject to a 10 percent penalty reduction in its Byrne Justice Assistance Grant (Byrne JAG) formula funds.

Each of the 50 states, five principal territories, the District of Columbia and some federally recognized Indian tribes currently qualify for annual allocations under the Byrne JAG formula and therefore are subject to the reduction if they fail to substantially implement the requirements of SORNA

Calculating allocations under the Byrne JAG formula is a multistep process. First, initial allocations to the states, territories and the District of Columbia are calculated based on population and violent crime statistics, and certain adjustments are made to ensure the minimum amount of funds for each state, territory and the District of Columbia. These initial allocations determine the amount that goes to each jurisdiction, but not the amount that goes to the jurisdiction's government itself. Rather, of this initial allocation 60 percent goes directly to the jurisdiction, whereas 40 percent goes to qualifying units of local government and tribes. If a jurisdiction fails to substantially implement SORNA, the 10 percent reduction in their Byrne JAG formula funds will be applied to the 60 percent in direct grants to states, and not the 40 percent in grants to local governments and tribes within the jurisdiction. More information about the penalty calculation is at https://www.bja.gov/Funding/JAGFAQ.pdf.

For practical purposes, the penalty will be applied in the fiscal year following the deadline for implementation. For example, if a jurisdiction has been found after review by the SMART Office to have not substantially implemented SORNA or is no longer substantially implementing SORNA in 2018, the reduction will be 10 percent of the FY 2019 Byrne JAG award, imposed when the FY 2019 awards are made.

For funds withheld, SORNA provides reallocation (34 U.S.C. § 20927(c))

> *REALLOCATION. Amounts not allocated under a program referred to in this section to a jurisdiction for failure to substantially implement this title shall be reallocated under that program to jurisdictions that have not failed to substantially implement this title or may be reallocated to a jurisdiction from which they were withheld to be used solely for the purpose of implementing this title.*

For any jurisdiction that has been penalized and wishes to have these funds reallocated to be used solely for implementation of SORNA, that jurisdiction must submit its request in writing to the SMART Office. Requests must include a detailed plan and timeline for substantial implementation. The final decision on such requests will be made by the Assistant Attorney General for the Office of Justice Programs, U.S. Department of Justice.

Jurisdictions that implement SORNA have an ongoing obligation to maintain that status, which will be determined annually by the SMART Office. This process need not be onerous, particularly if the jurisdiction has made no significant changes to its relevant legislation or sex offender registration and notification system. The Byrne JAG reduction penalty may be applied each year a jurisdiction has not implemented SORNA or has been determined by the SMART Office to no longer be substantially implementing SORNA

### Tribal Jurisdictions

A number of Indian tribes qualify for direct awards under the Byrne JAG formula. The eligibility for Byrne JAG awards to tribes is determined by reference to the share of the average violent crime within the state in which the tribe is located. If a tribe that elects to implement SORNA is also the recipient of a Byrne JAG formula award for any given year, that tribe does potentially face the 10 percent reduction of that award.

However, there is a separate and significant penalty for tribes; that is, a tribe's registration and notification obligations could be delegated to the state in which the tribe's lands are located if the tribe has been found to have not substantially implemented SORNA. As a result, there are two separate penalties that tribes could face; however, the SMART Office has determined that these tribes will not be doubly penalized. The SMART Office will work with tribes to determine whether implementation is likely to occur within a reasonable amount of time, or whether delegation to the state is appropriate. If it is determined that delegation to the state is appropriate, no Byrne JAG penalty will be imposed on the tribe.

Further, if a tribe has either voluntarily or involuntarily delegated its registration and notification obligation to the state, it no longer functions as a SORNA jurisdiction and will no longer be subjected to these penalties.

To download all of the documents, click here.

P.R. 90 of 364



***ACTIVE MANUAL USE FROM 11/23/2011 - 7/11/2012***

# SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES
## R.I. GENERAL LAWS §11-37.1-1 ET SEQ.

### STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

### RHODE ISLAND PAROLE BOARD
### SEX OFFENDER COMMUNITY NOTIFICATION UNIT

### SEX OFFENDER BOARD OF REVIEW 2011

Title 242 Parole Board
Chapter XXX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Subchapter XX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Part 2745 2011 Sex Offender Community Notification Guidelines and Policy Statement
Type of Filing Amendment
Regulation Status Inactive
Effective 11/23/2011 to 07/11/2012
Regulation Authority:                    https://rules.sos.ri.gov/Regulations/part/242-XXX-XX-2745?reg_id=6477

11-37.1
Purpose and Reason:                    **Board Members**

Annual Public Hearing/Open Meeting

| | |
|---|---|
| **Brandon Bell, Esq.** | **Jason Lyon, LICSW** |
| **Meredith Costa** | **Bernard Manchester** |
| **Detective Corporal Diane Dougherty** | **Kendra Marasco, MSW** |
| **Robert Humphrey, Esq.** | **JoAnne Waite, LMFT** |

P.R. 92 of 364

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................4

SCOPE ...............................................................................................................4

POLICY...............................................................................................................4

STATUTORY AUTHORITY.................................................................................4

PART I       DEFINITIONS..................................................................................5

  §1.0       DEFINITIONS...............................................................................5-8

PART II      DUTIES OF BOARD OF REVIEW, PAROLE BOARD AND
             LAW ENFORCEMENT OFFENDERS IN CUSTODY .............9-10

  §2.0       DUTIES OF THE BOARD OF REVIEW, ENUMERATED OFFENSES, PAROLE
             BOARD AND LAW ENFORCEMENT OFFICERS - OFFENDERS IN
             CUSTODY..........................................................................................9-10

  §3.0       SEX OFFENDER BOARD OF REVIEW.......................................11-13

  §4.0       DUTIES OF LAW ENFORCEMENT AGENCIES ........................13-15

PART III     COMMUNITY NOTIFICATION PLAN GUIDELINES FOR
             LEVELS I, II AND III ........................................................................15

  §5.0       RISK LEVEL I – LOW RISK SEXUAL OFFENDERS............................15

  §6.0       RISK LEVEL II – MODERATE RISK SEXUAL OFFENDERS IN
             RESIDENTIAL FACILITIES............................................................16

  §7.0       RISK LEVEL II (1) – MODERATE RISK SEXUAL OFFENDERS NOT
             PLACED IN A TREATMENT FACILITY....................................16-21

  §8.0       RISK LEVEL III – HIGH RISK SEXUAL OFFENDERS IN RESIDENTIAL
             FACILITIES ...............................................................................21-22

  §9.0       RISK LEVEL III (A) – HIGH RISK SEXUAL OFFENDERS NOT PLACED
             IN A TREATMENT FACILITY ......................................................22-23

  §10.0      EXCHANGE OF INFORMATION BETWEEN LAW ENFORCEMENT
             AGENCIES................................................................................... 23

PART IV      RE-NOTIFICATION ........................................................................24

PART V       RELEASE OF INFORMATION .........................................................25

PART VI     IMMUNITY ................................................................26

APPENDIX     ....................................................................27

   ADDENDUM I.................................................................................27-28

   ADDENDUM 2 ...............................................................................29

   ADDENDUM 3 ............................................................................30

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL I.............................31

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL II...................................32

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL III .......................................33

   SAMPLE NOTICE TO LEVEL II AND LEVEL III OFFENDERS ...............................34-35

   SAMPLE FACT SHEET – LEVEL I .......................................................36

   SAMPLE FACT SHEET – LEVEL II.........................................................37

   SAMPLE FACT SHEET – LEVEL III..........................................................38

   SAMPLE VICTIM NOTIFICATION LEVEL ..................................................39

**OFFICE OF ATTORNEY GENERAL OF RHODE ISLAND**

**SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES**

| EFFECTIVE DATE: | DISTRIBUTION: |
|---|---|
| 7/10/03 | |

## INTRODUCTION

### SCOPE

This policy is intended to ensure that all law enforcement agencies comply with the requirements of Rhode Island General Laws §11-37.1-1 et seq., to provide for the registration of juvenile and adult sexual offenders living in Rhode Island or relocating here from another jurisdiction, and to provide community notification relative to the release of juvenile and adult sexual offenders living in or relocating to Rhode Island.

The Community Notification Provisions of R.I. General Laws §11-37.1 et seq., shall apply to all those juvenile and adult offenders who committed a sexually violent offense on or after July 24, 1996, and who are determined to be at low risk, moderate risk or high risk of re-offense.

### POLICY

By enacting the Sexual Offender Registration and Community Notification Act, R.I. Gen. Laws §11-37.1-1 et seq., the State of Rhode Island supports the policy that if members of the public are provided adequate notification and information about a sex offender who has been or is about to be released from custody and who lives or will live in or near their neighborhood, the community can develop constructive plans to prepare themselves and their children for the offender's release.

In order to implement this policy, it is the policy of this agency to facilitate the registration of sexual and other predatory offenders. It is further the policy of this agency to provide community notification relative to the release of those offenders as designated by statute, while preserving the legal rights of those offenders.

It is the policy of this agency to provide the maximum information authorized by law, consistent with the requirements of public safety.

4

## STATUTORY AUTHORITY

R.I. General Laws §11-37.1-1 et seq.,

Sexual Offender Registration and Community Notification Act

## PART I DEFINITIONS

*Section 1.0 Definitions*

Wherever used in these Guidelines, the following terms shall be construed as follows:

1.1  The terms "Board", "Board of Review" and "Sex Offender Board of Review", shall mean the "BOR" appointed by the governor pursuant to the RI General Laws §11-37.1-1 et seq.

1.2  The term "Sex Offender Community Notification Unit" shall mean the SOCN Unit whose duty and authority is set forth in RI General Law 11-37.1-1 et seq.

1.3  Law Enforcement Agency:

1.3.1  For the purpose of community notification, a law enforcement agency is defined as the agency having primary jurisdiction over the location where the offender expects to reside upon release, and/or where the offender is likely to be encountered.

1.3.2  For all other purposes under this policy, the definition of law enforcement agency includes all agencies which carry on a law enforcement or prosecutorial function including, but not limited to, local, state and federal agencies; and parole, probation and court services agencies.

1.4  The term "sexually violent offense" shall mean and include any violation of RI Gen Laws §11-37-2, §11-37-4, §11-37-6, §11-37-8, §11-37-8.1, §11-37-8.3, §11-5-1 and §11-23-1 or any offense in another jurisdiction which is substantially the equivalent of any offense listed in this subsection and for which the person is or would be required to register under 42 USC §14071 or 18 USC Section 4042 (c).

1.5  The term "sexually violent predator" shall mean a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

1.6  The term "mental abnormality" shall mean a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person a menace to the health and safety of another person.

REPEALED JULY 27, 2006, REPLACED BY PUBLIC LAW 109-248 ADAM WALSH CHILD PROTECTION ACT OF 2006 (§) 34 U.S.C. 20911

5

**\*\*\*ACTIVE MANUAL USE FROM 07/11/2012 - 06/10/2013\*\*\***

# SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES
## R.I. GENERAL LAWS §11-37.1-1 ET SEQ.

### STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

### RHODE ISLAND PAROLE BOARD
### SEX OFFENDER COMMUNITY NOTIFICATION UNIT

### SEX OFFENDER BOARD OF REVIEW 2012

Title 242 Parole Board
Chapter XXX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Subchapter XX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Part 2745 Parole Board Sex Offender Community Notification Unit Guidelines 2012
Type of Filing Amendment
Regulation Status Inactive
Effective 07/11/2012 to 06/10/2013
Regulation Authority:                          https://rules.sos.ri.gov/Regulations/part/242-XXX-XX-2745?reg_id=6881

11-37.1
Purpose and Reason:                    **Board Members**

The only change to the Guidelines was limited to updating the list of two names of newly appointed Sex Offender Board of Review Members noted on the first page of the document.

| | |
|---|---|
| **Meredith Costa** | **Bernard Manchester** |
| **Sergeant Diane Dougherty** | **Kendra Marasco, MSW** |
| **Paul Fitzgerald** | **David J. Schnell Jr.** |
| **Jason Lyon, LICSW** | **JoAnne Waite, LMFT** |

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 4

SCOPE ..................................................................................................................... 4

POLICY.................................................................................................................... 4

STATUTORY AUTHORITY..................................................................................... 4

PART I          DEFINITIONS............................................................................... 5

§1.0       DEFINITIONS............................................................................... 5-8

PART II      DUTIES OF BOARD OF REVIEW, PAROLE BOARD AND
             LAW ENFORCEMENT OFFENDERS IN CUSTODY ............................... 9-10

§2.0       DUTIES OF THE BOARD OF REVIEW, ENUMERATED OFFENSES, PAROLE
           BOARD AND LAW ENFORCEMENT OFFICERS - OFFENDERS IN
           CUSTODY............................................................................................... 9-10

§3.0       SEX OFFENDER BOARD OF REVIEW...................................................... 11-13

§4.0       DUTIES OF LAW ENFORCEMENT AGENCIES ........................................ 13-15

PART III     COMMUNITY NOTIFICATION PLAN GUIDELINES FOR
             LEVELS I, II AND III .......................................................................... 15

§5.0       RISK LEVEL I – LOW RISK SEXUAL OFFENDERS............................................. 15

§6.0       RISK LEVEL II – MODERATE RISK SEXUAL OFFENDERS IN
           RESIDENTIAL FACILITIES......................................................................... 16

§7.0       RISK LEVEL II (I) – MODERATE RISK SEXUAL OFFENDERS NOT
           PLACED IN A TREATMENT FACILITY........................................................ 16-21

§8.0       RISK LEVEL III – HIGH RISK SEXUAL OFFENDERS IN RESIDENTIAL
           FACILITIES ........................................................................................... 21-22

§9.0       RISK LEVEL III (A) – HIGH RISK SEXUAL OFFENDERS NOT PLACED
           IN A TREATMENT FACILITY ................................................................... 22-23

§10.0      EXCHANGE OF INFORMATION BETWEEN LAW ENFORCEMENT
           AGENCIES............................................................................................. 23

PART IV      RE-NOTIFICATION ............................................................................ 24

PART V       RELEASE OF INFORMATION ............................................................... 25

2

PART VI     IMMUNITY ……………………………………………………26

APPENDIX    ………………………………………………………………27

   ADDENDUM I………………………………………………………………27-28

   ADDENDUM 2 …………………………………………………………………29

   ADDENDUM 3 …………………………………………………………………30

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL I………………………..31

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL II…………………… ..32

   SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL III ……………………………33

   SAMPLE NOTICE TO LEVEL II AND LEVEL III OFFENDERS ………………………34-35

   SAMPLE FACT SHEET – LEVEL I ……………………………………………36

   SAMPLE FACT SHEET – LEVEL II……………………………………………37

   SAMPLE FACT SHEET – LEVEL III……………………………………………38

   SAMPLE VICTIM NOTIFICATION LEVEL …………………………………………39

## OFFICE OF ATTORNEY GENERAL OF RHODE ISLAND

## SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES

| EFFECTIVE DATE: | DISTRIBUTION: |
|---|---|
| 7/10/03 | |

INTRODUCTION

SCOPE

This policy is intended to ensure that all law enforcement agencies comply with the requirements of Rhode Island General Laws §11-37.1-1 et seq., to provide for the registration of juvenile and adult sexual offenders living in Rhode Island or relocating here from another jurisdiction, and to provide community notification relative to the release of juvenile and adult sexual offenders living in or relocating to Rhode Island.

The Community Notification Provisions of R.I. General Laws §11-37.1 et seq., shall apply to all those juvenile and adult offenders who committed a sexually violent offense on or after July 24, 1996, and who are determined to be at low risk, moderate risk or high risk of re-offense.

**POLICY**

By enacting the Sexual Offender Registration and Community Notification Act, R.I. Gen. Laws §11-37.1-1 et seq., the State of Rhode Island supports the policy that if members of the public are provided adequate notification and information about a sex offender who has been or is about to be released from custody and who lives or will live in or near their neighborhood, the community can develop constructive plans to prepare themselves and their children for the offender's release.

In order to implement this policy, it is the policy of this agency to facilitate the registration of sexual and other predatory offenders. It is further the policy of this agency to provide community notification relative to the release of those offenders as designated by statute, while preserving the legal rights of those offenders.

It is the policy of this agency to provide the maximum information authorized by law, consistent with the requirements of public safety.

4

## STATUTORY AUTHORITY

R.I. General Laws §11-37.1-1 et seq.,                Sexual Offender Registration and
                                                     Community Notification Act

## PART I DEFINITIONS

*Section 1.0 Definitions*

Wherever used in these Guidelines, the following terms shall be construed as follows:

1.1    The terms "Board", "Board of Review" and "Sex Offender Board of Review", shall mean the "BOR" appointed by the governor pursuant to the RI General Laws §11-37.1-1 et seq.

1.2    The term "Sex Offender Community Notification Unit" shall mean the SOCN Unit whose duty and authority is set forth in RI General Law 11-37.1-1 et seq.

1.3    Law Enforcement Agency:

1.3.1  For the purpose of community notification, a law enforcement agency is defined as the agency having primary jurisdiction over the location where the offender expects to reside upon release, and/or where the offender is likely to be encountered.

1.3.2  For all other purposes under this policy, the definition of law enforcement agency includes all agencies which carry on a law enforcement or prosecutorial function including, but not limited to, local, state and federal agencies; and parole, probation and court services agencies.

1.4    The term "sexually violent offense" shall mean and include any violation of RI Gen Laws §11-37-2, §11-37-4, §11-37-6, §11-37-8, §11-37-8.1, §11-37-8.3, §11-5-1 and §11-23-1 or any offense in another jurisdiction which is substantially the equivalent of any offense listed in this subsection and for which the person is or would be required to register under 42 USC §14071 or 18 USC Section 4042 (c).

1.5    The term "sexually violent predator" shall mean a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

1.6    The term "mental abnormality" shall mean a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person a menace to the health and safety of another person.

REPEALED JULY 27, 2006, REPLACED BY PUBLIC LAW 109-248 ADAM WALSH CHILD PROTECTION ACT OF 2006 (§) 34 U.S.C. 20911

5



🇺🇸 An official website of the United States government, Department of Justice.
Here's how you know

Home / Funding & Awards

# Rhode Island Sex Offender Registration and Community Notification Project

> **Note:**
> This awardee has received supplemental funding. This award detail page includes information about both the original award and supplemental awards.

## Award Information

**Awardee:** Rhode Island Public Saftey Grant Administration Office
**Award #:** 2012-DS-BX-0012
**Location:** North Scituate, RI
**Congressional District:** 2
**Status:** Closed
**Funding First Awarded:** 2012
**Total funding (to date):** $112,378
**Original Solicitation:** BJA FY 12 Solicited - SORNA

## Description of original award (Fiscal Year 2012, $56,468)

The Adam Walsh Act is designed to protect children and adults from sexual exploitation and violent crime, prevent child abuse and child pornography, promote Internet safety, and honor the memory of Adam Walsh and other crime victims. The Sex Offender Registration and

Notification Act (SORNA), which is part of the Adam Walsh Act, was enacted to protect the public from convicted sex offenders by establishing a comprehensive national system for the registration and notification of those offenders. The state of Rhode Island will utilize funds for the development and/or enhancement of programs designed to implement SORNA portion of the Adam Walsh Act (42 U.S.C. § 16901, et seq.). This project will enable Rhode Island to provide the general public access to information regarding sex offenders living in their communities through the creation of a community notification website. NCA/NCF

**Supplemental Award 1 (Fiscal Year 2013, $55,910)**

The Adam Walsh Act is designed to protect children and adults from sexual exploitation and violent crime, prevent child abuse and child pornography, promote Internet safety, and honor the memory of Adam Walsh and other crime victims. The Sex Offender Registration and Notification Act (SORNA), which is part of the Adam Walsh Act, was enacted to protect the public from convicted sex offenders by establishing a comprehensive national system for the registration and notification of those offenders. The state of Rhode Island will utilize funds for the development and/or enhancement of programs designed to implement SORNA portion of the Adam Walsh Act (42 U.S.C. § 16901, et seq.). This project will enable Rhode to fund overtime hours for personnel members of the Technology and Communication Services Unit that manage and maintain the Sex Offender Registry.

NCA/NCF

*Date Created: August 27, 2012*

## Similar Awards 🔗

Enhancing and Coordinating Strategies To Prevent and Respond to Violent Crime

Cabarrus County COSSAP Program: Providing Medication Assisted Treatment and Recovery Support Services to Individuals with Opioid Use Disorder

Wrongful Conviction Review and Litigation Program



**U.S. DEPARTMENT OF JUSTICE**
OFFICE OF JUSTICE PROGRAMS

***ACTIVE MANUAL USE FROM 06/10/2013 - 06/05/2014***

# SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES
## R.I. GENERAL LAWS §11-37.1-1 ET SEQ.

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## RHODE ISLAND PAROLE BOARD
## SEX OFFENDER COMMUNITY NOTIFICATION UNIT

## SEX OFFENDER BOARD OF REVIEW  2013

Title 242 Parole Board
Chapter XXX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Subchapter XX Old Regulations Which Were Not Assigned Chapter-Subchap-Part
Part 2745 Parole Board Sex Offender Community Notification Unit Guidelines 2013
Type of Filing Amendment
Regulation Status Inactive
Effective 06/10/2013 to 06/05/2014
Regulation Authority:

https://rules.sos.ri.gov/Regulations/part/242-XXX-XX-2745?reg_id=7266

### Board Members

| | |
|---|---|
| **Bernard Manchester** | **Kendra Marasco, LCSW** |
| **Sergeant Diane Dougherty  RISP** | **David J. Schnell, Jr.** |
| **Paul Fitzgerald** | **JoAnne Waite, LMFT** |
| **Jason Lyon, LICSW** | |

11-37.1
Purpose and Reason:

Annual Parole Board and SOCN Meeting on Guidelines per Open Meeting Law

# TABLE OF CONTENTS

INTRODUCTION..............................................................................................4

SCOPE .........................................................................................................4

POLICY.........................................................................................................4

STATUTORY AUTHORITY...............................................................................4

PART I          DEFINITIONS..................................................................5

   §1.0          DEFINITIONS..........................................................................5-8

PART II         DUTIES OF BOARD OF REVIEW, PAROLE BOARD AND
                LAW ENFORCEMENT OFFENDERS IN CUSTODY ..............................9-10

   §2.0          DUTIES OF THE BOARD OF REVIEW, ENUMERATED OFFENSES, PAROLE
                BOARD AND LAW ENFORCEMENT OFFICERS - OFFENDERS IN
                CUSTODY...........................................................................................9-10

   §3.0          SEX OFFENDER BOARD OF REVIEW.....................................................11-13

   §4.0          DUTIES OF LAW ENFORCEMENT AGENCIES ..........................................13-15

PART III        COMMUNITY NOTIFICATION PLAN GUIDELINES FOR
                LEVELS I, II AND III ...............................................................15

   §5.0          RISK LEVEL I – LOW RISK SEXUAL OFFENDERS............................................15

   §6.0          RISK LEVEL II – MODERATE RISK SEXUAL OFFENDERS IN
                RESIDENTIAL FACILITIES..................................................................16

   §7.0          RISK LEVEL II (1) – MODERATE RISK SEXUAL OFFENDERS NOT
                PLACED IN A TREATMENT FACILITY.....................................................16-21

   §8.0          RISK LEVEL III – HIGH RISK SEXUAL OFFENDERS IN RESIDENTIAL
                FACILITIES ............................................................................................21-22

   §9.0          RISK LEVEL III (A) – HIGH RISK SEXUAL OFFENDERS NOT PLACED
                IN A TREATMENT FACILITY .....................................................................22-23

   §10.0         EXCHANGE OF INFORMATION BETWEEN LAW ENFORCEMENT
                AGENCIES.................................................................................. 23

PART IV         RE-NOTIFICATION ................................................................24

PART V          RELEASE OF INFORMATION .................................................25

PART VI         IMMUNITY ........................................................................26

2

APPENDIX ...................................................................................................................27

    ADDENDUM I..........................................................................................................27-28

    ADDENDUM 2 .............................................................................................................29

    ADDENDUM 3 .............................................................................................................30

    SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL I................................31

    SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL II...................................32

    SAMPLE LETTER TO LAW ENFORCEMENT – LEVEL III .......................................33

    SAMPLE NOTICE TO LEVEL II AND LEVEL III OFFENDERS ...............................34-35

    SAMPLE FACT SHEET – LEVEL I ...........................................................................36

    SAMPLE FACT SHEET – LEVEL II...........................................................................37

    SAMPLE FACT SHEET – LEVEL III..........................................................................38

    SAMPLE VICTIM NOTIFICATION LEVEL ...............................................................39

## OFFICE OF ATTORNEY GENERAL OF RHODE ISLAND

## SEXUAL OFFENDER COMMUNITY NOTIFICATION GUIDELINES

| EFFECTIVE DATE: | DISTRIBUTION: |
|---|---|
| 7/10/03 | |

INTRODUCTION

SCOPE

This policy is intended to ensure that all law enforcement agencies comply with the requirements of Rhode Island General Laws §11-37.1-1 et seq., to provide for the registration of juvenile and adult sexual offenders living in Rhode Island or relocating here from another jurisdiction, and to provide community notification relative to the release of juvenile and adult sexual offenders living in or relocating to Rhode Island.

The Community Notification Provisions of R.I. General Laws §11-37.1 et seq., shall apply to all those juvenile and adult offenders who committed a sexually violent offense on or after July 24, 1996, and who are determined to be at low risk, moderate risk or high risk of re-offense.

POLICY

By enacting the Sexual Offender Registration and Community Notification Act, R.I. Gen. Laws §11-37.1-1 et seq., the State of Rhode Island supports the policy that if members of the public are provided adequate notification and information about a sex offender who has been or is about to be released from custody and who lives or will live in or near their neighborhood, the community can develop constructive plans to prepare themselves and their children for the offender's release.

In order to implement this policy, it is the policy of this agency to facilitate the registration of sexual and other predatory offenders. It is further the policy of this agency to provide community notification relative to the release of those offenders as designated by statute, while preserving the legal rights of those offenders.

It is the policy of this agency to provide the maximum information authorized by law, consistent with the requirements of public safety.

**STATUTORY AUTHORITY**

4

R.I. General Laws §11-37.1-1 et seq.,    Sexual Offender Registration and Community Notification Act

## PART I DEFINITIONS

*Section 1.0 Definitions*

Wherever used in these Guidelines, the following terms shall be construed as follows:

1.1    The terms "Board", "Board of Review" and "Sex Offender Board of Review", shall mean the "BOR" appointed by the governor pursuant to the RI General Laws §11-37.1-1 et seq.

1.2    The term "Sex Offender Community Notification Unit" shall mean the SOCN Unit whose duty and authority is set forth in RI General Law 11-37.1-1 et seq.

1.3    Law Enforcement Agency:

1.3.1    For the purpose of community notification, a law enforcement agency is defined as the agency having primary jurisdiction over the location where the offender expects to reside upon release, and/or where the offender is likely to be encountered.

1.3.2    For all other purposes under this policy, the definition of law enforcement agency includes all agencies which carry on a law enforcement or prosecutorial function including, but not limited to, local, state and federal agencies; and parole, probation and court services agencies.

1.4    The term "sexually violent offense" shall mean and include any violation of RI Gen Laws §11-37-2, §11-37-4, §11-37-6, §11-37-8, §11-37-8.1, §11-37-8.3, §11-5-1 and §11-23-1 or any offense in another jurisdiction which is substantially the equivalent of any offense listed in this subsection and for which the person is or would be required to register under 42 USC §14071 or 18 USC Section 4042 (c).

1.5    The term "sexually violent predator" shall mean a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

1.6    The term "mental abnormality" shall mean a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person a menace to the health and safety of another person.

REPEALED JULY 27, 2006, REPLACED BY 42 U.S.C. 16911

5

P.R. 109 of 364

# Rhode Island State Police 2013 Annual Report

## Colonel Steven G. O'Donnell
## Commissioner of Public Safety





*March 2014*



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# DIVISION OF STATE POLICE

HEADQUARTERS: 311 DANIELSON PIKE, NORTH SCITUATE, RHODE ISLAND 02857

Telephone: (401) 444-1001 • Fax: (401) 444-1105 • E-Mail: sodonnell@risp.dps.ri.gov

OFFICE OF THE SUPERINTENDENT
STEVEN G. O'DONNELL
COLONEL
COMMISSIONER
DEPARTMENT OF PUBLIC SAFETY

March 1, 2014

The Honorable Lincoln D. Chafee
Governor
State of Rhode Island and Providence Plantations
State House
Providence, RI 02903

Dear Governor Chafee:

I am pleased to provide you with the 2013 Rhode Island State Police Annual Report, my third since being named Superintendent.

Thirty-six new troopers graduated from the Rhode Island State Police Training Academy in December, following twenty-two weeks of intensive training. We welcome them to the ranks.

The Division has continued its efforts to vigilantly pursue motorists who drive while under the influence of alcohol and/or drugs. Based on increased enforcement, accidents have been reduced.

The State Police Community Outreach Program, "New Beginnings," continues to make a positive impact in our state's diverse communities. The program includes outreach, education, leadership training, police recruiting, and connectivity into the communities. The Division has also assigned more than thirty members to assist cities and towns as well as other state agencies.

Forfeiture funds from the Google Settlement have provided much needed enhancements to the Division's aging fleet and key criminal justice improvements, including tasers and long guns. Plans are also underway to build new Hope Valley and Wickford Barracks.

Members of the Division provided support to the Massachusetts State Police and the Federal Bureau of Investigation's Boston Division following the tragic Boston Marathon bombings. Troopers, and their explosive detection canines, were immediately deployed, and in the following days, the Tactical Team responded to Logan International Airport and New Bedford. The Rhode Island Fusion Center coordinated with the FBI's Joint Terrorism Task Force and the Massachusetts Fusion Center to work on leads in Rhode Island.

On behalf of the men and women of the Rhode Island State Police, I thank you for your support over the past year as we strive to continue to provide the best law enforcement services for the citizens and visitors of our state.

Sincerely,

Steven G. O'Donnell
Colonel
Superintendent

i



RHODE ISLAND STATE POLICE ORGANIZATIONAL CHART

ii

# TABLE OF CONTENTS

**Superintendent** ........................................................................................................ 2
    Professional Standards Unit ............................................................... 10
    Inspectional Services Unit.................................................................. 13

**Patrol Bureau**
    Deputy Superintendent / Chief of Field Operations ...................... 14
    District Commanders ......................................................................... 15
    Scituate Barracks............................................................................... 16
    Lincoln Barracks ................................................................................ 18
    Hope Valley Barracks ........................................................................ 20
    Wickford / Portsmouth Barracks…… ............................................... 22
    Commercial Enforcement Unit.......................................................... 24
    Operations Officer.............................................................................. 26
    Night Executive Officers.................................................................... 27
    Executive Security. ............................................................................ 28

**Detective Bureau**
    Detective Commander ....................................................................... 29
    Financial Crimes Unit......................................................................... 31
    Fusion Center .................................................................................... 32
    Narcotics Unit / HIDTA Unit .............................................................. 36
    Major Crimes / Area Detectives. ...................................................... 39
    Computer Crimes / ICAC Unit............................................................ 42
    Intelligence Unit ................................................................................. 45
    Violent Fugitive Task Force ............................................................... 48
    Auto Theft and Insurance Fraud Unit............................................... 50
    Criminal Identification Unit ................................................................ 52
    Property Control Officer .................................................................... 53
    Charitable Gaming Unit...................................................................... 54
    Gaming Enforcement Unit................................................................. 55

**Administrative Services**
    Chief Administrative Officer .............................................................. 56
    Planning, Research and Accreditation Unit…………………………….... 57
    Uniform Crime Reports Unit .............................................................. 60
    Training Academy .............................................................................. 61
    Technology and Communication Services Unit .............................. 62
    Radio Services.................................................................................... 63
    Management Information Systems .................................................... 64
    RILETS / NCIC Control Section ......................................................... 65
    Technical Services Unit ..................................................................... 67
    Fleet Officer / Supply Unit................................................................. 69

**Special Operations**
    Canine Unit......................................................................................... 70
    Marine Unit / Dive Team .................................................................... 75
    Honor Guard Unit............................................................................... 76
    Motorcycle Unit. ................................................................................ 77
    Tactical Team ..................................................................................... 78
    Collision Reconstruction Unit........................................................... 79
    Statistics............................................................................................. 80

# SUPERINTENDENT
## COLONEL STEVEN G. O'DONNELL

### Executive Assistant:
### Ms. Barbara Laird

Colonel Steven G. O'Donnell is the twelfth Superintendent of the Rhode Island State Police, and was sworn in on May 9, 2011. He holds a Bachelor of Science Degree in Criminal Justice from the University of New Haven and a Master of Science Degree in Administration of Justice from Salve Regina University. He is also a graduate of the 211th Session of the FBI National Academy and the FBI National Executive Institute in Quantico, Virginia.

As Superintendent of the Rhode Island State Police, Colonel O'Donnell serves as the commanding officer of the Division and is accountable for staffing the Patrol, Detective, Administrative, and Public Safety Bureaus, to include the State and Municipal Police Training Academies. The mission of Patrol and Detective Bureaus is to promote highway safety, maintenance of order, prevention and detection of crime and the apprehension of violators. The Superintendent is also responsible for ensuring the control of traffic, maintaining safety enforcement on the State's highways and the development and enforcement of all policies and regulations for the Division. The Superintendent must ensure structure, discipline, efficiency and morale within the Division, along with establishing goals, direction, and priorities.

The Superintendent also serves as Commissioner of the Rhode Island Department of Public Safety. The agencies that are under the Department are: E-911 Telephone System, State Fire Marshals' Office, the Public Safety Grants Administration Office, the Rhode Island Municipal Police Training Academy, the Sheriffs' Department, the Rhode Island Capitol Police, the Legal Office, and the Central Management Office.

During the past year, the Superintendent served on the following: The Grants Administration Office Policy Board and Criminal Justice Steering Committee; the Rhode Island Crime Lab Commission; the Rhode Island Medical Examiner's Commission; the Criminal Justice Oversight Committee; the International Association of Chiefs of Police/State and Provincial Division, New England State Police Administrators Conference; New England State Police Information Network Board of Directors; Rhode Island Police Chiefs' Association, High Intensity Drug Trafficking Area (HIDTA) Executive Board, the Police Officers' Commission on Standards and Training, Joint Behavioral Health and Firearms Safety Task Force to Review and Make Recommendations for Statutes Relating to Firearms and Behavioral Health Issues, Chairman of the Board of Rhode Island Mothers Against Drunk Driving, Magistrate Selection Committee for the Rhode Island Traffic Tribunal, the Board of the Institute for the Study and Practice of Non-Violence, Legislative Commission to Undertake a Comprehensive Study of Sex Offender Registration and Notification Legislation in the State of Rhode Island, Biased Based Policing Committee, Racial Profiling Committee, Senate Committee on Consolidated Services, and the Senate Committee on Custodial Interrogations.

During 2013 the Division provided personnel to assist other state and municipal agencies. A Lieutenant Colonel was assigned to the Rhode Island Public Transit Authority. Members are also assigned to the Division of Sheriffs and the Rhode Island Municipal Police Training Academy. A Sergeant is assigned to T.F. Green Airport, and the Operations Officer is located at the Command Readiness Center of the Rhode Island National Guard. Troopers were also assigned to Block Island to augment the law enforcement presence during busy summer weekends and during the 4th of July. More than 30 Troopers were assigned to different details throughout the 4th of July holiday weekend,

In January, the Command structure of the Division was reorganized, which added a Captain, Lieutenant, Sergeant, and Corporal. This is as a result of increased duties and responsibilities of the Department of Public Safety. The second Lieutenant Colonel's position was placed back into the Command structure to oversee the Department of Public Safety, and a new position of Captain/Director of Training was added.

During 2013, the following members retired: Lieutenant Colonel Raymond B. Studley, Major James G. Pereira, Captain John D. Lemont, Lieutenant Daniel C. Cusumano, Lieutenant David J. Medeiros, Lieutenant Joseph Dubeau, Lieutenant Wilfred K. Hill, Mr. Frank Dolan, Mrs. Nancy Gagnon, Mr. Richard Peck, and Mr. Tom McCarthy, Sr. We thank them for their many years of dedicated service. We also welcomed the following new staff members: Ms. Melissa Arver, Command Staff Administrative Assistant; Mr. Ed Dursin, Mr. Anthony DaEstrela, and Mr. Matthew Knowlton, Utility Maintenance Technicians. We also welcome Ms. Allison O'Connor, Computer Programmer, and Ms. Brittnee Morgan, Data Processing System Manager. They have both been working as contract employees and were hired as permanent employees in January.

The Division's Detective Bureau continues its mission of providing excellent investigative services and responds to ever-increasing requests for its expertise. Several high-profile investigations included 38 Studios, the Institute for International Sports, Rhode Island Public Transit Authority, and a Central Falls public corruption case. The new Gaming Enforcement Unit was formed as a result of table games coming to Twin River. There are seven Detectives assigned to this unit, and they have made several significant arrests as a result of individuals violating the state's gaming laws. There is also a new, two-member Sex Offender Registry Unit, which will assist local police departments with the proper registering of sex offenders.

The Division also began utilizing social media in 2013 with both Facebook and Twitter accounts. At this writing, the Division has more than 4,000 "likes" on Facebook. This has proven to be an invaluable tool to get important information out to the public quickly. Some of the messages have included road conditions during snow storms, Amber Alert messages, and press releases. A popular posting has been "Throw-Back Thursday," where a photograph from the State Police archives is published. Ms. Allison O'Connor is managing the Division's social media accounts and websites.

During peak holiday periods, the Uniformed Bureau participated in regional and national traffic enforcement campaigns, including Operation "C.A.R.E.," "Child Passenger Safety Week," "Click-It or Ticket," "You Drink, You Drive, You Lose," "Operation A.B.C.," National Holiday Lifesaver Weekend, and "Drive Sober or Get Pulled Over." The Division continues aggressive patrols against impaired drivers, and troopers' enforcement activity on the road has been extremely productive. As a result, there has been a decrease in accidents. In December, MetLife Auto and Home donated more than 100 digital cameras to the Division. These are being used to document automobile crashes, crimes scenes, evidence, etc.

Google Settlement funds were disbursed in 2013 to replace the aging Rhode Island State Police fleet, purchase tasers and long guns, and provide training. Plans are underway to build a new Wickford Barracks and Hope Valley Barracks. Extensive renovations are also planned for the Lincoln Woods Barracks. The Division is also exploring the possibility of building a consolidated police training facility. In addition, we will be renovating the Supply and Intelligence Buildings at Headquarters, and once completed, we will renovate the White House and move the Scituate Barracks troopers into that facility.

# MAJOR CRIMES UNIT
## LIEUTENANT BENJAMIN M. BARNEY

The Major Crimes Unit is tasked with investigations involving homicides, sexual assaults, kidnappings, robberies, assaults involving serious injury, and investigations of police officer shootings or the in-custody death of prisoners. This Unit is also responsible for investigations of criminal activity at the Adult Correctional Institution, the Rhode Island Training School -Youth Correctional Center and the Wyatt Detention Facility (when requested).

The Major Crimes Unit (MCU) is presently comprised of the following members: one (1) Lieutenant, two (2) Corporals, and five (5) Detectives.

In calendar year 2013, members of the Major Crimes Unit made two hundred and five (205) arrests and investigated or assisted in three hundred and forty (340) separate incidents. These cases were directed to the Major Crimes Unit through either an initial barracks investigation, Headquarters walk-in complaints, complaints filed at the Detective Office located at the Adult Correctional Institution, or when called to assist with local law enforcement investigations. The following is a compilation of the total number of criminal cases in which the Major Crimes Unit has participated:

### January 2013 – December 2013

| Case Type | Number of Cases | Case Type | Number of Cases |
|---|---|---|---|
| 1st Degree Sexual Assault | 10 | Receiving Stolen Goods | 6 |
| 2nd Degree Sexual Assault | 5 | Larceny Over $1500 | 3 |
| 1st Degree Child Molestation | 4 | Larceny Under $1500 | 2 |
| 2nd Degree Child Molestation | 2 | Extortion | 1 |
| Child Abuse | 2 | Obtaining Money / False Pretenses | 15 |
| Possession of Child Pornography | 1 | Forgery | 2 |
| Felony Assault | 6 | Filing a False Document | 5 |
| Assault on Correctional Officer | 4 | Identity Theft | 3 |
| Assault using Bodily Fluids | 2 | Obstruction of Justice | 3 |
| Assault at the Wyatt Detention Facility | 8 | Kidnapping | 4 |
| Simple Assault | 17 | Stalking | 1 |
| Escape from Adult Correctional Institution | 1 | Cyber stalking | 3 |
| Juvenile Escape | 21 | Burglary | 4 |
| Escape from Lawful Custody | 5 | Possession of Counterfeit Currency | 1 |
| Arson | 4 | Threats to Public Officials | 5 |
| Conveyance of Contraband within a prison facility | 2 | False Pretenses to Obtain Controlled Substance | 1 |
| Fugitive from Justice | 80 | Robbery | 2 |
| Violation of a Protective Order | 12 | Malicious Mischief | 2 |
| Violation of Community Supervision | 5 | Conspiracy | 13 |
| Possession of Narcotics | 8 | Theft of Telecommunications | 2 |
| Unlawful Appropriation | 2 | Attempted Suicide | 4 |
| Breaking and Entering | 2 | Resisting Arrest | 4 |
| Use of Firearm during commission crime | 4 | Weapons other than firearms | 3 |
| Disorderly Conduct | 2 | Suspended license | 2 |
| Indecent Exposure | 2 | | |

# RILETS/NCIC CONTROL SECTION
## MISS JOAN M. COLLINS
### SUPERVISOR

Miss Joan Marie Collins is the supervisor of the Rhode Island Law Enforcement Telecommunications System (RILETS) / Telecommunications Unit. She has served with the State Police for twenty-one (21) years, starting as a Telecommunicator in November of 1992. Miss Collins is the Rhode Island Sex Offender Registry Database Manager, is the America's Missing: Broadcasting Emergency Response (AMBER) Alert Web Portal Administrator, Missing Senior Citizen Web Portal Administrator, and performs the work of the RILETS / National Crime Information Center (NCIC) Quality Assurance Unit.

During the year, training was provided to all Rhode Island police departments on AMBER Alerts, Missing Senior Citizen Alerts, Rhode Island Sex Offender Database, and NCIC Validation and Compliance.

Several times a year, the Rhode Island State Police works in conjunction with the Massachusetts State Police to promote AMBER Alert awareness by providing Child Identification kits to parents to be used in the event their child is reported missing or abducted.

The RILETS / Telecommunications Unit operates twenty-four (24) hours a day, seven (7) days a week, three hundred and sixty-five (365) days a year. The Unit provides access to several databases containing information collected by criminal justice agencies that is needed in law enforcement functions including: wanted person information; missing person information; unidentified person information; stolen property information; criminal history information; information on identifiable individuals compiled in an effort to anticipate, prevent, or monitor possible criminal activity; vehicle registrations, driver's licenses and more. The fundamental information and support provided by the Unit is essential for the safety of the Troopers and other police officers.

Assistance is provided to municipal police departments, state, and federal agencies, concerning policies and procedures for the National Crime Information Center (NCIC), National Law Enforcement Telecommunications System (NLETS), and Rhode Island Law Enforcement Telecommunications System (RILETS) systems. The Unit also assists the agencies with any problems that they may encounter with the systems, including hardware or software concerns and frame relay failures. In addition, the Unit monitors and directs both incoming and outgoing interstate message traffic to ensure that they are properly formatted and directed to the correct destinations.

The Unit is responsible for maintaining affidavit and arrest warrants for the State Police, conducting intensive backgrounds through database searches, processing the monthly NCIC validations, creating, editing, and activating AMBER Alerts via the AMBER Alert web portal, creating, editing, activating Missing Senior Citizen Alerts via the Rhode Island Broadcaster's Silver Alert web portal, obtaining out-of-state criminal history information for authorized state programs, and monitoring the National Alert Warning Systems telephones and Rhode Island Emergency Management Agency radios for emergency and testing situations.



Michael J Cogley

North Providence, RI 02904

09/13/2013    Pending

OCA: 154

Charge: SEXUAL OFFENDER REGISTRATION REQUIRED

Open Ite

P.R. 119 of 364

```
MKE/
S/           A           E
ORI/            NAM/COGLEY,MICHAEL           SEX/M RAC/W POB/W
                     HGT/509 WGT/180 EYE/BRO HAI/BRO FBI/
SOC/
OLN/             OLS/RI OLY/2021
ORD/             ERD/20220713 SXP/N CRR/SEX OFFENSE
CON/
OCA/          OF SID/RI10120741
VLD/
MIS/ INDECENT ASSAULT AND BATTERY ON PERSON OVER 14 (MA), INDE
```



_____ -OF

# NORTH PROVIDENCE POLICE DEPARTMENT
## SEX OFFENDER REGISTRATION FORM
### *Detective Daniel Biafore handwriting*

All information on this form must be completed

> This form is not a public record. This information is for use by Law Enforcement only

## PERSONAL AND VEHICLE INFORMATION

LAST NAME: *Cagley*  HEIGHT: Feet **5** Inches **9**

FIRST NAME: *Michael*  WEIGHT: **180** lbs.

MIDDLE NAME: *John*  HAIR COLOR: red (brown) black blonde gray bald

DATE OF BIRTH: y/m/d 19▓▓  EYE COLOR: (brown) blue green hazel gray

SOC. SEC. NUMBER: ▓▓▓▓▓  RACE: *W*  SEX: (M) F

STREET: ▓▓ S. Union St.  SCARS/TATTOOS: _____

FLOOR / APARTMENT: Apt 15  VEHICLE REG: State *RI* Number ▓▓▓▓

HOME PHONE: (401) ▓▓▓-▓▓▓  MAKE: ▓▓▓ MODEL: ▓▓▓

CELL PHONE: ▓▓▓▓▓  COLOR: ▓▓ (Write other vehicles on reverse of this paper)

EMPLOYER NAME: _____  EMAIL ADDRESS: ▓▓▓▓▓

EMPLOYER ADDRESS: _____

## CRIMINAL CASE INFORMATION:

ARRESTED BY: _____ Police Dept.  DATE OF ARREST: _____

CHARGED WITH: _____

CONVICTED OF: _____  DATE: _____

DATE RELEASED: _____  DATE REGISTRATION ENDS: _____

PAROLE OFFICERS NAME: _____  TEL. _____

SEX OFFENDER LEVEL:  register only  Level 1  Level 2  Level 3

THIS REGISTRATION IS: (CIRCLE ONE)  Initial  Quarterly  (Yearly)

I have been notified of my duty to register as a sex offender pursuant to RI General Laws §11.37.1-1. I agree to return on __*9/18/2014*__ to register.

OFFENDERS SIGNATURE: _____  DATE **9/18/2013**



# NORTH PROVIDENCE POLICE DEPARTMENT
## BUREAU OF CRIMINAL IDENTIFICATION
*1967 Mineral Spring Avenue, North Providence, Rhode Island 02904*
*Telephone (401) 233-1433 Ext 172   Fax (401) 233-1438*

## Sex Offender Notification

*Offender must write initials after each paragraph*

In accordance with RIGL 11.37.1, The Sexual Offender Registration and Community Notification Act, you are under a duty to notify the local law enforcement agency having jurisdiction over any address at which you reside of your occupancy of that address within 24 hours of occupancy (11-37.1-3(a)). __M C__

You are also under a duty to notify local law enforcement having jurisdiction over any address occupied by you within 24 hours of moving from that address to another residential address (11-37.1-3(a)). __M C__

If you move from one residential address within North Providence to another address within the Town, you must notify the North Providence Police Department within 24 hours of moving. You will also be required to provide the North Providence Police Department with current evidence of residency (a notarized letter from a landlord, tax bill, utility bill, etc.) and a current State issued identification which reflects your new address. __M C__

If you move from North Providence to another city or town within the State of RI, you must notify the North Providence Police Department that you are leaving your current address and provide a forwarding address (11-37.1-9(d)). You must also notify the local law enforcement agency having jurisdiction over your new address of your occupancy of that address within 24 hours of occupying your address (11-37.1-3(a)). __M C__

You must also notify local police of any changes of address from RI to another state.

Failure to provide notification of any address change to the North Providence Police Department will result in an arrest warrant being issued, and you will be charged with Failure to Register a New Address as a Sexual Offender under RIGL 11-37-1. In addition, your Probation/Parole Officer (if any) will be notified and a violation of probation/parole will be issued. __M C__

Sexual offenders failing to notify local police of the movement from the State of RI to another state will be reported to the U.S. Attorney's Office which could result in Federal Charges being applied. __M C__

Offenders name (print): __Mike Copley__          DOB: __8/6/85__

Offenders Signature: _____          Date: __8/6/85__



_____-OF

# NORTH PROVIDENCE POLICE DEPARTMENT
## SEX OFFENDER REGISTRATION FORM

All information on this form must be completed.

This form is not a public record. This information is for use by Law Enforcement only.

## PERSONAL AND VEHICLE INFORMATION

LAST NAME: _Cogley_    HEIGHT:    Feet _5_ Inches _4_

FIRST NAME: _Mike_    WEIGHT: _170_ lbs.

MIDDLE NAME: ~~____~~    HAIR COLOR: red brown (black) blonde gray bald

DATE OF BIRTH: y/m/d ~~____~~    EYE COLOR: (brown) blue green hazel gray

SOC. SEC. NUMBER: ~~____~~    RACE: _White_    SEX: (M) F

STREET: ~~____~~    SCARS/TATTOOS: _non_

FLOOR / APARTMENT: ~~____~~    VEHICLE REG: State ~~__~~ Number ~~____~~

HOME PHONE: (___) _____-____    MAKE: ~~____~~    MODEL: ~~____~~

CELL PHONE: (~~____~~)    COLOR: ~~____~~ (Write other vehicles on reverse of this paper)

EMPLOYER NAME: _Self/un employee_    EMAIL ADDRESS: ~~____~~

EMPLOYER ADDRESS: _____ _none_ _____

## CRIMINAL CASE INFORMATION:

ARRESTED BY: _____Police Dept.   DATE OF ARREST: _____

CHARGED WITH: _____

CONVICTED OF: _____ DATE: _____

DATE RELEASED: _____ DATE REGISTRATION ENDS: _____

PAROLE OFFICERS NAME: _____ TEL. _____

SEX OFFENDER LEVEL:   register only   Level 1    Level 2    Level 3

THIS REGISTRATION IS: (CIRCLE ONE)    Initial    Quarterly   (Yearly)

**I have been notified of my duty to register as a sex offender pursuant to RI General Laws §11.37.1-1. I agree to return on _____ to register.**

OFFENDERS SIGNATURE: _____    DATE: _10/15/2014_