UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
MICHAEL COGLEY,                     )
                    Plaintiff       )
                                    )
        v.                          )        No. 1:22-cv-00452-MSM-LDA
                                    )
STATE OF RHODE ISLAND,              )
                    Defendant.      )
_____     )

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

Plaintiff Michael Cogley has filed a 71-page civil rights Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983 and the Adam Walsh Child Protection and Safety Act, 42 U.S.C. § 16911, Pub. Law. 109-248, against 27 defendants, all officials, and entities of the State of Rhode Island ("state defendants") or the Town of North Providence ("municipal defendants").[1]  Pending before the Court are motions to dismiss brought by the state and municipal defendants.  (ECF Nos. 16, 22.) For the reasons stated below, the state defendants' Motion is GRANTED, and the municipal defendants' Motion is GRANTED in part and DENIED in part.

---

[1] The Complaint is accompanied by a 364-page "Plaintiff record" of exhibits (ECF Nos. 2, 2-1, 2-2) ("P.R.").

1

## I.    CASE BACKGROUND[2]

In 2003, Mr. Cogley moved to Falmouth, Massachusetts, and enrolled at Falmouth High School.  (ECF No. 1 at 55.)  When he began his senior year, he was 18 and living in a boardinghouse, due to graduate with the 2004 senior class.  "Sometime in April or May of 2004," he went to a friend's house with some friends and girls they had run into "to drink beer and hang out."  *Id.* at 56.  Mr. Cogley and one of the girls engaged in consensual sexual activity.  He was unaware that the girl was only fifteen years old.  *Id.*

He was subsequently indicted, and, on July 13, 2007, he pled guilty in Barnstable County Superior Court to charges of inducing a chaste minor to have intercourse, indecently assaulting a person over 14 years old, and procuring alcohol for a minor.  *Id.* at 59.  Mr. Cogley was sentenced to 5 years' probation.  *Id.*  The sentencing judge found that, because the encounter was consensual and the age difference was less than four years, Mr. Cogley was not required to register as a sex offender in the Commonwealth of Massachusetts.  His probation was transferred to Rhode Island, so that he could continue attending classes at the New England Institute of Technology, where he had enrolled after graduation from high school.  *Id.* at 57, 59-60.[3]  Mr. Cogley successfully completed his probation on July 13, 2012.  At

---

[2] The well-pleaded factual statements come from the plaintiff's Complaint and are accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Mr. Cogley became a full-time Rhode Island resident and registered voter in May 2006.  (ECF No. 1, at 58.)

no point during the probationary term was Mr. Cogley ever required or directed to register as a sex offender in Massachusetts. *Id.*

From 2013 through 2019, Mr. Cogley was the subject of many actions taken by the North Providence police ("NPPD"), the Rhode Island Attorney General, and other state officials for his failure to register as a sex offender in Rhode Island, including, but not limited to, issuance of a national arrest warrant; calls and visits from NPPD officers; home address and work verifications; and designation (leveling) as a Tier II sex offender, implying a moderate risk of re-offense. *Id.* at 35-50.[4] The designation occurred on November 26, 2018, 56 days after Mr. Cogley had moved out of Rhode Island. *Id.* at 41.

Shortly thereafter, Mr. Cogley submitted a letter of objection to the Tier II sex offender designation in the Rhode Island Superior Court. *Id.* at 43. He followed that with another letter requesting bifurcation of the proceedings to determine whether he was subject to *any* federal or state sex offender registration at all. *Id.* at 47. He turned down a proposed reduction to Tier 1, rejecting any national characterization as a sex offender. *Id.* at 48. Ultimately, a negotiated Order was entered on January 7, 2020, explicitly recognizing and reiterating the judgment of the Barnstable County Superior Court that Mr. Cogley was not required to register as a sex offender. *Id.* at 51.

---

[4] A Tier II sex offender is "a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year . . . ," 34 U.S.C. § 20911(3)(A), and is comparable to or more severe than certain listed offenses, *see id.* § 20911(3)(A)-(C). "Levelling" refers to the process of determining a sex offender's tier, or "level."

## II. STATUTORY BACKGROUND

President Bill Clinton signed the Jacob Wetterling Crimes against Children and Sexually Violent Offender Registration Act, Pub. Law 103-322, 108 Stat. 1796 (1994), into law on September 13, 1994. *United States v. Stevens*, 578 F. Supp. 2d 172, 178 (D. Me. 2008). "The Act is a federal funding statute that condition[ed] certain federal law enforcement funding on the States' adoption of sex offender laws and set[] minimum standards for state programs." *Id.* (alterations in original) (internal quotation marks omitted). These sex offender registration laws, commonly known as "Megan's Laws," have been enacted in every state. *Id.* The Jacob Wetterling Act generally relied on state enforcement of sex offender registration laws. *Id.* Subsequently, the Sex Offender Registration and Notification Act ("SORNA") repealed and replaced the Jacob Wetterling Act. *Id.*

The Adam Walsh Child Protection and Safety Act, Pub. Law 109-248, 120 Stat. 587 (2006), was signed into law by President George W. Bush on July 27, 2006; it encompassed SORNA, which became Title I of the Walsh Act. *Stevens*, 578 F. Supp. 2d at 178; *see also, United States v. Ditomasso*, 552 F. Supp. 2d 233, 236 (D.R.I. 2008), *vac.* 565 U.S. 1189 (2012). "SORNA is essentially an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states." *Ditomasso*, 552 F. Supp. 2d at 236. One component requires states to implement sex offender registries which comply with SORNA requirements or risk losing part of their federal funding. The second component of the Act, the individual component 34 U.S.C. § 20913 requires registration and

requires states to impose criminal penalties of at least one year for the failure to register.  *Id.* at 236-37.  SORNA also requires the federal government to establish a national registry.  34 U.S.C. § 20921.  "To fall within the registration requirement of SORNA, a sex offender must either have been convicted for a sex offense under a federal law or have traveled in interstate commerce."  *Ditomasso*, 552 F. Supp. 2d at 237.

## III.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard does not require a probability but is more than a mere possibility."  *Hulsey v. Fed. Bureau of Prisons*, Civ. Action No. 20-cv-11078-DLC, 2020 WL 3105035, at *2 (citing *Iqbal*, 556 U.S. at 678).  "In making this determination, the Court must accept plaintiff's well-pleaded factual allegations as true and construe them in the light most favorable to plaintiff, although the Court need not credit bald assertions, unverifiable conclusions or irrational factual allegations."  *Chase v. Chafee*, CA No. 11-586-ML, 2011 WL 6826504, at *2 (D.R.I. Dec. 9, 2011). (citing *Iqbal*, 556 U.S. at 678).

## IV.    ANALYSIS

### A.    Mr. Cogley's Complaint

Mr. Cogley's Complaint contains six counts.  Count I is brought pursuant to 42 U.S.C. §1983 and alleges that his right to equal protection under the Fourteenth

Amendment was violated by Rhode Island's negligent implementation of SORNA. Count II claims, under SORNA itself, 34 U.S.C. § 20911, that the state and municipal defendants negligently implemented SORNA while he was a Rhode Island resident. *Id.* at 68. Count III is a repetition of Count II applying to the time when he was out of Rhode Island's jurisdiction. Count IV claims negligent implementation of SORNA by the R.I. State Leveling Board while he was out of the jurisdiction. Count V is a qui tam claim as relator charging Rhode Island with failing to comply with SORNA, while receiving funding under the Edward Byrne Memorial Justice Assistance Grant Program ("Byrne"). *See* 34 U.S.C. § 20927. Count VI is brought under the False Claims Act, 31 U.S.C. § 3729, and contends that Rhode Island falsely accepted Byrne funding. [5]

Mr. Cogley has sued for monetary damages only: compensatory damages to himself and a return of funds to the Byrne grant program. (ECF No. 1 at 70.)

## B.   The Defendants

Most of the defendants are affiliated with the State of Rhode Island; three are state entities[6]; a number are individuals sued in their official capacities only;[7] others

---

[5] In his Objection to the state defendants' Motion to Dismiss, Mr. Cogley for the first time mentions 42 U.S.C. § 1985. (ECF No. 23, at 44.) However, he has not alleged that the state defendants conspired against him. In any event, to the extent that Mr. Cogley seeks to add § 1985 to his argument, it does not affect the outcome of the case.

[6] The State itself, the R.I. Department of Public Safety, and the R.I Sex Offender Registration Board.

[7] Former Governors Lincoln Chafee and Gina Raimondo, the (unnamed) R.I. Attorney General, the (unnamed) Program Chief of RISOCN, Sgt. Michael Wheeler of the R.I. Division of Sheriffs ("RIDS").

are former R.I. State Police ("RISP") officials or employees of the R.I. Attorney General ("RIAG") sued in their individual capacities;[8]  many who are sued in their individual capacities are or were at the relevant time members of the R.I. Sex Offender Registration Board ("RISORB") or the R.I. Sex Offender Community Notification Unit ("RISOCN") of the R.I. Parole Board;[9] and one – Joan Collins –  is sued individually in her capacity as the R.I. Sex Offender Database Supervisor Manager.

Five defendants are municipal:  the North Providence Police Department ("NPPD"), two former NPPD Chiefs Christopher Pelagio and David Tikoian in their official capacities only, and two NPPD officers Christopher Petteruti and Daniel Biafore in their individual capacities.

### C.    The Registration Requirement

Rhode Island law would require Mr. Cogley's registration in this state were it not for the January 7, 2020, court Order excusing him.  Both Massachusetts and federal law exclude from the definition of "sex offense" consensual conduct between an adult and [a 15-year-old] if the age difference between them is less than four years.[10]  Rhode Island law contains no such exemption.  A person must register if he

---

[8] Former RISP Colonels Steven O'Connell, Ann Assumpico, and James Manni, and RIAG Investigator John Rabbit.

[9] Bonita Cade, Kyle Shibley, Alyssa DeAndrade, Marlene Roberti, Jason Lyon, JoAnne Waite, and Jessica Nash, all of RISORB; and Vanessa Lisi of RISOCN.

[10]  Because of this exemption, the Barnstable County superior court adjudicating Mr. Cogley's criminal case entered an Order declaring that he was not required to register as a sex offender.  SORNA itself codifies the exemption in federal law: "An offense

commits a criminal offense against a minor.   R.I.G.L. § 11-37.1-3(a).   "Criminal offense" is defined in § 11-37.1-2 and explicitly includes the offense of third-degree sexual assault: "sexual penetration" between anyone over the age of 18 and a minor more than 14 years old but less than 16."   R.I.G.L. § 11-37-6.   There is no age differential escape from the registration requirement.   Nothing in SORNA precludes a state from having stricter registration requirements than federal law.   SORNA provides a comprehensive set of *minimum* standards for sex offender registration and notification.   SORNA, Dep't of Justice, https://smart.ojp.gov/funding/opportunities/o-smart-2022-171211 (Oct. 26, 2023) (emphasis supplied).   Mr. Cogley's offense in Massachusetts consisted of engaging in oral intercourse with a fifteen-year-old.   Oral intercourse is sexual penetration under Rhode Island law, *State v. Beaulieu,* 674 A.2d 377, 378 (R.I. 1996), and thus the registration requirement for anyone committing a "criminal offense" against a minor applied to Mr. Cogley.   SORNA also requires states to maintain systems of community notification, which Rhode Island complies with through R.I.G.L. § § 11-37.1-12 and 11-37.1-13.

### D.  Motions to Dismiss

The state defendants moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.   (ECF No. 22.) They challenge the susceptibility of several of them to suit under 42 U.S.C. § 1983

---

involving consensual sexual conduct is not a sex offense for the purposes of this subchapter if the victim . . . was at least 13 years old and the offender was not more than 4 years older than the victim." 34 U.S.C. § 20911(5)(c).

and the sufficiency of the claim with respect to supervisory liability. They argue that the statute of limitations has expired for an action brought under § 1983, and they claim various immunities. In addition, they argue that Counts II, III, IV, and V fail as a matter of law because SORNA does not create a private cause of action. *Id.* at 22-25. Finally, as to Count VI, the state defendants contend that the False Claims Act ("FCA") does not apply to SORNA implementation. *Id.* at 25-29.

The municipal defendants take a different tack. They argue that the Complaint violates Fed. R. Civ. P. 8(a) because it is not a "short and plain" statement. The Police Department and its former police chiefs, sued only in their official capacities, maintain they are not susceptible to an action brought under 42 U.S.C. § 1983. The individual officers have moved for dismissal only on Rule 8(a) grounds.

## I. Statute of Limitations – Count I - § 1983

It appears, as the state defendants argue, that the statute of limitations has expired on Mr. Cogley's § 1983 claim against them. This Complaint was filed on December 22, 2022. The applicable statute of limitations, drawn from state law governing personal injury actions, *Ayala-Sepulveda v. Municipality of San German,* 671 F.3d 24, 29 n.3 (1st Cir. 2012), is three years. R.I.G.L. § 9-1-14(b).[11] *Esposito v. Town of N. Providence,* No. CA -4-302S, 2006 WL 2711736, at *5 (D.R.I. Sept. 21, 2006). Thus, the actions giving rise to liability must have occurred after December

---

[11] Mr. Cogley attempts to invoke the longer statute of limitations of R.I.G.L. § 9-1-51, but that applies only to legal actions against a "perpetrator defendant" brought by victims of sexual abuse. *Houllahan v. Gelineau,* 296 A.3d 710, 721 (R.I. 2023). There is no allegation that any defendant here committed sexual abuse against Mr. Cogley. The longer limitations period simply does not apply.

22, 2019. Mr. Cogley has helpfully provided a timeline of the conduct upon which he based his § 1983 claim. (ECF No. 1 at 34-54.) According to his allegations, the events resulting in his being required to register as a sex offender began in September 2013 with a notice issued by the RISOCN administrator of an arrest warrant for failure to register. *Id.* at 35. The multiple advisements from NPPD warning him to register occurred between 2013 and 2018. *Id.* at 35 − 40.

By November 2018, Mr. Cogley had moved out of Rhode Island. *Id.* at 41. At about this time, RISORB classified Mr. Cogley as a Level II sex offender required to register. Also in 2018, Ms. Collins allegedly threatened to notify authorities in Colorado, where Mr. Cogley was traveling, that he was a sex offender. *Id.* at 42. During 2019, Mr. Cogley continued to receive advisements, including from the NPPD, informing him that he was out of compliance with registration requirements. *Id.* at 44.

By November 2019, Mr. Cogley had hired an attorney and was in litigation which resulted in a Rhode Island Superior Court order entered on January 7, 2020, ordering any Rhode Island sex offender registration requirements vacated. *Id.* at 50. Virtually all the wrongful actions alleged by Mr. Cogley to have been taken by state defendants occurred prior to December 22, 2019.[12] Therefore, the state defendants, as they have asserted, are entitled to DISMISSAL of Count I.

---

[12] The only exception is that Mr. Cogley alleges that the Rhode Island public database, at ripublicportal.courts.ri.gov to this day reflects his status as a sexually violent predator despite a December 5, 2022, superior court order "[t]hat all records and indications of the Petitioner's status as Sex Offender in Rhode Island shall be destroyed forthwith and without unnecessary delay." And, indeed, it does, in the

## 2.    Liability Under Section 1983 – Count I – State Officials in their official capacities[13]

"Neither a State nor its officials acting in their official capacities are 'persons' under § 1983" who can be sued for monetary damages.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Id.* at 66 (internal citation omitted).   The Court of Appeals for the First Circuit subsequently observed:

> The Eleventh Amendment of the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI.   "Long interpreted as an affirmation of state sovereign immunity[,] . . . [the] amendment (despite its literal text) also bar[s] a citizen from bringing a federal court action against his or her own State," *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 48 (1st Cir. 2003) (citation and footnote omitted), including instrumentalities of the state, such as state agencies, *see*

---

record of PM-2019-7278.    Ironically, this was the action that *challenged* his designation as a sex offender.  Mr. Cogley's sex offender status was removed from the national registry, but not from the state systems.  (ECF No. 1, at 52-53.)  He believes the error persists because of a lack of sufficient administration within the RISP.  *Id.* at 53.  If the Rhode Island data keepers have failed to comply with the order of the superior court, that is not a wrong that can be remedied in this federal § 1983 action as it presents no violation of federal constitution or law.  Mr. Cogley must find his remedy, if that posting violates a court order, in the state courts.

[13] The state defendants, though not the municipal ones, assert the defense of qualified immunity.  Because the Court dismisses the action against them for other reasons, it need not assess their entitlement to qualified immunity.

> *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30, 117 S. Ct. 900, 137 L. Ed. 55 (1997).

*Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (alterations in original).

In *Will*, the Supreme Court clarified that, while the "scope of the Eleventh Amendment and the scope of § 1983 are . . . separate issues, . . . in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it." *Will,* 491 U.S. at 66-67.  Thus, "[a] State is not considered a 'person' for § 1983 purposes, and thus is not liable for money damages under § 1983.  Similarly, a state agency is considered an 'arm of the state' and is also not liable for damages under § 1983." *Ducally v. R.I. Dep't of Corr.*, 160 F. Supp. 2d 220, 228 (D.R.I. 2001) (internal citations omitted).  The same rationale applies to state employees sued in their official capacities.[14]

Based on the foregoing, the Complaint is dismissed against all state defendants, sued in either their individual or official capacities, or both.

---

[14]A line acknowledging the State's full immunity was removed from the 2020 Superior Court Order.  Mr. Cogley interprets that action as the State waiving immunity.  A waiver, however, must be affirmative.  *Bergemann v. Rhode Island*, 676 F. Supp. 2d 1, 5 (D.R.I. 2009) ("Generally we will find a waiver either if the State voluntarily invokes our jurisdiction . . . or else if the State makes a 'clear declaration' that it intends to submit itself to jurisdiction." (quoting *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675 (1999)) (alteration in original).

### 3.  Quasi-Judicial Immunity

The members of the Board of Review – Bonita Cade, Kyle Shibley, Alyssa DeAndrade, Marlene Roberti, Jason Lyon, JoAnne Waite, and Jessica Nash – are alleged to have negligently assessed him as a Tier II sex offender, indicating a moderate risk of re-offense, in violation of his right to due process.  (ECF No. 1, at 41, 64-65.)  Mr. Cogley states that this occurred 56 days after he gave up Rhode Island residency; he claims these defendants both relied on incorrect information and failed to use proper assessment tools.  *Id.* at 41.

As another basis for dismissal, the members of the Board of Review are entitled to quasi-judicial immunity.  Rooted in the doctrine of judicial immunity, quasi-judicial immunity is available to certain officials whose "special functions" require an exemption from liability.  *Bettencourt v. Bd. of Reg. in Med. in Mass.,* 904 F.2d 772, 782 (1st Cir. 1990); *see also Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658, 662 (1st Cir. 2010) ("In general, that doctrine provides absolute immunity for public officials, including agency officials, who perform quasi-judicial functions").  The First Circuit employs a functional approach to determine whether such immunity attaches:

> First, does a Board member, like a judge, perform a traditional "adjudicatory" function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from political influence)?  Second, does a Board member, like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions?  Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards, designed to protect a [plaintiff's] constitutional rights?

*Bettencourt,* 904 F.2d at 782.  In *Bettencourt*, the court performed this functional analysis, concluding "that the medical registration Board members were 'functionally comparable' to judges because their roles involved weighing evidence, making factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for their decisions." *Id.* at 783.  "[A]ctivities that are analogous to those performed by judges" are protected.  *Tobey v. Chibucos,* 890 F.3d 634, 650 (7th Cir. 2018) (right to judicial immunity for members of parole boards).  Citing *Tobey,* the Seventh Circuit applied that analysis to grant absolute immunity in connection with decisions labeling persons sex offenders.  *Kreilein v. Horth,* 854 Fed. Appx. 733, 735 (7th Cir. 2021) (Mem).

Here, according to Mr. Cogley's Complaint, the RISORB reviewed evidence (albeit some of it incorrect according to him), made findings, and assessed him as a Level II sex offender.  (ECF No. 1, at 41, 64)[15]  Therefore, the Court concludes that these Board members are entitled to quasi-judicial immunity and their Motion to Dismiss must be GRANTED.

---

[15] As is common in judicial proceedings, there were procedural protections in place, including the right to be present and the right to an appeal.

### 4. Municipal Defendants

As the North Providence Police Department argues, a police department is not a legal entity different from the municipality and is not a proper defendant in a § 1983 action. *Adams v. City of Cranston,* No. 16-103 S, 2016 WL 4385897, at *2 (D.R.I. Aug. 17, 2016). *See also, Howell v. Planet Fitness,* C.A. No. 22-11025-RGS, 2022 WL 3021114, at *3 (D. Mass. July 29, 2022), citing *Henschel v. Worcester Police Dep't,* 445 F.2d 624, 624 (1st Cir. 1971). The Complaint is DISMISSED against the Department.

The former police chiefs, Pelagio and Tikoian, are sued in their official capacities only, and as such, they are not entities separate from the City. *Oberg v. City of Taunton,* 972 F. Supp. 2d 174, 194 (D. Mass. 2013). There are no allegations that would give rise to municipal liability, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691-92 (1978), and the two are therefore entitled to be DISMISSED.

The remaining North Providence defendants, officers Petteruti and Biafore, have moved to dismiss only for a failure to comply with Rule 8 of the Federal Rules of Civil Procedure. (ECF No. 16, at 1.) Rule 8(a) states that:

A pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(2).

While Mr. Cogley's Complaint is unnecessarily long, the Court declines to dismiss a *pro se* complaint simply because of its noncompliance with Rule 8(a). The rationale for treating *pro se* complaints with some leniency, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), is because the job of culling unnecessary information is one that even many lawyers find difficult. To a layperson, unfamiliar with the law and intent on fully explaining his grievance, *everything* that happened is relevant, and *everything* that the defendants did may bear on their liability. Those unfamiliar with the law understandably confuse what they perceive as moral culpability with legal liability. The principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted to enable him to answer and prepare for trial. *Laurence v. Wall*, CA No. 07 -081-ML, 2007 WL 1875794, at *1 (D.R.I. June 27, 2007). When a complaint's length or meandering nature renders it so confusing that the defendant cannot clearly understand what he must respond to, Rule 8(a) demands relief. On the other hand, the defendants' response to the complaint makes it clear they understand the basis of Mr. Cogley's claims and, indeed, the Court does as well. The Court therefore rejects the Rule 8 ground for dismissal and the Motions to Dismiss brought by officers Petteruti and Biafore are DENIED.

### E. SORNA Claims – Counts II through IV

Mr. Cogley's second, third, and fourth claims, brought pursuant to 34 U.S.C. § 20911, are based on SORNA itself. He alleges negligent implementation of SORNA while he was a Rhode Island resident (Count II) and negligent implementation of

SORNA while he was out of Rhode Island's jurisdiction (Counts III and IV).  The state defendants argue that these claims fail as a matter of law because SORNA lacks a private right of action.  The Court agrees.

Section 20911 is the "definitions" subchapter of SORNA.  Section 20911(5)(C) states that:

> An offense involving consensual sexual conduct is not a sex offense for the purposes of this subchapter if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim.

34 U.S.C. § 20911(5)(C).  Mr. Cogley relies heavily on this section, arguing that under both the national SORNA definition of sex offense and his Massachusetts judgment, he was not required to register as a sex offender in Rhode Island.  *See, e.g.*, ECF No. 1, at 5-6, 10, 16, 59.  While that may be true, nowhere does § 20911 provide a private right of action to enforce the section.

The state defendants argue, citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), that "[f]or Plaintiff to bring a private suit under 34 U.S.C. § 20911, the statute must supply a private right of action."  If a statute "does not contain an express cause of action, 'courts must interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right <u>but also</u> a private remedy.'"  *Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 69 (1st Cir. 2017) (emphasis original).  Whether Congress "intended to create a private right of action [is] definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class."  *Id.* at 24 (quoting *Gonzaga Univ. v. Doe*,

536 U.S. 273, 284 (2002); *accord Logue v. U.S. Marshals*, No. 1:13-cv-348, 2014 WL 4659497, at *9 (S.D. Ohio Sept. 17, 2014) (SORNA does not authorize any private right of action).  The section containing the age-differential escape clause is the "Amie Zyla expansion of sex offense definition" section.  34 U.S.C. § 20911(5).  "[F]inding an enforceable right solely within a purely definitional section is antithetical to requiring unambiguous congressional intent." *Midwest Foster Care & Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1197 (8th Cir. 2013).  The state defendants correctly note that § 20911 contains no remedies, further indicating that it creates no private right of action. *Id.* [16]

### F.  Qui Tam Counts

In Counts V and VI, Mr. Cogley brings two qui tam actions:  Count V directly under 34 U.S.C. § 20927, failure of a jurisdiction to comply with SORNA, on behalf of the United States and Count VI pursuant to the FCA, 31 U.S.C. § 3729, along with 34 U.S.C. § 1151.    He contends that, "as *relator* under *Qui Tam* action . . . under federal definition, he was never subject to any (*Sex Offender Registration and Notification Act Title I § 1111-part 5 article C (SORNA)* implementation."    *Id.* Therefore, he reasons, for its noncompliance with SORNA, Rhode Island is subject to

---

[16] In addition, other sections of SORNA imply that there is no private right of action for violations.  Section 20912, for example, states that "The Attorney General shall issue guidelines and regulations to interpret and implement this subchapter," 34 U.S.C. § 20912(b), suggesting that addressing violations is within the purview of the Attorney General.  And § 20927 provides that "[f]or any fiscal year after the end of the period for implementation, a jurisdiction that fails, *as determined by the Attorney General*, to substantially implement this subchapter shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction . . . ."  34 U.S.C. § 20927(a) (emphasis supplied).

a 10% reduction in federal Byrne funding. (ECF No. 1, at 69-70.) He alleges that the State fully—and falsely—accepted the federal grant funding, notwithstanding its noncompliance with SORNA. *Id.* at 70.

With respect to Count V, 34 U.S.C. § 20927 vests the Attorney General with the authority to enforce compliance with SORNA:

> For any fiscal year after the end of the period for implementation, a jurisdiction that fails, <u>as determined by the Attorney General</u>, to substantially implement this subchapter shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction under subpart 1 of part E of title 1 of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3750 et seq.).

34 U.S.C. § 20927(a) (emphasis added).[17] As explained above, SORNA does not authorize a private cause of action. For a plaintiff to bring a private suit under 34 U.S.C. § 20911, the statute must supply a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

Mr. Cogley receives no benefit from attempting to bring this as a qui tam action. A qui tam action is a creature of statute. *United Seniors Ass'n v. Phillip Morris USA,* 500 F.3d 19, 23-24 (1st Cir. 2007). "At the very least, *qui tam* statutes must make clear, whether expressly or by necessary implication, that the plaintiff is an assignee of the government entitled to sue in its behalf." *Id.* at 26. *Compare,* 31 U.S.C. § 3730(b) (authorizing qui tam actions under the FCA and prescribing

---

[17] At the end of § 20927, a footnote states: "Reclassified to 34 U.S.C.A. § 10151 et seq." 34 U.S.C. § 20927 (a) n.1. Section 10151 states that "The grant program established under this part shall be known as the 'Edward Byrne Memorial Justice Assistance Grant Program." 34 U.S.C. § 10151(a).

procedures governing them).  There is nothing in SORNA that expressly authorizes a private citizen to vindicate the government's interest in the integrity of Byrne funding.

Count VI also presumes the State's acceptance of federal Byrne funds and alleges the State did so under false pretenses because of its noncompliance with SORNA.  (ECF No. 1, at 69-70.)  The plaintiff's claim is brought under the FCA.[18] The state defendants respond that:

---

[18] The FCA, 31 U.S.C. § 3729, provides in relevant part:

Subject to paragraph (2), any person who--

    (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

    (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

    (E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

    (F) knowingly buys, or receives as a pledge of an obligation or debt, property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

> Plaintiff cannot prevail on his False Claims Act *qui tam* claim for three distinct reasons: 1) the State and state agencies are not "persons subject to qui tam liability under the False Claims Act 2) as a matter of statutory interpretation, the Department of Justice has sole enforcement authority over claims connected to SORNA implementation and 3) Plaintiff does not plausibly allege a violation of the False Claims Act."

State defendants' Mem. at 27.

The Supreme Court has clearly stated that, although "a private individual has standing to bring suit in federal court on behalf of the United States," the FCA "does not subject a State (or state agency) to liability in such actions." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 787 (2000). States are not subject to qui tam liability. Because the only enforcement mechanism is a reduction in Byrne funding, and because *only state and their subdivisions receive Byrne funding,*[19] the essence of the claim here is against the State itself. Any "recovery" would be a loss

---

> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government,

> is liable to the United States Government for a civil penalty of not less than $5000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C.2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1) (footnote omitted).

[19] 34 U.S.C. 10152 authorizing "grants to States and units of local government, for use by the State or unit of local government, . . ."

to one state agency of 10% of its funding and a redirection of that funding to other state agencies.

Thus, Counts V and VI both fail and are DISMISSED.

## V.     CONCLUSION

What remains of Mr. Cogley's Complaint is his § 1983 claim against Officers Petteruti and Biafore.  All other counts and defendants are DISMISSED.

IT IS SO ORDERED:

_____
Mary S. McElroy, United
United States District Judge

February 14, 2024